## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| PYXUS INTERNATIONAL, INC., *et al.*,[1] | § § | Case No. 20-11570 (LSS) |
| Debtors. | § § | (Jointly Administered) |
| | § § | **Ref: Docket No. 14** |
| | § | |

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS, (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS, (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS, INCLUDING INTERCOMPANY LOANS, (IV) AUTHORIZING AN INTERIM SUSPENSION OF SECTION 345(B) DEPOSIT AND INVESTMENT REQUIREMENTS AND (V) GRANTING RELATED RELIEF

Upon the Debtors' motion (the "***Motion***")[2] for entry of an interim order (this "***Interim Order***") (i) authorizing the Debtors to continue to use their centralized cash management system (the "***Cash Management System***") and bank accounts; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "***U.S. Trustee***"); (iii) authorizing continued performance of Intercompany Transactions, including Intercompany Loans, and granting administrative expense status to Intercompany Claims; (iv) authorizing an interim suspension of the requirements of section 345(b) of the Bankruptcy Code; and (v) granting related relief, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's United States federal tax identification number, are: Pyxus International, Inc. (6567), Alliance One International, LLC (3302), Alliance One North America, LLC (7908), Alliance One Specialty Products, LLC (0115) and GSP Properties, LLC (5603). The Debtors' mailing address is 8001 Aerial Center Parkway, Morrisville, NC 27560-8417.

[2] Capitalized terms used but not defined in this Interim Order have the meanings used in the Motion.

it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and the Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "*Hearing*"); and upon the First Day Declaration and the record of the Hearing and all the proceedings before the Court; and the Court having found such relief to be in the best interests of the Debtors, their estates and creditors and any parties in interest; and the legal and factual bases set forth in the Motion and at the Hearing having established just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "*Final Hearing*") on the Motion will be held on July 17, 2020, at 11:00 a.m. (Eastern Time).  Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (Eastern Time) on July 10, 2020, and served on the following parties: (i) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: David L. Buchbinder, Esq. (david.l.buchbinder@usdoj.gov)); (ii) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Sandeep Qusba (squsba@stblaw.com), Michael Torkin (michael.torkin@stblaw.com) and Nicholas Baker (nbaker@stblaw.com)), proposed co-counsel for the Debtors; (iii) Young Conaway Stargatt &

Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan (pmorgan@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com)), proposed co-counsel for the Debtors; (iv) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher Hansen, Esq. (khansen@stroock.com) and Jonathan Canfield, Esq. (jcanfield@stroock.com)), co-counsel to the Ad Hoc First Lien Group; (v) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and James E. O'Neill, Esq. (joneill@pszjlaw.com)), co-counsel to the Ad Hoc First Lien Group; (vi) Wachtell Lipton Rosen & Katz, 51 West 52nd Street, New York, New York 10019 (Attn: Joshua Feltman (jafeltman@wlrk.com) and Benjamin Arfa (bsarfa@wlrk.com)), co-counsel to the Ad Hoc Crossholder Group and the DIP Agent; (vii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801 (Attn. Derek C. Abbott (dabbott@mnat.com)), co-counsel to the Ad Hoc Crossholder Group and the DIP Agent; (viii) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Scott Greissman (sgreissman@whitecase.com) and Andrew Zatz (azatz@whitecase.com)), counsel to the ABL Agent; (ix) counsel to any committee appointed in these Chapter 11 Cases; and (x) any other party entitled to notice under Bankruptcy Rule 2002.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      Except as otherwise provided herein, the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and bank accounts consistent with their prepetition practices.

4.      All existing deposit agreements between the Debtors and the depository and disbursement banks listed on **Exhibit E** to the Motion (collectively, the "***Banks***" and each a "***Bank***") shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  The Debtors and the Banks are authorized, without further order of this Court, to implement such changes to the Cash Management System and procedures in the ordinary course of business in accordance with the terms of the existing deposit and disbursement agreements, including opening any new bank accounts or closing any existing bank accounts, to the extent permitted by the Debtors' proposed postpetition secured debtor-in-possession financing ("***DIP Financing***") and subject to the notice requirements set forth in paragraph 17 of this Interim Order.  The Banks are authorized to honor the Debtors' requests to close existing bank accounts or open new bank accounts.

5.      The Debtors are authorized but not directed to (i) maintain and continue to use their existing bank accounts that are listed on the attached **Exhibit E** to the Motion (the "***Debtor Bank Accounts***"), in the same manner and with existing account numbers, styles and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, ACH transfer, draft, electronic fund transfer, centralized lockbox or other items presented, issued or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary-course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("***DIP Accounts***").

6.      Each Bank is authorized to continue to administer, service and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, without further order of this Court, and to receive, process, honor and pay all checks, drafts, wires, ACH transfers, electronic fund transfers or other items presented, issued or drawn on the Debtor Bank Accounts (collectively, the "*Disbursements*") on account of any claim this Court has granted the Debtors approval to pay, whether arising before, on or after the Petition Date to the same extent the Debtors were responsible for such items prior to the Petition Date; *provided that* the applicable Debtor Bank Accounts contain sufficient funds.

7.      Notwithstanding any other provision of this Interim Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in good faith belief that this Court has authorized such prepetition check or item to be honored or (c) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, shall be deemed to be liable to the Debtors, their estates or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

8.      Each Bank is authorized, without further order of this Court, to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof whether arising prepetition or postpetition; (ii) all checks or other items deposited in one of Debtor's accounts with such, whether arising prepetition or postpetition, which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was and/or is responsible for such items whether prepetition or postpetition; and (iii) all undisputed prepetition

amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.  The Debtors shall at all times maintain sufficient balances in the accounts at each Bank to secure their obligations to each Bank for the cash management and related services provided to the Debtors.

9.    Each of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

10.    The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their business in the ordinary course. Notwithstanding anything to the contrary set forth herein, the Debtors shall not, absent further order of this Court, (a) make cash payments constituting Intercompany Loans in excess of approximately $90 million in the aggregate, or (b) pay any capital contributions or dividends. Notwithstanding the foregoing, the Debtors shall not, during the pendency of these Chapter 11 Cases, undertake any Intercompany Transactions with FIGR Brands, Inc., FIGR Canada Holdings ULC, Canada's Island Gardens, Inc. or FIGR Norfolk Inc.

11.    All obligations of the Debtors on account of any authorized postpetition Intercompany Transactions are hereby accorded administrative expense priority under section 503(b) of the Bankruptcy Code, subject and junior to the claims, including adequate protection and superpriority claims, granted in connection with any order(s) of this Court approving the DIP Financing. Each entity using funds that flow through the Cash Management System shall continue to bear the ultimate payment responsibility for those ordinary-course transactions.  In connection

with the Intercompany Transactions, the Debtors shall maintain records for all transfers of cash so that all transactions (including Intercompany Transactions) can be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions.

12.    The relief granted in this Interim Order with respect to any Intercompany Transaction and/or Intercompany Claim shall not constitute a finding as to the validity, priority or status of such Intercompany Transaction and/or Intercompany Claim.  The rights of any party, including the Debtors, to contest the validity, priority or status of any Intercompany Transaction and/or Intercompany Claim are expressly reserved.

13.    The Debtors are authorized to continue using all checks, correspondence and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials and other business forms, substantially as they existed immediately before the Petition Date without reference to the Debtors' status as debtors in possession; *provided that* once the Debtors' existing checks have been used, the Debtors will, when reordering checks, ensure that the designation "Debtor in Possession" and the corresponding bankruptcy case number are printed on all checks; *provided, further,* that, with respect to checks that the Debtors or their agents print themselves, the Debtors shall use commercially reasonable efforts to begin printing the "Debtor in Possession" legend and the lead bankruptcy case number on such checks within ten (10) days of the date of entry of this Interim Order.

14.    The requirements of section 345 of the Bankruptcy Code, to the extent the Debtor Bank Accounts do not strictly comply therewith, are waived on an interim basis for a period of up to forty-five (45) days after the Petition Date; *provided*, *however*, that nothing in this Interim Order shall affect the Debtors' ability to seek further extensions of such waiver.

15.    In each instance in which the Debtors hold Debtor Bank Accounts at Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days after entry of this Interim Order the Debtors shall (a) contact the Banks, (b) provide the Banks with each of the Debtor's employer identification numbers and (c) identify their Debtor Bank Accounts held as being held by a debtor-in-possession in a bankruptcy case and provide the main case number.

16.    For banks at which the Debtors hold Debtor Bank Accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall either (i) transfer funds to a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or (ii) use their good-faith efforts to cause the banks at which such Debtor Bank Accounts exist to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within forty five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

17.    To the extent the Debtors seek to open any new bank accounts or close any existing bank accounts as permitted under paragraph 4 of this Interim Order, the Debtors shall give notice to the U.S. Trustee, any statutory committee appointed in the Chapter 11 Cases, and the administrative agents under the DIP Financing within fifteen (15) days after opening a new bank account or closing an existing bank account; *provided* that the Debtors shall open any such new bank account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank willing to immediately execute such an agreement.

18.	Nothing contained herein shall prevent any Bank from modifying or terminating any Bank Accounts or cash management services or related services in accordance with the agreements governing such accounts, programs or services, subject to providing no less than fifteen (15) calendar days advance notice.

19.	Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which Debtor, or other entity, pays those disbursements.

20.	Within five (5) business days from the entry of this Interim Order, the Debtors shall (i) serve a copy of this Interim Order on each Bank and (ii) request that each Bank internally code each of the Debtor Bank Accounts as "debtor in possession" accounts.

21.	The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

22.	Nothing in the Motion or this Interim Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff or recoup any claim or assert any related rights, claims or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code.

23.	The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

24.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

25.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Interim Order.

26.     This Court retains jurisdiction over all matters arising from or related to the implementation or interpretation of this Interim Order.

LAURIE SELBER SILVERSTEIN
**UNITED STATES BANKRUPTCY JUDGE**

26646432.3     **Dated: June 16th, 2020**     10
               **Wilmington, Delaware**