IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| PYXUS INTERNATIONAL, INC., *et al.*,[1] | § § § | Case No. 20-11570 (LSS) |
| Debtors. | § § § | (Jointly Administered) |
| | § § § § | Hearing Date: July 27, 2020 at 11:00 a.m. (ET) <br> Objection Deadline: July 20, 2020 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ERNST & YOUNG LLP AS THEIR ACCOUNTING, VALUATION, TAX AND INTERNAL AUDIT PROVIDER, EFFECTIVE AS OF THE PETITION DATE**

Pyxus International, Inc. ("***Pyxus***") and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***") respectfully submit this application (this "***Application***") for entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "***Proposed Order***"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), authorizing the Debtors to retain and employ Ernst & Young LLP ("***EY LLP***") as their accounting, valuation, tax and internal audit provider, effective as of the Petition Date (as defined below). In support of

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's United States federal tax identification number, are: Pyxus International, Inc. (6567), Alliance One International, LLC (3302), Alliance One North America, LLC (7908), Alliance One Specialty Products, LLC (0115) and GSP Properties, LLC (5603). The Debtors' mailing address is 8001 Aerial Center Parkway, Morrisville, NC 27560-8417.

26493512.11

this Application, the Debtors submit the declaration of Rachel Gerring (the "*Gerring Declaration*"), attached hereto as **Exhibit 2**, and respectfully state as follows:

## BACKGROUND

1. On June 15, 2020 (the "*Petition Date*"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "*Court*"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

2. Additional information regarding the Debtors' businesses, capital structure and the events leading up to the Petition Date is set forth in the *Declaration of Joel Thomas, Executive Vice President and Chief Financial Officer of Debtor Pyxus International, Inc., in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] filed on the Petition Date.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of these Chapter 11 Cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

The statutory and legal predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a) and Local Rules 2014-1 and 2016-2.

## RELIEF REQUESTED

4. By this Application, the Debtors request entry of the Proposed Order authorizing the Debtors to employ and retain EY LLP as their accounting, valuation, tax and internal audit provider in these Chapter 11 Cases, effective as of the Petition Date, pursuant to the terms and conditions set forth in the Master Services Agreement and accompanying Statements of Work between the Debtors and EY LLP (collectively, the "*Engagement Letters*"), copies which are attached to the Gerring Declaration as **Exhibits A-1 through A-14**.[2]

## EY LLP'S QUALIFICATIONS

5. EY LLP is a global professional service provider that performs services such as assurance, tax, transactional and advisory services. The Debtors seek to retain EY LLP because of its extensive experience and knowledge in the field of such services. EY LLP has provided assurance, accounting or tax services to many companies that have filed for chapter 11. *See, e.g., In re Sienna Biopharmaceuticals, Inc.*, Case No. 19-12051 (Bankr. D. Del. Nov. 7, 2019) [Docket No. 186]; *In re LBI Media, Inc. et al*., Case No. 18–12655 (Bankr. D. Del. Jan. 14, 2019) [Docket No. 321]; *In re ATD Corporation*, Case No. 18-12221 (Bankr. D. Del. Nov. 13, 2018) [Docket No. 322]; *In re Southeastern Grocers, LLC*, Case No. 18-10700 (Bankr. D. Del. May 14, 2018) [Docket No. 489]; *In re Momentive Performance Materials (MPM Silicones, LLC)*, Case No. 14-22503 (Bankr. D. Del. Jun. 26, 2014) [Docket No. 544]; *In re GSE Envtl., Inc.*, Case No. 14-11126 (Bankr. D. Del. Jun. 10, 2014) [Docket No. 334]; *In re Exide Techs.*,

---

[2] **Exhibit A-14** is the Master Services Agreement that governs the specific services EY LLP will provide under the Statements of Work presented in **Exhibit A-1 through A-13.**

Case No. 13-11482 (Bankr. D. Del. Dec. 17, 2013) [Docket No. 1166]; *In re Oncure Holdings, Inc.*, Case No. 13-11540 (Bankr. D Del. Jul. 23, 2014) [Docket No. 152]; *In re AMR Corp.*, Case No. 11-15463 (Bankr. S.D.N.Y. Jan. 27, 2012) [Docket No. 885]; and *In re Borders Group*, Inc., Case No. 11-10614 (Bankr. S.D.N.Y. Apr. 7, 2011) [Docket No. 559].

6.  As set forth in the Gerring Declaration and more fully in the Engagement Letters, the Debtors engaged EY LLP to provide accounting, valuation, tax and internal audit services. The Debtors specifically selected EY LLP to provide these services because of EY LLP's extensive experience in providing such services to large and complex entities and because, during the prepetition period, EY LLP provided accounting, valuation, tax and internal audit services to the Debtors. As a result of EY LLP's prepetition employment by the Debtors, EY LLP has developed institutional knowledge concerning the Debtors' business practices.

7.  Accordingly, the Debtors believe that EY LLP is both well-qualified and uniquely able to provide certain services during these Chapter 11 Cases in cost-effective, efficient and timely manner.

## SCOPE OF SERVICES

8.  As set forth in further detail in the Engagement Letters, EY LLP has agreed to provide certain services (the "*Services*") to the Debtors in connection with these Chapter 11 Cases. A summary description of each of the Services is summarized below and fully described in the Engagement Letters:[3]

---

[3] The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of the Engagement Letters themselves. To the extent there is any discrepancy between the summaries contained herein and the terms of the Engagement Letters themselves, the terms of the Engagement Letters shall control. Unless otherwise defined, capitalized terms used in these summaries shall have the meanings ascribed to them in the Engagement Letters.

A. **Tax Services – FY20 Provision Co-Sourcing (Exhibit A-1 and Exhibit A-13[4] to the Gerring Declaration)**

EY LLP will review the Federal tax provisions prepared by Pyxus and assist Pyxus' tax department related to income tax reserves for the years ended March 31, 2019 ("*FY19*"), March 31, 2020 ("*FY20*"), and March 31, 2021 ("*FY21*"). This will include both the quarterly tax provisions for the fiscal quarters of FY19 – FY21 and the year-end tax provision for these fiscal years. Additionally, EY LLP will assist Pyxus with international tax, tax reform and reviewing transfer pricing matters, and provide tax technology assistance.

B. **Tax Services – Transfer Pricing Controversy and Documentation - FY20 (Exhibit A-2 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will prepare transfer pricing documentation with respect to certain intercompany transactions, intended to meet the minimum documentation requirements of their respective countries. In conjunction with the delivery of the documentation, EY LLP will provide insight to Pyxus regarding any specific filing and/or disclosure requirements for each in-scope country. EY LLP also will provide to Pyxus tax advice and controversy services concerning the examinations by the tax authorities and audit defense of the income tax return and related intercompany obligations (*e.g.,* withholding taxes) in certain jurisdictions.

C. **Tax Services – FY20 Routine On-Call Assistance (Exhibit A-3 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will provide on call tax advisory and tax compliance services, including, but not limited to: (i) answering one-off questions, (ii) drafting memos, (iii) assisting with general transactional issues, (iv) assisting Pyxus in connection with its dealings with tax authorities (other than representing Pyxus in an examination or an appeal before the IRS or other taxing authority), and (v) the preparation of computations, requests for extensions of tax return due dates, and one-off sales, use, excise, and property tax returns.

D. **Tax Services – China RO Deregistration (Exhibit A-4 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will provide tax advisory services in connection with the deregistration of a representative office in China, and will also assist in the deregistration of the China representative office with other governmental authorities.

---

[4] The Debtors and EY LLP modified the terms of certain Statements of Work pursuant to that certain Omnibus Amendment, dated as of June 26, 2020 (the "*Omnibus SOW Amendment*"). A copy of the Omnibus SOW Amendment is attached to the Gerring Declaration as **Exhibit A-13**.

E.  **Tax Services – Global Internal Restructuring – Design & Implementation (Exhibit A-5 and Exhibit A-21 to the Gerring Declaration)**

EY LLP will provide tax-related services, including macro step and micro step plans outlining the steps needed, by jurisdiction, to transition from current state structure to the proposed final state, and related evaluations, analyses and technical memoranda. EY LLP also will provide valuation services related to certain legal entities that will be subject to the Debtors' internal restructuring.

F.  **Valuation Services – VME IBR Valuation (Exhibit A-6 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will assist in providing a recommendation of the Incremental Borrowing Rates to support the Company's adoption of Accounting Standards Codification No. 842 and its ongoing financial reporting requirements.

G.  **Accounting and Valuation Services – CECL - Phase 3 (Exhibit A-7 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will provide accounting and valuation services in connection with Pyxus' adoption of Accounting Standards Update 2016-13 related to the "expected credit loss" model under Accounting Standards Codification 326.

H.  **Accounting Services – Accounting Optimization (Exhibit A-8 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will provide accounting and financial reporting assistance to enhance Pyxus' financial reporting functions relating to month-end close, financing reporting disclosures, and accounting policies.

I.  **Internal Audit Services – Internal Audit (Exhibit A-9 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will assist Pyxus with its internal audit plan and activities. Services include SOX compliance efforts, developing processes to conduct or revise enterprise risk and fraud risk assessments and developing a data analytics strategy to be leveraged as appropriate in the internal audit, SOX and FCPA programs/procedures.

J.  **Tax Services – Expatriate Services (Exhibit A-10 and Exhibit A-13 to the Gerring Declaration)**

EY LLP will provide U.S. and Malawi tax compliance services for Participants in the Pyxus' mobility program, including, annual individual federal tax returns, state and local tax returns, request for extensions and various other related services.

K. **Tax Services – China Restructuring Support (Exhibit A-11 and Exhibit A-13 to the Gerring Declaration)**

Prior to the Petition Date, Pyxus engaged EY LLP to assist with the indirect transfer of ownership of one of Pyxus' Chinese entities. In connection therewith, EY LLP will assist in: (i) understanding the registration requirements; (ii) preparing and submitting of the registration package; and (iii) assisting in follow up on the status and additional communications, if necessary. Further, EY LLP will coordinate with various resources[5] and the Pyxus team to answer questions as they arise. Lastly, EY LLP will assist with the voluntary reporting for the indirect transfer of China import WFOE to the China tax authorities and obtain their verbal feedback.

L. **Tax Services – Debt Restructuring (Exhibit A-12 to the Gerring Declaration)**

EY LLP will work with appropriate Pyxus personnel and/or Pyxus' outside counsel and other advisors in developing an understanding of the tax implications associated with Pyxus' Chapter 11 filing.

\* \* \*

9. To the extent that during the pendency of these Chapter 11 Cases, the Debtors require EY LLP to perform professional services other than (a) those set forth in the Engagement Letters and (b) services related to those set forth in the Engagement Letters, the following procedures shall apply:

> (a) The Debtors shall file with the Court a notice of the proposed expansion of EY LLP's services (the "*Expansion Notice*"), which shall include the executed engagement letter or amendment that describes the additional services and the terms and conditions related to such services and a proposed form of order approving the proposed expansion;
>
> (b) The Expansion Notice shall state any objections are due within ten (10) days of service. The Expansion Notice shall be served upon the U.S. Trustee, counsel to any committee and counsel to any party that requests service pursuant to Bankruptcy Rule 2002; and
>
> (c) If no objection is filed and served within the ten (10)-day period, the Debtors may submit a certification of counsel that no objections were raised or that any objections were resolved, and the Court may enter the Proposed Expansion

---

[5] EY China will not provide services to the Debtors while the Debtors are in bankruptcy.

Order.  If any objection is filed and is not resolved, the matter will be scheduled for the next omnibus hearing date.

10. The foregoing procedure is not intended to abridge the Debtors' right to file ordinary applications seeking expansions of EY LLP's services, if the Debtors deem it appropriate to do so.

## PROFESSIONAL COMPENSATION

11. Pursuant to the terms and conditions of the Engagement Letters, and subject to the Court's approval, in consideration for the services to be rendered by EY LLP in these Chapter 11 Cases, the Debtors propose to:  (a) compensate EY LLP for the services set forth in the Engagement Letters based on both fixed fees and hourly rates depending on the particular services in question as described in the Engagement Letters; and (b) reimburse actual and necessary costs and expenses incurred by EY LLP in connection with all services performed on behalf of the Debtors in these Chapter 11 Cases (collectively, the "***Fee and Expense Structure***").

12. Subject to the detailed descriptions contained in the Engagement Letters, EY LLP intends to charge the Debtors fees for the Services, as set forth below.

| SOW Description | Breakout | Partner / Principal | Executive Director | Senior Manager | Manager | Senior | Staff / Assistant | Other |
|---|---|---|---|---|---|---|---|---|
| Tax Services – FY20 Provision Co-Sourcing (Exhibit A-1 and A-13 to the Gerring Declaration) | Core Team | $670 | $560 | $450 | $325 | $255 | $170 | |
| | Specialty | $705 | $600 | $495 | $375 | | | |
| | National | $780 | $670 | $585 | | | | |
| Tax Services – FY20 Transfer Pricing Documentation (Exhibit A-2 and A-13 to the Gerring Declaration) | *FYE 2021 Projects:*<br>Global transfer pricing documentation, including new comparable companies search - $360,000<br>Controversy services performed during FY2021 - $300,000<br>Country-by-country Reporting (for FY2020) - $25,000<br>One-time financing Feasibility Assessment for intercompany finance transactions - $45,000<br>*FY2022 and FY2023 Project:*<br>Global transfer pricing documentation update (related to FY2021) - $270,000 | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Global transfer pricing documentation update (related to FY2022) - $270,000<br>Annual Country-by-Country Reporting - $25,000 | | | | | | |
| Tax Services – FY20 Routine On-Call Assistance (Exhibit A-3 and A-13 to the Gerring Declaration) | Core Team | $695 | $580 | $475 | $385 | $280 | $185 | Will not exceed $140,000 for FY2021 |
| | Specialty | $745 | $610 | $510 | $405 | | | |
| | National | $805 | $695 | $605 | | | | |
| Tax Services – China RO Deregistration (Exhibit A-4 and A-13 to the Gerring Declaration) | Pyxus to be billed at 60% of the standard hourly rate for each professional.<br><br>Estimated Range: $114,000 to $200,000 | | | | | | |
| Tax Services – Global Internal Restructuring - Design & Implementation (Exhibit A-5 and A-13 to the Gerring Declaration) | Pyxus to be billed at 60% of the standard hourly rate for each professional. EY LLP approximates fees for the Services to be as follows:<br><br>$985,000 for tax design and implementation<br>$50,000 for Phase 1 tax<br>$200,000 for Phase 2 tax<br>$400,000 for valuation | | | | | | |
| Valuation Services – VME IBR Valuation (Exhibit A-6 and A-13 to the Gerring Declaration) | $50,000 to $75,000 for Adoption Analysis Date[6]<br>$10,000 to $15,000 for Subsequent Analysis Date | | | | | | |
| Accounting and Valuation Services – Current Expected Credit Loss (CECL) - Phase 3 (Exhibit A-7 and A-13 to the Gerring Declaration) | | $670 | | $525 | $455 | $385 | | |
| Accounting Services – Accounting Optimization (Exhibit A-8 and A-13 to the Gerring Declaration) | | $585 | | $475 | $390 | $300 | $225 | |
| Internal Audit Services – Internal Audit (Exhibit A-9 and A-13 to the Gerring Declaration) | | $500 | $350 | $210 | $150 | $120 | | Total professional fees will not exceed $3,300,000 for FY21. |

---

[6] This work was completed and paid pre-petition.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Tax Services – Expatriate Services (Exhibit A-10 and A-13 to the Gerring Declaration)[7] | | $775 | $725 | $650 | $550 | $450 | $275 | US COMPLIANCE FIXED FEES: $1,525 per Annual Individual Fed tax return $475 per state/local income tax return $475 per extension $550 per Form FinCEN 114 $450 per Form 8938 $575 per meeting/call $475 per tax settlement calc MALAWI COMPLIANCE FIXED FEES: $500 per meeting/call $400 per month per monthly payroll tax calc $500 per tax clearance application ON CALL SERVICES: Not to exceed $10k in professional fees TAX RETURN SERVICES TO BE PAID BY PARTICIPANT: Not to exceed $10,000 per Participant |
| Tax Services – China Restructuring Support (Exhibit A-11 and A-13 to the Gerring Declaration) | Pyxus shall pay a fee of up to $30,000 for the part 1 and part 2 Services. A breakdown is as below: Part 1 - $15,000 - $20,000 Part 2 - $6,500 - $9,500 (assuming 8-12 senior manager hours) Part 3 - to be discussed with the management |
| Tax Services – Debt Restructuring (Exhibit A-12 to the Gerring Declaration) | | $900 | $850 | $725 | $650 | $475 | $300 | |

13.    EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which the Debtors will pay (other than taxes imposed on EY LLP's income generally).

---

[7] For this agreement, hourly rates are charged for the preparation of tax returns that include more than three Schedule K-1s, preparation of tax returns including more than one rental property, and responses to correspondence audits/inquiries by Federal, State and/or local tax authorities regarding returns prepared by EY LLP. See language above for scope items for which a fixed fee is agreed upon.

26493512.11

10

14. In addition to the fees set forth above, the Debtors shall reimburse EY LLP for any direct expenses incurred in connection with EY LLP's retention in these Chapter 11 Cases and the performance of the Services set forth in the Engagement Letters including all added taxes, sales taxes and other indirect taxes. EY LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses (including any fees or reasonable expenses of EY LLP's legal counsel) related to this engagement.

15. If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors will, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in responding to such requests.

16. EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY LLP would otherwise pass on to its clients.

17. During the course of these Chapter 11 Cases, EY LLP will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the United States Trustee for the District of Delaware (the "*U.S. Trustee Guidelines*") and any orders entered in these Chapter 11 Cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred. Such applications will constitute a

request for interim payment against EY LLP's reasonable fees and expenses to be determined at the conclusion of these Chapter 11 Cases.

18.     Except as otherwise set forth in the Gerring Declaration, EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person.

### COMPENSATION RECEIVED BY EY LLP FROM THE DEBTORS

19.     On or about March 30, 2020 and April 3, 2020, the Debtors provided EY LLP two (2) retainer payments totaling $550,000 in the aggregate, and subsequently paid replenishments of the retainers (the "*Retainer*").  Pursuant to its agreement with the Debtors, EY LLP submitted invoices to the Debtors and deducted the amounts set forth on such invoices from the Retainer.  The Debtors replenished the Retainer after receiving such invoices.  As of the Petition Date and as of the date hereof, the balance of the Retainer is $798,248.[8] EY LLP shall apply the remaining balance of the Retainer toward post-petition fees and expense reimbursements that the Debtors are authorized to pay to EY LLP during these Chapter 11 Cases.

20.     During the ninety (90) days preceding the Petition Date, the Debtors paid a total of $7,027,761 to EY LLP.  This amount consists of the Retainer payments and subsequent replenishments in the aggregate amount of $3,497,655 and the remaining amounts were not part of the Retainer.

| Payment Date | Payment Amount | Invoice Date | Invoice Amount |
|---|---|---|---|
| 3/19/2020 | $66,385.95 | 2/5/2020 | $66,385.95 |
| 3/19/2020 | $45,320.02 | 2/5/2020 | $45,320.02 |
| 3/19/2020 | $331,711.40 | 2/5/2020 | $331,711.40 |
| 3/19/2020 | $267,466.23 | 2/7/2020 | $267,466.23 |
| 3/19/2020 | $36,266.30 | 2/7/2020 | $36,266.30 |

---

[8] As noted above, because EY LLP received subsequent replenishments of the Retainer, the balance of the Retainer is higher than the initial Retainer amount.

| Payment Date | Payment Amount | Invoice Date | Invoice Amount |
|---|---|---|---|
| 3/19/2020 | $ 7,225.45 | 2/7/2020 | $7,225.45 |
| 3/19/2020 | $158,553.17 | 2/7/2020 | $158,553.17 |
| 3/19/2020 | $ 1,170.08 | 2/7/2020 | $1,170.08 |
| 3/19/2020 | $134,836.27 | 2/7/2020 | $134,836.27 |
| 3/19/2020 | $281,642.50 | 2/7/2020 | $281,642.50 |
| 3/19/2020 | $151,591.28 | 2/7/2020 | $151,591.28 |
| 3/19/2020 | $33,478.00 | 3/3/2020 | $33,478.00 |
| 3/19/2020 | $345,195.65 | 3/4/2020 | $345,195.65 |
| 3/19/2020 | $ 3,600.00 | 3/13/2020 | $3,600.00 |
| 3/19/2020 | $12,500.00 | 3/13/2020 | $12,500.00 |
| 3/26/2020 | $7,596.25 | 3/19/2020 | $7,596.25 |
| 3/26/2020 | $250,003.87 | 3/19/2020 | $250,003.87 |
| 3/26/2020 | $91,024.00 | 3/20/2020 | $91,024.00 |
| 3/26/2020 | $84,156.00 | 3/20/2020 | $84,156.00 |
| 3/26/2020 | $21,250.00 | 3/20/2020 | $21,250.00 |
| 3/30/2020 | $87,550.00 | 10/25/2019 | $87,550.00 |
| 3/30/2020 | $101,082.00 | 11/1/2019 | $101,082.00 |
| 3/30/2020 | $27,721.00 | 11/1/2019 | $27,721.00 |
| 3/30/2020 | $148,615.61 | 3/19/2020 | $148,615.61 |
| 3/30/2020 | $144,953.96 | 3/19/2020 | $144,953.96 |
| 3/30/2020 | $40,504.73 | 3/19/2020 | $40,504.73 |
| 3/30/2020 | $54,082.55 | 3/20/2020 | $54,082.55 |
| 3/30/2020 | $ 5,082.39 | 3/20/2020 | $5,082.39 |
| 3/30/2020 | $21,196.02 | 3/23/2020 | $21,196.02 |
| 3/30/2020 | $121,473.00 | 3/23/2020 | $121,473.00 |
| 3/30/2020 | $83,682.24 | 3/23/2020 | $83,682.24 |
| 3/30/2020 | $30,992.81 | 3/23/2020 | $30,992.81 |
| 3/30/2020 | $57,706.75 | 3/23/2020 | $57,706.75 |
| 3/30/2020 | $ 5,092.48 | 3/23/2020 | $5,092.48 |
| 4/8/2020 | $50,000 (Retainer) | 4/1/2020 | $50,000.00 |
| 4/8/2020 | $500,000 (Retainer) | 4/3/2020 | $500,000.00 |
| 4/15/2020 | $44,933.75[9] | 4/1/2020 | $44,933.75 |
| 4/15/2020 | $16,072.50[8] | 4/1/2020 | $16,072.50 |
| 4/15/2020 | $5,000.00[8] | 4/1/2020 | $5,000.00 |
| 4/15/2020 | $46,510.09 (Retainer) | 4/10/2020 | $46,510.09 |
| 4/22/2020 | $203,391.93[8] | 4/14/2020 | $203,391.93 |
| 4/22/2020 | $109,574.23 (Retainer) | 4/14/2020 | $109,574.23 |
| 4/22/2020 | $46,326.74 (Retainer) | 4/17/2020 | $46,326.74 |

---

[9] Payment related to services provided prior to the date retainer was paid.

26493512.11

13

| Payment Date | Payment Amount | Invoice Date | Invoice Amount |
|---|---|---|---|
| 4/29/2020 | $290,687.02 (Retainer) | 4/21/2020 | $290,687.02 |
| 5/6/2020 | $329,119.62 (Retainer) | 4/28/2020 | $329,119.62 |
| 5/6/2020 | $702,228.53 (Retainer) | 5/4/2020 | $702,228.53 |
| 5/14/2020 | $357,512.19 (Retainer) | 5/11/2020 | $357,512.19 |
| 5/20/2020 | $4,635 (Retainer) | 4/20/2020 | $4,635.00 |
| 5/20/2020 | $483,489.81[10] (Retainer) | 5/18/2020 | $264,212.41 |
| 6/4/2020 | $109,470.97 (Retainer) | 5/26/2020 | $109,470.97 |
| 6/4/2020 | $179,980.36 (Retainer) | 6/1/2020 | $179,980.36 |
| 6/10/2020 | $247,820.25 (Retainer) | 6/8/2020 | $247,820.25 |
| 6/10/2020 | $40,300 (Retainer) | 6/10/2020 | $40,300.00 |

21. As of the date hereof, the Debtors did not owe EY LLP any amounts in respect of services provided by EY LLP prior to the Petition Date.

**DISINTERESTEDNESS**

22. The Debtors believe that, except as set forth in the Gerring Declaration: (a) EY LLP has no connection with the Debtors and their creditors, the U.S. Trustee or an assistant U.S. Trustee assigned to this matter, the Honorable Judge Laurie Selber Silverstein, or any party with an actual or potential interest in these Chapter 11 Cases; (b) EY LLP is not a creditor, equity security holder or insider of any of the Debtors; (c) neither EY LLP is or was within two (2) years of the Petition Date, a director, officer or employee of the Debtors; and (d) EY LLP does not have an interest materially adverse to the Debtors. Accordingly, the Debtors believe that EY LLP is a

---

[10] Client overpaid due to a clerical error. Per discussion with the client, overpayment will be applied against future work.

"disinterested person," as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code.

23. The Debtors' knowledge, information and belief regarding certain of the matters set forth in this Application, including, without limitation, EY LLP's disinterestedness, are based on, and are made in reliance upon, the Gerring Declaration.

24. To the extent that new relevant facts, information, or relationships bearing on the matters described herein during the period of EY LLP's retention are discovered or arise in connection with EY LLP's connections checks, EY LLP will use reasonable efforts to file a supplemental declaration to disclose the same, as required by Bankruptcy Rule 2014(a).

## INDEMNIFICATION PROVISIONS

25. As more fully described in the Engagement Letters (the "*Indemnification Provisions*"), the Debtors have agreed to indemnify the Indemnified Persons against any action, claim, proceeding or investigation related to, arising out of or in connection with EY LLP's engagement.

26. Notwithstanding the Indemnification Provisions set forth in the Engagement Letters, the Debtors' indemnification shall be subject to the provisions of the subparagraphs below:

    (a) EY LLP shall not be entitled to indemnification or reimbursement of expenses pursuant to the Engagement Letters unless such indemnification or reimbursement of expenses are approved by the Court;

    (b) Notwithstanding any provision of the Engagement Letters to the contrary, the Debtors shall have no obligation to indemnify or provide reimbursement of expenses to EY LLP for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from EY LLP's gross negligence or willful misconduct, (ii) for a contractual dispute in

which the Debtors allege the breach of EY LLP's contractual obligations, unless the Court determines that indemnification or reimbursement of expenses would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003) or (iii) settled prior to a judicial determination as to EY LLP's gross negligence or willful misconduct, but determined by the Court, after notice and a hearing, to be a claim or expense for which EY LLP should not receive indemnity or reimbursement of expenses under the terms of the Engagement Letters, as modified by the Proposed Order; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, EY LLP believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification or expense reimbursement obligations under the Engagement Letters, including without limitation any advancement of defense costs, EY LLP must file an application therefor with the Court, and the Debtors may not pay any such amounts to EY LLP before the entry of an order by the Court approving any such payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request by EY LLP for indemnification or reimbursement of expenses, and is not intended to limit the duration of the Debtors' obligations to indemnify or reimburse expenses of EY LLP.

27. The indemnification provisions are comparable to those generally obtained by tax advisory firms of similar stature to EY LLP and for comparable engagements, both in and out of court and, as modified by the Proposed Order, reflect the qualifications and limits on the indemnification provisions that are customary in this district and others.

## BASIS FOR RELIEF

28. The Debtors seek retention and employment of EY LLP pursuant to section 327(a) of the Bankruptcy Code, which provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

29. Section 328(a) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provide under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

30. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

31. As set forth above, the Debtors have selected EY LLP to provide the services set forth in the Engagement Letters and described herein because of EY LLP's experience and widely recognized reputation for excellence. EY LLP possesses extensive accounting, auditing, valuation, and tax advising experience that will be useful to the Debtors, and has indicated a desire and willingness to act in these Chapter 11 Cases and render the relevant professional services to the Debtors, subject to the Court's approval of the Engagement Letters. Furthermore, because of EY LLP's prepetition employment by the Debtors, EY LLP has developed institutional knowledge concerning the Debtors' business practices relevant to the anticipated services to be provided by EY LLP. In light of this, EY LLP is well-suited to provide the Debtors with the services contemplated by the Engagement Letters.

32.     The Debtors believe that the Fee and Expense Structure appropriately reflects the nature of the services to be provided by EY LLP in connection with these Chapter 11 Cases, and is consistent with, and typical of, arrangements entered into by EY LLP and other audit, tax and accounting firms with respect to rendering comparable services for clients similar to the Debtors, both in and out of chapter 11.  EY LLP and the Debtors also believe that the Fee and Expense Structure is reasonable and at favorable market rates.  The Fee and Expense Structure and the indemnification provisions set forth in the Engagement Letters are reasonable terms and conditions of employment and should be approved by the Court under section 328(a) of the Bankruptcy Code in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) EY LLP's substantial experience with respect to the relevant services; and (d) the nature and scope of work anticipated to be performed by EY LLP in connection with these Chapter 11 Cases.

33.     Furthermore, not granting the relief requested herein would deprive the Debtors of the assistance of a highly qualified professional accounting and consulting firm, which would disadvantage the Debtors and all parties in interest in these Chapter 11 Cases.  The Debtors would be potentially forced to engage a new professional lacking the same understanding of the Debtors' business practices.  Also, engaging a new professional accounting and consulting firm to fill this void would necessarily require the Debtors to needlessly expend additional time and resources at a critical stage of these Chapter 11 Cases.  Accordingly, the Debtors submit that the services provided by EY LLP are critical to the success of these Chapter 11 Cases.

## **NOTICE**

34.     Notice of this Application will be given by first-class mail to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the United States Attorney's

Office for the District of Delaware; (iv) the attorneys general for the states in which the Debtors conduct business; (v) counsel to the Ad Hoc First Lien Group; (vi) counsel to the Ad Hoc Crossholder Group; (vii) the ABL Agent and counsel thereto; (viii) the DIP Agent and counsel thereto; (ix) the Internal Revenue Service; (x) the Securities and Exchange Commission; and (xi) all parties that, as of the filing of this Application, have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  A copy of this Application is also available on the Debtors' case website at http://www.primeclerk.com/Pyxus. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors request entry of the Proposed Order, substantially in the forms attached as **Exhibit 1**, granting the relief requested in its entirety and any other relief as is just and proper.

Dated: July 6, 2020                                       Pyxus International, Inc., *et al.*, Debtors and
                                                                        Debtors in Possession


                                                                        By: */s/ William L. O'Quinn, Jr.*
                                                                        Name: William L. O'Quinn, Jr.
                                                                        Title: Senior Vice President, Chief Legal Officer
                                                                                    and Secretary