# Exhibit 2

## Gerring Declaration

26493512.11

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PYXUS INTERNATIONAL, INC., *et al.*,[1] | § | Case No. 20-11570 (LSS) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

## DECLARATION OF RACHEL GERRING IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ERNST & YOUNG LLP AS THEIR ACCOUNTING, VALUATION, TAX AND INTERNAL AUDIT PROVIDER EFFECTIVE AS OF THE PETITION DATE

I, Rachel Gerring, hereby declare pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") as follows:

1. I am a partner of Ernst & Young LLP ("***EY LLP***"). I provide this Declaration on behalf of EY LLP in support of the *Debtors' Application for an Order Authorizing the Employment and Retention of Ernst & Young LLP as Their Accounting, Valuation, Tax and Internal Audit Provider, Effective as of the Petition Date* (the "***Application***") for the above-captioned debtors (the "***Debtors***") to retain EY LLP as their accounting, valuation, tax and internal audit services provider, effective as of June 15, 2020 (the "***Petition Date***"), pursuant to the terms

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's United States federal tax identification number, are: Pyxus International, Inc. (6567), Alliance One International, LLC (3302), Alliance One North America, LLC (7908), Alliance One Specialty Products, LLC (0115) and GSP Properties, LLC (5603). The Debtors' mailing address is 8001 Aerial Center Parkway, Morrisville, NC 27560-8417.

26674992.8

and conditions set forth in the agreements between the Debtors and EY LLP attached hereto as **Exhibits A-1 through A-14**[2] (the "*Engagement Letters*").[3]

2. The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other employees of EY LLP under my supervision and direction. The procedures pursuant to which EY LLP determined whether there were any connections between EY LLP and interested parties in these cases are described below. The results of that investigation are set forth herein and in **Exhibit B** annexed hereto.

3. As set forth in further detail in the Engagement Letters, EY LLP has agreed to provide certain accounting, valuation, tax and internal audit services (the "*Services*") to the Debtors in connection with these Chapter 11 Cases. A summary description of each of the Services is summarized below and fully described in the Engagement Letters[4]:

**A.    Tax Services – FY20 Provision Co-Sourcing (Exhibit A-1 and Exhibit A-13**[5]**)**

EY LLP will review the Federal tax provisions prepared by Pyxus and assist Pyxus' tax department related to income tax reserves for the years ended March 31, 2019 ("*FY19*"), March 31, 2020 ("*FY20*"), and March 31, 2021 ("*FY21*"). This will include both the quarterly tax provisions for the fiscal quarters of FY19 – FY21 and the year-end tax provision for these fiscal years. Additionally, EY LLP will assist Pyxus with international tax, tax reform and reviewing transfer pricing matters, and provide tax technology assistance.

---

[2] **Exhibit A-14** is the Master Services Agreement that governs the specific services EY LLP will provide under the Statements of Work presented in **Exhibit A-1 through A-13.**

[3] Capitalized terms used but otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letters.

[4] The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of the Engagement Letters themselves. To the extent there is any discrepancy between the summaries contained in this Declaration and the terms of the Engagement Letters themselves, the terms of the Engagement Letters shall control. Unless otherwise defined, capitalized terms used in these summaries shall have the meanings ascribed to them in the Engagement Letters.

[5] The Debtors and EY LLP modified the terms of certain Statements of Work pursuant to that certain Omnibus Amendment, dated as of June 26, 2020 (the "*Omnibus SOW Amendment*"). A copy of the Omnibus SOW Amendment is attached as **Exhibit A-13**.

26674992.8

B. **Tax Services – Transfer Pricing Controversy and Documentation - FY20 (Exhibit A-2 and Exhibit A-13)**

EY LLP will prepare transfer pricing documentation with respect to certain intercompany transactions, intended to meet the minimum documentation requirements of their respective countries. In conjunction with the delivery of the documentation, EY LLP will provide insight to Pyxus regarding any specific filing and/or disclosure requirements for each in-scope country. EY LLP also will provide to Pyxus tax advice and controversy services concerning the examinations by the tax authorities and audit defense of the income tax return and related intercompany obligations (*e.g.,* withholding taxes) in certain jurisdictions.

C. **Tax Services – FY20 Routine On-Call Assistance (Exhibit A-3 and Exhibit A-13)**

EY LLP will provide on call tax advisory and tax compliance services, including, but not limited to: (i) answering one-off questions, (ii) drafting memos, (iii) assisting with general transactional issues, (iv) assisting Pyxus in connection with its dealings with tax authorities (other than representing Pyxus in an examination or an appeal before the IRS or other taxing authority), and (v) the preparation of computations, requests for extensions of tax return due dates, and one-off sales, use, excise, and property tax returns.

D. **Tax Services – China RO Deregistration (Exhibit A-4 and Exhibit A-13)**

EY LLP will provide tax advisory services in connection with the deregistration of a representative office in China, and will also assist in the deregistration of the China representative office with other governmental authorities.

E. **Tax Services – Global Internal Restructuring – Design & Implementation (Exhibit A-5 and Exhibit A-21)**

EY LLP will provide tax-related services, including macro step and micro step plans outlining the steps needed, by jurisdiction, to transition from current state structure to the proposed final state, and related evaluations, analyses and technical memoranda. EY LLP also will provide valuation services related to certain legal entities that will be subject to the Debtors' internal restructuring.

F. **Valuation Services – VME IBR Valuation (Exhibit A-6 and Exhibit A-13)**

EY LLP will assist in providing a recommendation of the Incremental Borrowing Rates to support the Company's adoption of Accounting Standards Codification No. 842 and its ongoing financial reporting requirements.

G. **Accounting and Valuation Services – CECL - Phase 3 (Exhibit A-7 and Exhibit A-13)**

EY LLP will provide accounting and valuation services in connection with Pyxus' adoption of Accounting Standards Update 2016-13 related to the "expected credit loss" model under Accounting Standards Codification 326.

H. **Accounting Services – Accounting Optimization (Exhibit A-8 and Exhibit A-13)**

26674992.8

3

EY LLP will provide accounting and financial reporting assistance to enhance Pyxus' financial reporting functions relating to month-end close, financing reporting disclosures, and accounting policies.

**I.      Internal Audit Services – Internal Audit (Exhibit A-9 and Exhibit A-13)**

EY LLP will assist Pyxus with its internal audit plan and activities. Services include SOX compliance efforts, developing processes to conduct or revise enterprise risk and fraud risk assessments and developing a data analytics strategy to be leveraged as appropriate in the internal audit, SOX and FCPA programs/procedures.

**J.      Tax Services – Expatriate Services (Exhibit A-10 and Exhibit A-13)**

EY LLP will provide U.S. and Malawi tax compliance services for Participants in the Pyxus' mobility program, including, annual individual federal tax returns, state and local tax returns, request for extensions and various other related services.

**K.      Tax Services – China Restructuring Support (Exhibit A-11 and Exhibit A-13)**

Prior to the Petition Date, Pyxus engaged EY LLP to assist with the indirect transfer of ownership of one of Pyxus' Chinese entities. In connection therewith, EY LLP will assist in: (i) understanding the registration requirements; (ii) preparing and submitting of the registration package; and (iii) assisting in follow up on the status and additional communications, if necessary. Further, EY LLP will coordinate with various resources[6] and the Pyxus team to answer questions as they arise. Lastly, EY LLP will assist with the voluntary reporting for the indirect transfer of China import WFOE to the China tax authorities and obtain their verbal feedback.

**L.      Tax Services – Debt Restructuring (Exhibit A-12)**

EY LLP will work with appropriate Pyxus personnel and/or Pyxus' outside counsel and other advisors in developing an understanding of the tax implications associated with Pyxus' Chapter 11 filing.

\* \* \*

## EY LLP'S DISINTERESTEDNESS

4.      To the best of my knowledge, information and belief formed after reasonable inquiry, EY LLP (a) does not hold nor represent any interest materially adverse to the Debtors' estates in the matters for which EY LLP is proposed to be retained and (b) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as required under section 327(a) of the Bankruptcy Code. Moreover, to the best of my knowledge,

---

[6] EY China will not provide services to the Debtors while the Debtors are in bankruptcy.

26674992.8

information and belief, EY LLP's retention is not prohibited or restricted by Bankruptcy Rule 5002. Accordingly, I believe that EY LLP is eligible for retention by the Debtors under the Bankruptcy Code.

5. On or about March 30, 2020 and April 3, 2020, the Debtors provided EY LLP two (2) retainer payments totaling $550,000 in the aggregate for accounting, valuation, tax and internal audit services, and subsequently paid replenishments of the retainers (the "*Retainer*"). As of the Petition Date, the balance of the Retainer was $798,248.[7] EY LLP shall apply the remaining balance of the Retainer toward post-petition fees and expense reimbursements that the Debtors are authorized to pay to EY LLP during these Chapter 11 Cases.

6. During the ninety (90) days before the Petition Date, the Debtors paid approximately $7,027,761 to EY LLP, of which approximately $3,497,655 constituted the Retainer payments and subsequent replenishments.

| Payment Date | Payment Amount | Invoice Date | Invoice Amount |
|---|---|---|---|
| 3/19/2020 | $66,385.95 | 2/5/2020 | $66,385.95 |
| 3/19/2020 | $45,320.02 | 2/5/2020 | $45,320.02 |
| 3/19/2020 | $331,711.40 | 2/5/2020 | $331,711.40 |
| 3/19/2020 | $267,466.23 | 2/7/2020 | $267,466.23 |
| 3/19/2020 | $36,266.30 | 2/7/2020 | $36,266.30 |
| 3/19/2020 | $ 7,225.45 | 2/7/2020 | $7,225.45 |
| 3/19/2020 | $158,553.17 | 2/7/2020 | $158,553.17 |
| 3/19/2020 | $ 1,170.08 | 2/7/2020 | $1,170.08 |
| 3/19/2020 | $134,836.27 | 2/7/2020 | $134,836.27 |
| 3/19/2020 | $281,642.50 | 2/7/2020 | $281,642.50 |
| 3/19/2020 | $151,591.28 | 2/7/2020 | $151,591.28 |
| 3/19/2020 | $33,478.00 | 3/3/2020 | $33,478.00 |
| 3/19/2020 | $345,195.65 | 3/4/2020 | $345,195.65 |
| 3/19/2020 | $ 3,600.00 | 3/13/2020 | $3,600.00 |
| 3/19/2020 | $12,500.00 | 3/13/2020 | $12,500.00 |
| 3/26/2020 | $7,596.25 | 3/19/2020 | $7,596.25 |
| 3/26/2020 | $250,003.87 | 3/19/2020 | $250,003.87 |
| 3/26/2020 | $91,024.00 | 3/20/2020 | $91,024.00 |

---

[7] As noted above, because EY LLP received subsequent replenishments of the Retainer, the balance of the Retainer is higher than the initial Retainer amount.

26674992.8

5

| Payment Date | Payment Amount | Invoice Date | Invoice Amount |
|---|---|---|---|
| 3/26/2020 | $84,156.00 | 3/20/2020 | $84,156.00 |
| 3/26/2020 | $21,250.00 | 3/20/2020 | $21,250.00 |
| 3/30/2020 | $87,550.00 | 10/25/2019 | $87,550.00 |
| 3/30/2020 | $101,082.00 | 11/1/2019 | $101,082.00 |
| 3/30/2020 | $27,721.00 | 11/1/2019 | $27,721.00 |
| 3/30/2020 | $148,615.61 | 3/19/2020 | $148,615.61 |
| 3/30/2020 | $144,953.96 | 3/19/2020 | $144,953.96 |
| 3/30/2020 | $40,504.73 | 3/19/2020 | $40,504.73 |
| 3/30/2020 | $54,082.55 | 3/20/2020 | $54,082.55 |
| 3/30/2020 | $5,082.39 | 3/20/2020 | $5,082.39 |
| 3/30/2020 | $21,196.02 | 3/23/2020 | $21,196.02 |
| 3/30/2020 | $121,473.00 | 3/23/2020 | $121,473.00 |
| 3/30/2020 | $83,682.24 | 3/23/2020 | $83,682.24 |
| 3/30/2020 | $30,992.81 | 3/23/2020 | $30,992.81 |
| 3/30/2020 | $57,706.75 | 3/23/2020 | $57,706.75 |
| 3/30/2020 | $5,092.48 | 3/23/2020 | $5,092.48 |
| 4/8/2020 | $50,000 (Retainer) | 4/1/2020 | $50,000.00 |
| 4/8/2020 | $500,000 (Retainer) | 4/3/2020 | $500,000.00 |
| 4/15/2020 | $44,933.75[8] | 4/1/2020 | $44,933.75 |
| 4/15/2020 | $16,072.50[8] | 4/1/2020 | $16,072.50 |
| 4/15/2020 | $5,000.00[8] | 4/1/2020 | $5,000.00 |
| 4/15/2020 | $46,510.09 (Retainer) | 4/10/2020 | $46,510.09 |
| 4/22/2020 | $203,391.93[8] | 4/14/2020 | $203,391.93 |
| 4/22/2020 | $109,574.23 (Retainer) | 4/14/2020 | $109,574.23 |
| 4/22/2020 | $46,326.74 (Retainer) | 4/17/2020 | $46,326.74 |
| 4/29/2020 | $290,687.02 (Retainer) | 4/21/2020 | $290,687.02 |
| 5/6/2020 | $329,119.62 (Retainer) | 4/28/2020 | $329,119.62 |
| 5/6/2020 | $702,228.53 (Retainer) | 5/4/2020 | $702,228.53 |
| 5/14/2020 | $357,512.19 (Retainer) | 5/11/2020 | $357,512.19 |
| 5/20/2020 | $4,635 (Retainer) | 4/20/2020 | $4,635.00 |
| 5/20/2020 | $483,489.81[9] (Retainer) | 5/18/2020 | $264,212.41 |

---

[8] Payment related to services provided prior to the date retainer was paid.
[9] Client overpaid due to a clerical error. Per discussion with the client, overpayment will be applied against future work.

26674992.8

6

| Payment Date | Payment Amount | Invoice Date | Invoice Amount |
|---|---|---|---|
| 6/4/2020 | $109,470.97 (Retainer) | 5/26/2020 | $109,470.97 |
| 6/4/2020 | $179,980.36 (Retainer) | 6/1/2020 | $179,980.36 |
| 6/10/2020 | $247,820.25 (Retainer) | 6/8/2020 | $247,820.25 |
| 6/10/2020 | $40,300 (Retainer) | 6/10/2020 | $40,300.00 |

## **PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES**

7.  EY LLP intends to charge the Debtors fees for the Services, as set forth below.

| SOW Description | Breakout | Partner / Principal | Executive Director | Senior Manager | Manager | Senior | Staff / Assistant | Other |
|---|---|---|---|---|---|---|---|---|
| Tax Services – FY20 Provision Co-Sourcing (Exhibit A-1 and A-13) | Core Team | $670 | $560 | $450 | $325 | $255 | $170 | |
| | Specialty | $705 | $600 | $495 | $375 | | | |
| | National | $780 | $670 | $585 | | | | |
| Tax Services – FY20 Transfer Pricing Documentation (Exhibit A-2 and A-13) |  | *FYE 2021 Projects:* Global transfer pricing documentation, including new comparable companies search - $360,000 Controversy services performed during FY2021 - $300,000 Country-by-country Reporting (for FY2020) - $25,000 One-time financing Feasibility Assessment for intercompany finance transactions - $45,000 *FY2022 and FY2023 Project:* Global transfer pricing documentation update (related to FY2021) - $270,000 Global transfer pricing documentation update (related to FY2022) - $270,000 Annual Country-by-Country Reporting - $25,000 | | | | | | |
| Tax Services – FY20 Routine On-Call Assistance (Exhibit A-3 and A-13) | Core Team | $695 | $580 | $475 | $385 | $280 | $185 | |
| | Specialty | $745 | $610 | $510 | $405 | | | Will not exceed $140,000 for FY2021 |
| | National | $805 | $695 | $605 | | | | |
| Tax Services – China RO Deregistration (Exhibit A-4 and A-13) |  | Pyxus to be billed at 60% of the standard hourly rate for each professional. Estimated Range: $114,000 to $200,000 | | | | | | |
| Tax Services – Global Internal Restructuring - Design & |  | Pyxus to be billed at 60% of the standard hourly rate for each professional. EY LLP approximates fees for the Services to be as follows: | | | | | | |

26674992.8

7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Implementation (Exhibit A-5 and A-13) | $985,000 for tax design and implementation $50,000 for Phase 1 tax $200,000 for Phase 2 tax $400,000 for valuation | | | | | | |
| Valuation Services – VME IBR Valuation (Exhibit A-6 and A-13) | $50,000 to $75,000 for Adoption Analysis Date[10] $10,000 to $15,000 for Subsequent Analysis Date | | | | | | |
| Accounting and Valuation Services – Current Expected Credit Loss (CECL) - Phase 3 (Exhibit A-7 and A-13) | | $670 | | $525 | $455 | $385 | |
| Accounting Services – Accounting Optimization (Exhibit A-8 and A-13) | | $585 | | $475 | $390 | $300 | $225 |
| Internal Audit Services – Internal Audit (Exhibit A-9 and A-13) | | $500 | $350 | $210 | $150 | $120 | Total professional fees will not exceed $3,300,000 for FY21. |
| Tax Services – Expatriate Services (Exhibit A-10 and A-13)[11] | | $775 | $725 | $650 | $550 | $450 | $275 | US COMPLIANCE FIXED FEES: $1,525 per Annual Individual Fed tax return $475 per state/local income tax return $475 per extension $550 per Form FinCEN 114 $450 per Form 8938 $575 per meeting/call $475 per tax settlement calc MALAWI COMPLIANCE FIXED FEES: $500 per meeting/call $400 per month per monthly payroll tax calc $500 per tax clearance application ON CALL SERVICES: Not to exceed $10k in professional fees |

---

[10] This work was completed and paid pre-petition.

[11] For this agreement, hourly rates are charged for the preparation of tax returns that include more than three Schedule K-1s, preparation of tax returns including more than one rental property, and responses to correspondence audits/inquiries by Federal, State and/or local tax authorities regarding returns prepared by EY LLP. See language above for scope items for which a fixed fee is agreed upon.

26674992.8

8

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | TAX RETURN SERVICES TO BE PAID BY PARTICIPANT: Not to exceed $10,000 per Participant |
| Tax Services – China Restructuring Support (Exhibit A-11 and A-13) | Pyxus shall pay a fee of up to $30,000 for the part 1 and part 2 Services. A breakdown is as below: Part 1 - $15,000 - $20,000 Part 2 - $6,500 - $9,500 (assuming 8-12 senior manager hours) Part 3 - to be discussed with the management | | | | | | | |
| Tax Services – Debt Restructuring (Exhibit A-12) | | $900 | $850 | $725 | $650 | $475 | $300 | |

8. EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which the Debtors shall pay (other than taxes imposed on EY LLP's income generally).

9. In addition to the fees set forth above, the Debtors shall reimburse EY LLP for any direct expenses incurred in connection with EY LLP's retention in these cases and the performance of the Services set forth in the Engagement Letters including all added taxes, sales taxes, and other indirect taxes. EY LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses (including any fees or reasonable expenses of EY LLP's legal counsel) related to this engagement.

26674992.8

9

10. If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in responding to such requests.

11. EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY LLP would otherwise pass onto its clients.

**CERTAIN OTHER TERMS OF THE ENGAGEMENT LETTERS**

12. EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters.

13. The Engagement Letters may be terminated by EY LLP or the Debtors in accordance with their terms. The Debtors or EY LLP may terminate the Engagement Letters at any time in writing, but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or the liquidation of the Debtors' assets under chapter 11 or 7 of title 11 of the Bankruptcy Code, or otherwise. Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination. Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

14. Copies of the Engagement Letters are submitted with this Declaration for approval.[12] EY LLP's provision of Services to the Debtors is contingent upon the Court's approval

---

[12] To the extent that this Declaration and the terms of the Engagement Letters are inconsistent, the terms of the Engagement Letters shall control.

26674992.8

10

of each term and condition set forth in the Engagement Letter. Included among the terms and conditions set forth in the Engagement Letter is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Pyxus or its subsidiaries or of Ernst & Young) shall be brought in the Bankruptcy Court or the applicable District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Exhibit B to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Pyxus, Ernst & Young and any all successors and assigns thereof.

## DISCLOSURE OF CONNECTIONS

15.     In connection with EY LLP's proposed retention by the Debtors, Debtors' counsel provided the names of parties in interest in these cases to EY LLP on or about April 16, 2020. EY LLP then searched, or caused to be searched, certain databases to determine whether it has provided during the last three (3) years, or is currently providing, services to the specific parties listed on **Exhibit B** hereto (the "*Parties in Interest*"). To the extent that EY LLP's research of relationships with the Parties in Interest indicated that EY LLP has during the last three (3) years, or currently has, a client relationship with these specific Parties in Interest in matters unrelated to these Chapter 11 Cases, it has so indicated on **Exhibit B** to this Declaration.

26674992.8

16. The connections check described herein was run *only* for EY LLP (*i.e.*, the specific firm that the Debtors seek to engage under the Application), and *not* for any other member firm of EYGL (as defined herein). Moreover, the connections check results set forth in **Exhibit B** relate only to EY LLP and not any other member firm of EYGL.

17. To the best of my knowledge, information and belief at this time, formed after reasonable inquiry, except as otherwise stated herein, none of the services rendered by EY LLP to the entities set forth on the attached **Exhibit B** have been in connection with the Debtors or these Chapter 11 Cases.

18. EY LLP may perform services for its clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status. The disclosures set forth herein do not include specific identification of such services. If such clients of EY LLP are Parties in Interest in these cases, **Exhibit B** hereto indicates that they are also clients of EY LLP. Should additional significant relationships with Parties in Interest become known to EY LLP, a supplemental declaration will be filed by EY LLP with the Court.

19. The Ernst & Young global network comprises independent professional services practices conducted by separate legal entities throughout the world. Such legal entities are members of Ernst & Young Global Limited ("*EYGL*"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital. The member firms of EYGL have agreed to operate certain of their professional practices in accordance with agreed standards but remain separate legal entities.

20. In the ordinary course of business, certain EYGL member firms located throughout the world (collectively referred to herein as "*EY Support Firms*") provide various

professional, administrative and back office support services ("**Support Services**") for other EYGL member firms throughout the world, as requested, coordinated and directed by the EYGL member firms (including EY LLP) to whom such Support Services are provided.

21. EYGL member firms (including EY LLP) that elect to utilize Support Services in a given year contract for allocation of a set number of EY Support Firms' professional hours for that year, and may pay such EY Support Firms a fixed amount for such assistance on a full time equivalent basis, plus any related expenses incurred by such EY Support Firms in connection with the provision of related Support Services. The EY Support Firms operate as cost centers. If EY Support Firms over recover their cost during the course of a year for Support Services, such over recovery may be returned to the EYGL member firms utilizing such Support Services as determined by a formula put in place each year by an operations supervisory group related to the EY Support Firms.

22. Prior to the Petition Date, EY LLP utilized and paid certain EY Support Firms for Support Services related to the Debtors and their non-debtor affiliates. Except for the connections check related Support Services described below, EY LLP does not intend to utilize EY Support Firms in providing Services to the Debtors following the Petition Date.

23. One particular Support Service performed for EY LLP by an EY Support Firm located in India (specifically, Ernst & Young Services Pvt Ltd. ("*EY Services*")) is connections check related services. EY LLP utilized and relied upon EY Services in performing EY LLP's connections check in order to prepare and execute this Declaration. The costs paid by EY LLP to EY Services for such connections check related services will not be billed to the Debtors.

24. Notwithstanding any use of EY Support Firms, EY LLP shall remain fully and solely responsible for any liabilities and obligations in respect of EY LLP's engagement and Services during these cases.

25. During these Chapter 11 Cases, member firms of EYGL in Canada, Switzerland, Macedonia, Kenya, Malawi, Zimbabwe, Argentina, Uganda, Guatemala, Tanzania and Brazil are expected to be engaged by non-debtor affiliates of the Debtors to perform certain services, and non-debtor affiliates will pay such members firms of EYGL directly for such services. EY LLP may provide services to such EYGL member firms in connection with their performance of such services to non-debtor affiliates.

26. During these Chapter 11 Cases, EY LLP expects to perform services for non-debtor affiliates of the Debtors, including FIGR Brands, Inc., Alliance One International AG, Alliance One Macedonia AD, Alliance One Tobacco Kenya Ltd., Alliance One Tobacco Argentina S.A., Alliance One Tobacco (Uganda) Limited, Alliance One Tobaco Guatemala S.A., Association of Tanzania Tobacco Traders and Alliance One Brasil Exportadora de Tabacos Ltda. pursuant to direct contractual arrangements with such entities. Additionally, before the Petition Date, EY LLP performed services for certain of the Debtors' non-debtor affiliates.

27. EY LLP engages in the practice of public accountancy and provides accounting and other professional services. All partners of EY LLP are Certified Public Accountants (CPAs). Ernst & Young U.S. LLP (the owners of which are the CPA partners of EY LLP and non-CPA principals) provides infrastructure and support services to EY LLP, including the services of CPA and non-CPA personnel. These personnel work for and are under the supervision of EY LLP when performing client services.

28. As part of its practice, EY LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or Parties in Interest in these cases. The following professionals whom EY LLP believes to be closely associated with the Debtors' Chapter 11 Cases have provided in the past and/or are currently providing services to EY LLP: Perella Weinberg Partners, Simpson Thacher & Bartlett LLP, Stroock & Stroock & Lavan LLP, Wachtell, Lipton, Rosen & Katz, Deloitte & Touche LLP and Robinson Bradshaw & Hinson PA.

29. EY LLP may currently be a party or participant in certain litigation matters involving Parties in Interest in these cases, which matters are unrelated to the Debtors or these Chapter 11 Cases.

30. EY LLP has thousands of professional employees. It is possible that certain employees of EY LLP may have business associations with Parties in Interest in these cases or hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.

31. To the best of my knowledge, information and belief, formed after reasonable inquiry, none of the services rendered by EY LLP to the entities set forth in **Exhibit B** hereto have been in connection with the Debtors or these Chapter 11 Cases. EY LLP believes that these relationships will not impair EY LLP's ability to objectively perform professional services on behalf of the Debtors. EY LLP will not accept any engagement that would require EY LLP to represent an interest materially adverse to the Debtors.

32. To the best of my knowledge, information and belief, neither the undersigned nor the EY LLP professionals expected to assist the Debtors in these matters are connected to the Judge, U.S. Trustee or assistant U.S. Trustee assigned to this matter.

26674992.8

15

33.  Despite the efforts described above to identify and disclose connections with Parties in Interest in these cases, because the Debtors are a large enterprise with numerous creditors and other relationships, EY LLP is unable to state with certainty that every client representation or other connection of EY LLP with Parties in Interest in these Chapter 11 Cases has been disclosed herein.  If EY LLP discovers additional information that requires disclosure, EY LLP will file supplemental disclosures with the Court.

34.  Certain entities that are Parties in Interest are lenders or 401(k) service providers to EY LLP:  Bank of America, N.A, Barclays Bank PLC, Citibank, N.A., JPMorgan Chase Bank, N.A., Lloyds Bank Corporate Markets plc, PNC Bank, National Association, and Wells Fargo Bank, National Association participate in EY LLP's Revolving Credit Program; EY LLP has borrowed long-term debt from American International Group UK Limited.  In addition, Chubb Group of Insurance Company is a surety bond provider on behalf of EY LLP.

35.  To the best of my knowledge, information and belief formed after reasonable inquiry, EY LLP does not hold nor represent any interest materially adverse to the Debtors in the matters for which EY LLP is proposed to be retained.  The proposed employment of EY LLP is not prohibited by or improper under Bankruptcy Rule 5002.  Accordingly, I believe that EY LLP is eligible for retention by the Debtors under title 11 of the Bankruptcy Code.

36.  To the best of my knowledge, information and belief, prior to the Petition Date, EY LLP performed certain professional services for the Debtors, including accounting, valuation, tax and internal audit services. At the Debtors' request following the Petition Date and prior to Court approval of EY LLP's engagement in these cases, EY LLP may provide in its sole discretion certain of the Services described in the Engagement Letters.  Thus, EY LLP requests that its retention be authorized effective as of June 15, 2020**.**

37. As of June 15, 2020, EY LLP was not owed any money by the Debtors in respect of services provided by EY LLP prior to the Petition Date.

38. Except as otherwise set forth herein, EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person.

39. EY LLP intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.

Pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated: July 6, 2020                */s/ Rachel Gerring*_____
                                   Rachel Gerring
                                   Ernst & Young LLP