# **Exhibit A-1**



EY
Building a better
working world

# Statement of Work

This Statement of Work, which is effective as of July 9, 2018 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Alliance One International, Inc. on behalf of itself and its affiliated entities (collectively, "you" or "Client"), pursuant to the Agreement, dated October 6, 2011 (the "Agreement") and amended on August 1, 2016 (the "Amendment"), between EY and Alliance One International, Inc.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the tax advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

## Scope of Services

We will provide the following tax advisory Services to you:

***Federal Provision Co-Sourcing***

*Income Tax Provision Review*

EY will review the tax provisions prepared by the Client for the years ended March 31, 2019 ("FY19"), March 31, 2020 ("FY20"), and March 31, 2021 ("FY21"). This will include both the quarterly tax provisions for the fiscal quarters of FY19 – FY21 and the year-end tax provision for these fiscal years. The following details the review that will be provided by EY:

- As instructed, EY will prepare or review the calculations which support the Client's annual income tax provision in accordance with ASC 740 for the fiscal years FY19, FY20, and FY21 for review by the Client. The Services will include, but will not be limited to, preparation of standard work papers and memorandums to support the provision calculation, permanent and temporary book-tax differences, book income tax accruals, preparation of draft consolidated tax entries and relected SEC footnote and MD&A disclosures. All judgments and the ultimate calculation of the tax provision will be the sole responsibility of the Client as will any accounting entry prepared.
- As instructed, EY will prepare or review the calculations for Client's final review and approval to support the quarterly income tax provision for the quarters ending during fiscal years FY19 – FY21.
- EY will assist Client in answering questions that may be posed by Client's external auditors including providing explanations regarding the annual or quarterly income tax provisions



EY
Building a better
working world

referenced above. In that regard, EY may provide requested schedules and/or calculations directly to the external auditors, but only where requested and approved by the Client.

- Where requested, EY will assist in the preparation of additional tax working papers supporting the calculation of consolidated income tax expense. This could include work papers supporting the treatment of certain accruals for tax purposes. In addition, where requested, EY can use its member firm network to assist in the preparation or review of local country tax provisions under US GAAP principles.
- Where requested, EY will assist Client in documenting deferred tax assets and liabilities, including considerations regarding valuation allowances. All judgment and determination of the need for and amount of a valuation allowance will be the sole responsibility of the Client, and the Client's independent auditors should concur.
- EY will review, reconcile and/or document deferred tax balances to supporting information
- EY will prepare or review rate reconciliation for review by the Client.
- EY will prepare or review the relevant tax footnotes to be included in public filings.
- EY will provide formal memorandum documenting their review for each quarterly and annual period.

*Income Tax Reserves Services*

EY will assist Client's tax department with the identification of potential uncertain tax positions and preparation of analysis of applicable tax laws, regulations, interpretations, court rulings, and administrative practices and precedents for management's consideration in reaching its own conclusions regarding the amount of tax benefit to be recognized under Accounting Standards Codification Topic 740 Income Taxes ("ASC 740").

Included in the above assistance will be a review of the General Disclosure Report ("GDR") for all current tax assessments that are open for potential exposures under ASC 740. Tax experts in jurisdictions with tax assessments will be utilized on an as requested basis.

Any memoranda and/or tax opinions prepared in connection with this engagement contain a summary of selected organizational and certain other tax technical requirements as they relate to the subject uncertain tax position of Client. These memoranda and/or tax opinions are intended to provide an analysis of certain applicable tax laws, regulations, interpretations, court rulings, etc., concerning substantive tax issues and the possible assessment of interest and penalty, where applicable. These memoranda and/or tax opinions are intended to provide management with information that may be useful in assisting management in reaching its own conclusions regarding the amount of tax benefit to be recognized under ASC 740.

All judgment and determination of the need for and amount of any liabilities for tax exposure items will be the sole responsibility of Client, as to which Client's independent auditors should concur.



EY
Building a better
working world

***International Tax Co-Sourcing***

EY will provide the following international tax services in conjunction with the above detailed provision co-sourcing services:

- Review, analyze, and modify the Client's Subpart F and E&P computations as needed.
- Review the organizational chart on a quarterly basis in conjunction with AOI personnel to ensure foreign disclosures are completed as required or exceptions are properly documented.
- Review, analyze, and modify the Client's existing APB 23 calculation to align with Client's permanent reinvestment assertion as needed. All judgments and determination of the permanent reinvestment assertion will be the sole responsibility of the Client.
- Prepare or review documentation related to foreign disclosure items.

Other international provisions of the US tax code which have international implications are covered below as part of "Tax Reform Services"

***Tax Reform Services***

On December 22, 2018, the Tax Cuts and Jobs Act ("TCJA") was passed in the US with major provisions that will affect the income tax provision calculation for the Client for the fiscal years to which this Statement of Work relates. Specifically related to the changes from this Act, EY will provide the following services:

- Review and update the Transition Tax calculation as needed, including when additional guidance is provided by relevant regulatory bodies.
- Assistance with the calculation of the Global Intangible Low Tax Income[1] ("GILTI") inclusion.
- Assistance with the calculation of the Base Erosion and Anti-Abuse Tax[2] ("BEAT").
- Assistance with the calculation of the new interest expense limitation[3].
- Assistance with the calculation of the Foreign Derived Intangible Income[4] ("FDII").
- As appropriate, EY will utilize its standalone Microsoft Excel-based version of EY's TCJA tax reform model to assist with any calculations needed by the Client.

---

[1] IRC Section 951A
[2] IRC Section 59A
[3] IRC Section 163(j)
[4] IRC Section 250



Building a better
working world

*Transfer Pricing Assistance*

EY will review the transfer pricing ratios for material jurisdictions on a quarterly basis for reasonableness and if necessary, offer suggestions on any necessary adjustments to be made. EY will also assist with accumulating calculations and explanations for any requests made by the external auditors.

*OneSource Tax Provision Assistance*

EY will provide tax technology assistance related to OneSource Tax Provision during the FY19, FY20, and FY21 quarterly and annual year-end close cycles as well as assistance with additional OTP functionality as requested by the Client. This assistance could include, but is not limited to, provision to return integration with OTP, administrative changes to reporting functionality, and general troubleshooting.

**Responsibilities**

EY does not assume any responsibility for, nor shall EY provide any assurance to Client's independent auditors that, the tax provision, related balance sheet accounts and footnote disclosures are prepared in accordance with U.S. GAAP or otherwise. Furthermore, the services described in this letter are not to be considered "accounting advice" to which AU Section 625 would apply, as the services rendered constitute tax technical services, tax calculations, compilation of tax data, and information related to tax matters at the direction of Client with no judgment relating to accounting matters including liabilities for tax exposure items or valuation allowances. Thus, the required auditor communications pursuant to AU Section 625 are not considered applicable.

Client shall have full responsibility for all decisions on all tax accounting matters, tax accounting procedures, internal controls and the calculation of its tax provision and the effective tax rate, as well as decisions with respect to the appropriate application of U.S. and foreign GAAP, as to which Client's independent auditors should concur. Client will, as reasonably requested by EY, direct its independent auditors to meet with EY to discuss the tax provision and any accounting issues that EY may identify.

**Your obligations**

We draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, and your representation, as of the date hereof, under paragraph 26 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

You will not, and you will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection



with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this SOW.

**Scope Specific Provisions**

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. We will not conduct a review to detect fraud or illegal acts.

EY, the other EY Firms and our respective service providers may Process Client Information obtained in connection with Services performed for you, for benchmarking, research, thought leadership and related purposes, and to enhance the services we provide to you and other clients, provided that we do not identify you or any individuals related to you, or otherwise make reference to you, in connection with these matters. In all such matters, we will comply with applicable law and professional obligations.

**Contacts**

You have identified Todd Compton as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be Andrew Williams.

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

You shall pay fees for the Services based on the time that our professionals spend performing them, billed at the following rates while the Services under this SOW are being performed.

| | |
|---|---|
| Partner/Principal | $630 |
| Executive Director | $515 |
| Senior Manager | $410 |
| Manager | $305 |
| Senior | $250 |
| Staff | $165 |
| National Tax | 40% discount |

The rate card above will be confirmed each year via email, prior to services being commenced.



EY
Building a better
working world

You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangments specifically requested by you. In addition, a charge will be added to our fees reflecting an estimated technology cost incurred equal to 3% of the professional fees for this engagement.

Payment is due upon receipt of our invoice.

Thanks again for your selection of our firm.

Ernst + Young LLP

Alliance One International, Inc., on behalf of itself and its affiliates

By: ______________________

Joel Thomas
Chief Financial Officer and Executive Vice President

Date: July 18, 2018

**Exhibit A-2**

**REDACTED IN ITS ENTIRETY**

**Exhibit A-3**


Building a better
working world

**Statement of Work**

This Statement of Work, which is effective as of May 29, 2020 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY" (previously "E&Y")) and Pyxus International, Inc. and, if applicable, its related entities, named herein ("you" or "Client"), pursuant to the Agreement, dated August 01,2016 , as amended by the Amendment dated and January 14, 2019 (the "Agreement"), between EY and Pyxus International, Inc..

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the tax advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Scope of Services**

We will provide the following tax assistance Services to you.

This SOW covers engagements when EY provides services concerning issues or projects ("projects") as requested by Client when such projects are not covered by a separate SOW. Pursuant to this SOW and as detailed in the paragraphs that follow, EY will provide to Client routine tax advisory services and assistance concerning issues as requested by Client when such projects are not covered by a separate SOW and do not involve any significant tax planning or projects ("on-call tax advisory services"). Upon Client's written request, pursuant to this SOW and as detailed in the paragraphs that follow, EY also will provide one-off tax compliance services as described below ("on-call tax compliance services"). This SOW applies to routine on-call projects commenced on or before the termination of the Agreement.

This SOW is intended to be used for engagements to respond to general tax questions and assignments that are expected, at the beginning of the project, to involve total professional time not to exceed (with respect to the specific project) $25,000 in professional fees.

<u>On-call tax advisory services</u>

The scope of on-call tax advisory services to be performed pursuant to this SOW may be agreed to orally or through written communications with Client such as e-mails.

A member firm of Ernst & Young Global Limited


Building a better
working world

The projects covered by this SOW include assistance with tax issues by answering one-off questions, drafting memos describing how specific tax rules work, assisting with general transactional issues, and assisting Client in connection with its dealings with tax authorities (other than representing Client in an examination or an appeal before the IRS or other taxing authority).

Specific tasks that may be involved in connection with the services include the following: participating in meetings and telephone calls with Client; participating in meetings and telephone calls with taxing authorities and other third parties where we are not representing Client in an examination or an appeal before the taxing authority; reviewing transaction-related documentation; researching technical issues; and preparing technical memoranda, letters, e-mails, and other written documentation.

This SOW is not intended to cover services related to significant tax planning or other projects where a mutual understanding of the scope of the engagement should be formally documented.

Accordingly, in lieu of this SOW, separate SOWs generally will be entered into in connection with such services, including but not limited to the following: services related to a transaction that is a reportable transaction, transaction of interest or transaction similarly designated by a tax authority; engagements where we will render formal opinions or opinions that will be relied upon by third parties; studies with respect to Client's tax attributes (e.g., basis studies or repairs and maintenance studies); loaned or assigned staff engagements; and due diligence engagements.

On-call tax compliance services

The on-call tax compliance services covered by this SOW include, upon Client's written request, the preparation of estimated tax computations and related vouchers and requests for extensions of tax return due dates, and the one-off preparation of sales, use, excise, and property tax returns. In lieu of this SOW, separate SOWs generally will be entered into for engagements when we prepare or review income tax returns, entries on income tax returns, Reports of Foreign Bank and Financial Accounts (FBARs / FinCEN Form 114), or when we will prepare sales, use, excise and property tax returns on a continuing basis.

The scope of on-call tax compliance services will be agreed to through written communications with Client such as an exchange of e-mails.

**Your Obligations**

We draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, and


Building a better
working world

your representation, as of the date hereof, under paragraph 26 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

You will not, and you will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this SOW.

**Scope Specific Provisions**

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. We will not conduct a review to detect fraud or illegal acts.

As part of this engagement, we may use EY Interact (EYI). EYI is a collaboration tool designed to facilitate the collection and distribution of information for the purpose of providing the Services. A description of how EY and you will share and store information in this tool in connection with this engagement is provided in the attached document titled "Use of EY Interact (EYI) for this engagement." All libraries (as described in the attached EYI document) will be established and used in accordance with relevant local law requirements.

We may subcontract a portion of the Services to one or more EY Firms and to subcontractors, including retired EY tax partners, working under our direction who may communicate directly with you. EY, however, will remain solely responsible to Client for the performance of the Services. If EY has prepared or reviewed (or will prepare or review) Client's U.S. income tax returns, Client authorizes the EY Firms, including those located outside the United States, and our subcontractors to disclose information received or generated in connection with the preparation of any such U.S. income tax returns of the Client to and among each other for the purpose of rendering the Services and discussing and providing other services to you. You have the ability to request a more limited disclosure of tax return information than that described above. If, at any time, you would like us to narrow the scope of the information to be disclosed, please contact us in writing and we will limit any disclosures that have not yet occurred. You acknowledge that this consent will be valid for three years from the date this SOW is signed by you below.

EY, the other EY Firms and our respective service providers may Process Client Information obtained in connection with Services performed for you, for benchmarking, research, thought leadership and related purposes, and to enhance the services we provide to you and other clients, provided that we do

A member firm of Ernst & Young Global Limited


Building a better
working world

not identify you or any individuals related to you, or otherwise make reference to you, in connection with these matters. In all such matters, we will comply with applicable law and professional obligations.

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

You shall pay fees for the tax Services based on the actual time that our professionals spend performing them, billed at the following agreed upon rates for each level while the tax Services under this SOW are being performed:

| | Core | Specialty | National |
|---|---|---|---|
| Partner / Principal | 695 | 745 | 805 |
| Managing Director | 580 | 610 | 695 |
| Sr. Manager | 475 | 510 | 605 |
| Manager | 385 | 405 | N/A |
| Senior | 280 | N/A | N/A |
| Staff | 185 | N/A | N/A |

You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you. In addition, a charge will be added to our fees reflecting an estimated technology cost incurred equal to 3% of the professional fees for this engagement.

Fees for fiscal year 2021 for this engagement will not exceed $140,000. We will bill you for our fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due upon receipt of our invoice.

**Contacts**

You have identified Phil Garofolo as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be Britt Byrom.

You confirm that you are authorized to bind all parties named herein to the terms of this SOW.

Thank you again for your selection of our firm.

A member firm of Ernst & Young Global Limited



Building a better
working world

Ernst & Young LLP

AGREED:
Pyxus International, Inc., on behalf of itself and its affiliates

By: ______________________

Date: 6/12/2020

A member firm of Ernst & Young Global Limited

**Exhibit A-4**



EY
Building a better working world

Ernst & Young LLP
Suite 500
4130 Parklake Avenue
Raleigh, North Carolina 27612

Tel: +1 (919) 981 - 2800
Fax: +1 (919) 981 - 2997
www.ey.com

# Statement of Work

This Statement of Work, which is effective as of April 9, 2018 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Alliance One International, Inc. ("AOI", "you" or "Client"), pursuant to the Agreement, dated August 1, 2016 (the "Agreement"), between EY and Alliance One International, Inc.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the tax advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

Scope of Services

We will provide the following tax advisory Services to you:

- Application for Tax Deregistration (excluding issuance of tax verification report – see below)
    - Assist in clarifying with the in-charge tax bureau their latest procedures and documentation requirements for the deregistration;
    - Collect the relevant documents required for the deregistration, and perform high-level risk assessment through quick review of such documents and discussion with management and your designated local auditor for the representative office ("RO");
    - Assist in the preparation of the draft deregistration documents for management's review and approval;
    - Submit the deregistration documents to the in-charge tax bureau and address the officials' queries;
    - Assist in the preparation of additional documents/explanation letter required by the in-charge tax bureau, if applicable;
    - Follow up with the in-charge tax bureau to expedite their approval on the deregistration as much as possible; and
    - Provide regular updates of the deregistration progress to management.
- Other deregistrations with various authorities

Once the tax deregistration is approved, the RO is required to go through the following deregistration formalities with various authorities. We will provide assistance related to deregistrations, (where applicable), including:

- Assist in the deregistration with Administration of Commerce and Industry;



Building a better working world

Ernst & Young LLP
Suite 500
4130 Parklake Avenue
Raleigh, North Carolina 27612

Tel: +1 (919) 981 - 2800
Fax: +1 (919) 981 - 2997
www.ey.com

- Assist in the deregistration with the Customs office, if applicable;
- Assist in the deregistration with the State Administration of Foreign Exchange ("SAFE");
- Assist in the deregistration with the Statistical Bureau;
- Assist in the deregistration with the Bank;
- Assist in the deregistration with the Public Security Bureau; and
- Assist in the deregistration with the Technology Supervision Bureau.

- Coordination among the relevant team(s)/agents for project management

To facilitate efficient process flow for EY US, EY Non-US offices, AOI, and outside counsel (as relevant), we will coordinate and/or be available for teleconferences, in-person meetings, and assist, where necessary, with follow-up and actions from calls and meetings. The Coordination could include, but is not limited to, internal or external weekly status calls or meetings, preparing for and preparing notes from calls, consolidating various EY local team updates, and preparing status updates.

Out of Scope Work

Please note that our above scope does not include assistance relating to extended discussion, controversy or negotiation with the in-charge tax bureau to resolve any major non-compliance issue or other matter. We shall be pleased to provide our scope of services and fee estimation for the above additional services when the need arises.

Your obligations

We draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, and your representation, as of the date hereof, under paragraph 26 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

You will not, and you will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this SOW.

Additional terms and conditions

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. We will not conduct a review to detect fraud or illegal acts.



Building a better working world

Ernst & Young LLP
Suite 500
4130 Parklake Avenue
Raleigh, North Carolina 27612

Tel: +1 (919) 981 - 2800
Fax: +1 (919) 981 - 2997
www.ey.com

To facilitate performance of the Services, we may (and may, subject to additional terms and conditions, including license agreements, permit your authorized representatives to) use certain software and tools that allow us to collaborate with you electronically, including Ernst & Young *eRoom* (collectively, "Collaboration Tools"). You shall not, and shall not permit third parties to, copy or modify any Collaboration Tools, or decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Collaboration Tools. COLLABORATION TOOLS ARE PROVIDED "AS IS," AND NONE OF EY OR ANY OTHER PARTY INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF ANY COLLABORATION TOOL MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY COLLABORATION TOOL, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, NON-INFRINGEMENT, TITLE, OR ANY WARRANTY THAT THE OPERATION OF ANY COLLABORATION TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE COMPATIBLE WITH ANY OF YOUR HARDWARE OR SOFTWARE. EY WILL NOT SUPPORT, MAINTAIN OR UPGRADE ANY COLLABORATION TOOL. YOU ASSUME SOLE RESPONSIBILITY FOR THE USE OF ANY COLLABORATION TOOL AND THE RESULTS THEREOF. Your use of Collaboration Tools (or use on your behalf) is not a substitute for any documentation or system of records you must create or maintain pursuant to law, including, without limitation, Internal Revenue Code Section 6001. You alone are responsible for maintaining separate copies of any documentation you input into any Collaboration Tool.

Client authorizes EY, its affiliates, and other members of the global Ernst & Young network, including those located outside the United States, to disclose tax return information relating to Client's tax returns, including prior year tax return information, to and among each other for the purpose of rendering the Services, discussing and providing related services to you (including bringing to your attention planning opportunities we may identify based upon the preparation and/or review of your tax returns), and conducting quality reviews and reviews of compliance with EY policies and professional standards. You have the ability to request a more limited disclosure of tax return information than that described above. If, at any time, you would like us to narrow the scope of the information to be disclosed, please contact us in writing and we will limit any disclosures that have not yet occurred. You acknowledge that this consent will be valid for three years from the date this SOW is signed by you below.

EY, the other EY Firms and our respective service providers may Process Client Information obtained in connection with Services performed for you, for benchmarking, research, thought leadership and related purposes, and to enhance the services we provide to you and other clients, provided that we do not identify you or any individuals related to you, or otherwise make reference to you, in connection with these matters. In all such matters, we will comply with applicable law and professional obligations.



Ernst & Young LLP
Suite 500
4130 Parklake Avenue
Raleigh, North Carolina 27612

Tel: +1 (919) 981 - 2800
Fax: +1 (919) 981 - 2997
www.ey.com

Contacts

You have identified Will O'Quinn as your contacts with whom we should communicate about these Services. Your contact at EY for these Services will be Andrew Williams.

Fees

The General Terms and Conditions of the Agreement address our fees and expenses generally.

You shall pay fees for the Services based on the time that our professionals spend performing them, billed at 60% of the standard hourly rate for each such individual, as adjusted annually while the Services under this SOW are being performed. Our fee quote has been prepared based on the complexity and risk of the respective ROs. In determining risk, EY considered both the size of the RO, as well as the current tax status. The more complex branches are expected to take a longer time to resolve. We estimate our fees for the Services to range from $114,000 to $200,000; however, this estimate is dependent on the level of inquiry from the Tax Authority. We will provide a regular update as to fee status, and will not exceed our fee range without prior approval.

| | Beijing | Kunming | Baoshan | Guiyang | Chengdu | Zhucheng | Total |
|---|---|---|---|---|---|---|---|
| Currently Exempt from CIT | No | Yes | Yes | Yes | Yes | Yes | - |
| Estimated Fee (Low End) | 23,000 | 23,000 | 23,000 | 17,000 | 17,000 | 11,000 | 114,000 |
| Estimated Fee (High End) | 39,375 | 39,375 | 39,375 | 29,375 | 29,375 | 19,575 | 196,450 |

You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you. In addition, a charge will be added to our fees reflecting an estimated technology cost incurred equal to 3% of the professional fees for this engagement.

We will bill you for our fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due upon receipt of our invoice.

Thanks again for your selection of our firm.

Ernst + Young LLP



Ernst & Young LLP
Suite 500
4130 Parklake Avenue
Raleigh, North Carolina 27612

Tel: +1 (919) 981 - 2800
Fax: +1 (919) 981 - 2997
www.ey.com

Alliance One International, Inc.

By: ______________________________

Joel Thomas
Chief Financial Officer

Date: April 10 2018

**Exhibit A-5**

**REDACTED IN ITS ENTIRETY**

**Exhibit A-6**



Building a better
working world

**TAS Valuation Services**
**Statement of Work**

This Statement of Work, dated 29 March 2019 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc. ("Pyxus International", "you", the "Company" or "Client"), formerly known as Alliance Once International, Inc., pursuant to the Agreement, dated 6 October 2011 and amended on 1 August 2016 (the "Agreement"), between EY and Alliance One International, Inc., now known as Pyxus International, Inc.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the transaction advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Objective and Purpose**

You would like our assistance in providing a recommendation of the Incremental Borrowing Rates ("Incremental Borrowing Rates" or "IBRs") for the Company to support your adoption of Accounting Standards Codification No. 842 ("ASC 842"), *Leases.*

We understand that you would like us to develop a recommendation of the IBRs as of the Company's adoption date of ASC 842 on 1 April 2019 (the "Adoption Analysis Date") and may request for assistance as of subsequent dates ("Subsequent Analysis Dates") through 30 March 2020 for financial reporting purposes consistent with ASC 842. Analysis performed as of Subsequent Analysis Dates set forth in this SOW may depend, among other things, on confirmation that our performance of such Services will not impair our independence, if required to you or any affiliated entities.

**Standard, Premise and Definition of Value**

The Incremental Borrowing Rate is defined in ASC 842 as:

> *"The rate of interest that a lessee would have to pay to borrow on a collateralized basis over a similar term an amount equal to the lease payments in a similar economic environment."*

**Scope of services**

We will perform the following valuation services described below with respect to the IBRs (the "Analysis"). We will perform the Services under this SOW in accordance with applicable standards established by the American Institute of Certified Public Accountants ("AICPA"). The Services under this SOW may also be subject to the requirements of the Principles of Appraisal Practice and Code of Ethics and the Business Valuation Standards of the American Society of Appraisers; the Code of Professional Ethics of the Appraisal Institute; the Code of Ethics and Standards of Professional Conduct of the CFA Institute; and the Uniform Standards of Professional Appraisal Practice ("USPAP") as set forth by the Appraisal Standards Board of the Appraisal Foundation, with which we will comply as applicable.

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

We will:

| Phase 1 | Scope detail |
|---|---|
| **Phase 1: Establish IBR methodology and provide a recommendation of IBRs as of the Adoption Analysis Date for the Company** | ▪ Estimate a USD denominated corporate secured borrowing curve, or yield curve, for the Company spanning 1-30 years based on the Company's credit rating and traded secured debt instruments; the secured yield curve will be based on bond level data provided by Eikon or Capital IQ, or yield curve data of similar credit rating to the Company's corporate credit rating pending your auditor's approval of use of such data and curves;<br>▪ Optionally and if requested by Management, translate the USD denominated secured yield curve estimated in the prior step into other currencies using market data, a centralized treasury approach or an approach agreed upon with your auditors;<br>▪ Discuss the overall methodology and market assumptions used to estimate the IBRs as of the Adoption Analysis Date with your auditors and respond to questions as needed; and<br>▪ Deliver a transmittal letter report that contains a cover sheet, our exhibits, a statement of limiting conditions and our certifications, as well as a methodological appendix for your auditor's review of the methodology, assumptions, and recommendations of IBRs as of the Adoption Analysis Date ("Report"). |
| **Phase 2: Subsequent Analysis Date** | ▪ As needed and if requested, provide a recommendation of the IBRs as of the Subsequent Analysis Dates using the methodologies and reports established in Phase 1 and market data as of the selected analysis date. |

Our Reports, including the Analysis, are not fairness opinions or investment advice. You will not rely on any of them as such, nor will you use them, or permit them to be used, as the basis to set a transaction price. EY assumes no responsibility to any buyer or seller to negotiate a purchase or sale at the value set forth in the written Report.

The Valuation will include a Statement of Limiting Conditions ("SLC"), a draft of which is attached hereto as Appendix A. If we determine that modifications or additions to the SLC will be required, we will notify you.

A member firm of Ernst & Young Global Limited



Building a better
working world

**Limitations on scope**

The Services under this SOW do not include the valuation of non-operating assets. If we discover material amounts of such property, you will either (1) engage us to perform a separate valuation of these items (subject to our agreement as to scope and fees) or (2) represent to us the value of those items, on which we would rely without further investigation for our use in performing the Services under this SOW.

We will not, in connection with the performance of the Services or otherwise, (i) act as a broker for the sale of any securities, (ii) solicit any potential buyer or seller (including you) to engage in any transaction, or (iii) act as a negotiator of a transaction.

These Services do not include any property appraisal in accordance with the Uniform Standards of Professional Appraisal Practice.

**Your specific obligations**

You will not, and you will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

We also draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, your obligations under paragraphs 11 and 12, and your representation, as of the date hereof, under paragraph 26 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

**Specific additional terms and conditions**

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review or examination of any entity's financial statements or prospective financial statements in accordance with generally accepted auditing standards or other applicable professional standards. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts, nor will we render any opinion as to the fairness or advisability of the proposed transaction or any other transaction.

Our Reports may contain advice or communications that may be privileged under Internal Revenue Code Section 7525. If such information is provided to persons other than your management, directors, or your legal counsel involved in its preparation or responsible for determining whether to implement it, you may waive such privilege.

A member firm of Ernst & Young Global Limited



Building a better
working world

You should be aware that the Internal Revenue Code imposes a penalty on an underpayment of tax attributable to any disallowance of claimed tax benefits because a transaction entered into after March 30, 2010, lacks "economic substance." The penalty rate is 20 percent if the transaction is adequately disclosed to the IRS, with the penalty rate increased to 40 percent if the transaction is not adequately disclosed in the relevant tax return or attachment to that return. As the penalty is one of strict liability, a taxpayer cannot show reasonable cause for the avoidance of the economic substance penalty by establishing reliance on the tax advice of a qualified advisor. Accordingly, our Tax Advice cannot provide any assurance that the claimed tax benefits of a transaction entered into after March 30, 2010 would not be subject to disallowance by reason of a determination by the IRS or the courts that a transaction lacks economic substance or fails to meet the requirements of any similar rule of law, nor can Tax Advice that we provide be relied upon to protect against applicable penalties that may be asserted if it is determined that the transaction lacked economic substance where otherwise required.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

Where our written consent under the Agreement is required for you to disclose to a third party any of our Reports (other than Tax Advice), we will also require that third party to execute a non-reliance and release letter acceptable to us in form and substance.

If we receive a request from a third party for any information relating to our Tax Advice, we will notify you and will not release any such information unless you have executed an appropriate written consent authorizing such disclosure and the third party has executed a non-reliance and release letter acceptable to us in form and substance.

**Timetable**

Unless otherwise agreed, and subject to the General Terms and Conditions of the Agreement, we expect to perform the Services during the period from March 2019 to June 2020. Subject to your timely provision of all information we deem necessary to perform these Services, we will send our preliminary draft values to you approximately four weeks from the date of this SOW for the Adoption Date and approximately within three weeks of Subsequent Analysis Dates (if performed).

**Contacts**

You have identified Phil Garofolo as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be Kris Shirley and Drew Banach.

A member firm of Ernst & Young Global Limited



Building a better
working world

**Fees and expenses**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

Total professional fees for the Services under this SOW will be between $50,000 and $75,000 for the Adoption Analysis Date and between $10,000 and $15,000 for each Subsequent Analysis Date as requested by the Client.

In addition, you shall reimburse EY for expenses incurred in connection with the performance of the Services, including reasonable and customary out-of-pocket expenses such as travel, meals accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. Actual out-of-pocket costs incurred by EY while executing the Services will be billed separately, not to exceed 2% of fees.

**Billing and Payment**

We will submit invoices on a monthly basis in arrears for actual hours and expenses incurred. Payment is due upon your receipt of our invoice. An initial billing will occur on later of (i) signing of this SOW or (ii) commencement of the Services, and will represent 25% of estimated fees. This initial payment will be credited against our final invoice.

To ensure timely and efficient submission of our invoices, we will submit invoices directly to Phil Garofolo You will provide a Purchase Order or other such details in a timely manner, should this be required by you for payment. Any delays in providing a Purchase Order or any information necessary for our invoicing will not affect the payment terms based on our invoice date.

You shall also pay all applicable taxes (including VAT and others imposed) incurred in connection with the delivery of the Services or the Reports (except for taxes imposed on EY's income). You shall also pay any administrative costs that result from billing arrangements specifically requested by you. A service charge of twelve (12) percent per annum (one (1) percent per month) will be added to each invoice to cover all amounts more than thirty (30) days overdue. EY reserves the right to suspend the Services if any invoices are more than 60 days overdue.

Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of the proposed transaction.

A member firm of Ernst & Young Global Limited



EY
Building a better working world

In witness whereof, the parties have executed this SOW as of the date set forth above.

By: Kris Shirley
Kris Shirley
Authorized Signatory

**Pyxus International**

By: [signature]
Name: PHILIP GAROFOLO
Title: VP - CORPORATE CONTROLLER

A member firm of Ernst & Young Global Limited

## Appendix A:
## Statement of Limiting Conditions

1. Nothing has come to our attention to cause us to believe that the facts and data set forth in this Report are not correct.

2. Provision of recommendations of IBRs and considerations of the issues described herein are areas of regular valuation practice for which we believe that we have, and hold ourselves out to the public as having, substantial knowledge and experience. The services provided are limited to such knowledge and experience and do not represent audit, advisory or tax-related services that may otherwise be provided by Ernst & Young LLP.

3. This Report has been prepared solely for the purpose stated, and may not be used for any other purpose. Neither this Report nor any portions hereof may be copied or disseminated through advertising, public relations, news, sales, Securities and Exchange Commission disclosure documents or any other public (or private) media without the express prior written approval of Ernst & Young LLP.

4. The recommendations of IBRs contained herein are not intended to represent the values of the subject assets at any time other than the effective date that is specifically stated in this Report. Changes in market conditions could result in recommendations of value substantially different than those presented at the stated effective date. We assume no responsibility for changes in market conditions or for the inability of the owner to locate a purchaser of the subject assets at the values stated herein.

5. No responsibility is assumed for information furnished by others, including management, and such information is believed to be reliable.

6. In the course of our analysis, we were provided with written information, oral information, and/or data in electronic form, related to the structure, operation, and financial performance of the subject company and subject assets. We have relied upon this information in our analyses and in the preparation of this Report and have not independently verified its accuracy or completeness.

7. We assume no responsibility for any financial and tax reporting judgments, which are appropriately those of management. It is our understanding that management accepts responsibility for any financial statement and tax reporting issues with respect to the assets covered by our analysis, and for the ultimate use of our Report.

8. Ernst & Young LLP is not required to furnish additional work or services, or to give testimony, or be in attendance in court with reference to the assets, properties, or business interest in question or to update any Report, recommendation, analysis, conclusion or other document relating to its services for any events or circumstances unless arrangements acceptable to Ernst & Young LLP have been separately agreed with the Company.

9. This Report does not comprise a Comprehensive Written Business Valuation Report as described in BVS-VIII, by the Business Valuation Committee of the American Society of Appraisers ("ASA") and approved by the ASA Board of Governors. Sections consisting of descriptions concerning the history and nature of the business, industry and economic outlook and historical financial analysis may have been omitted from this Report. Where applicable, the data underlying these sections will be retained in our working papers.



Building a better working world

**TAS Valuation Services**
**Statement of Work**

This Statement of Work, dated 29 March 2019 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc. ("Pyxus International", "you", the "Company" or "Client"), formerly known as Alliance Once International, Inc., pursuant to the Agreement, dated 6 October 2011 and amended on 1 August 2016 (the "Agreement"), between EY and Alliance One International, Inc., now known as Pyxus International, Inc.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the transaction advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Objective and Purpose**

You would like our assistance in providing a recommendation of the Incremental Borrowing Rates ("Incremental Borrowing Rates" or "IBRs") for the Company to support your adoption of Accounting Standards Codification No. 842 ("ASC 842"), *Leases.*

We understand that you would like us to develop a recommendation of the IBRs as of the Company's adoption date of ASC 842 on 1 April 2019 (the "Adoption Analysis Date") and may request for assistance as of subsequent dates ("Subsequent Analysis Dates") through 30 March 2020 for financial reporting purposes consistent with ASC 842. Analysis performed as of Subsequent Analysis Dates set forth in this SOW may depend, among other things, on confirmation that our performance of such Services will not impair our independence, if required to you or any affiliated entities.

**Standard, Premise and Definition of Value**

The Incremental Borrowing Rate is defined in ASC 842 as:

> *"The rate of interest that a lessee would have to pay to borrow on a collateralized basis over a similar term an amount equal to the lease payments in a similar economic environment."*

**Scope of services**

We will perform the following valuation services described below with respect to the IBRs (the "Analysis"). We will perform the Services under this SOW in accordance with applicable standards established by the American Institute of Certified Public Accountants ("AICPA"). The Services under this SOW may also be subject to the requirements of the Principles of Appraisal Practice and Code of Ethics and the Business Valuation Standards of the American Society of Appraisers; the Code of Professional Ethics of the Appraisal Institute; the Code of Ethics and Standards of Professional Conduct of the CFA Institute; and the Uniform Standards of Professional Appraisal Practice ("USPAP") as set forth by the Appraisal Standards Board of the Appraisal Foundation, with which we will comply as applicable.

A member firm of Ernst & Young Global Limited



Building a better
working world

We will:

| Phase 1 | Scope detail |
|---|---|
| **Phase 1: Establish IBR methodology and provide a recommendation of IBRs as of the Adoption Analysis Date for the Company** | ▪ Estimate a USD denominated corporate secured borrowing curve, or yield curve, for the Company spanning 1-30 years based on the Company's credit rating and traded secured debt instruments; the secured yield curve will be based on bond level data provided by Eikon or Capital IQ, or yield curve data of similar credit rating to the Company's corporate credit rating pending your auditor's approval of use of such data and curves;<br>▪ Optionally and if requested by Management, translate the USD denominated secured yield curve estimated in the prior step into other currencies using market data, a centralized treasury approach or an approach agreed upon with your auditors;<br>▪ Discuss the overall methodology and market assumptions used to estimate the IBRs as of the Adoption Analysis Date with your auditors and respond to questions as needed; and<br>▪ Deliver a transmittal letter report that contains a cover sheet, our exhibits, a statement of limiting conditions and our certifications, as well as a methodological appendix for your auditor's review of the methodology, assumptions, and recommendations of IBRs as of the Adoption Analysis Date ("Report"). |
| **Phase 2: Subsequent Analysis Date** | ▪ As needed and if requested, provide a recommendation of the IBRs as of the Subsequent Analysis Dates using the methodologies and reports established in Phase 1 and market data as of the selected analysis date. |

Our Reports, including the Analysis, are not fairness opinions or investment advice. You will not rely on any of them as such, nor will you use them, or permit them to be used, as the basis to set a transaction price. EY assumes no responsibility to any buyer or seller to negotiate a purchase or sale at the value set forth in the written Report.

The Valuation will include a Statement of Limiting Conditions ("SLC"), a draft of which is attached hereto as Appendix A. If we determine that modifications or additions to the SLC will be required, we will notify you.

A member firm of Ernst & Young Global Limited



Building a better
working world

**Limitations on scope**

The Services under this SOW do not include the valuation of non-operating assets. If we discover material amounts of such property, you will either (1) engage us to perform a separate valuation of these items (subject to our agreement as to scope and fees) or (2) represent to us the value of those items, on which we would rely without further investigation for our use in performing the Services under this SOW.

We will not, in connection with the performance of the Services or otherwise, (i) act as a broker for the sale of any securities, (ii) solicit any potential buyer or seller (including you) to engage in any transaction, or (iii) act as a negotiator of a transaction.

These Services do not include any property appraisal in accordance with the Uniform Standards of Professional Appraisal Practice.

**Your specific obligations**

You will not, and you will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

We also draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, your obligations under paragraphs 11 and 12, and your representation, as of the date hereof, under paragraph 26 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

**Specific additional terms and conditions**

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review or examination of any entity's financial statements or prospective financial statements in accordance with generally accepted auditing standards or other applicable professional standards. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts, nor will we render any opinion as to the fairness or advisability of the proposed transaction or any other transaction.

Our Reports may contain advice or communications that may be privileged under Internal Revenue Code Section 7525. If such information is provided to persons other than your management, directors, or your legal counsel involved in its preparation or responsible for determining whether to implement it, you may waive such privilege.

A member firm of Ernst & Young Global Limited



Building a better working world

You should be aware that the Internal Revenue Code imposes a penalty on an underpayment of tax attributable to any disallowance of claimed tax benefits because a transaction entered into after March 30, 2010, lacks "economic substance." The penalty rate is 20 percent if the transaction is adequately disclosed to the IRS, with the penalty rate increased to 40 percent if the transaction is not adequately disclosed in the relevant tax return or attachment to that return. As the penalty is one of strict liability, a taxpayer cannot show reasonable cause for the avoidance of the economic substance penalty by establishing reliance on the tax advice of a qualified advisor. Accordingly, our Tax Advice cannot provide any assurance that the claimed tax benefits of a transaction entered into after March 30, 2010 would not be subject to disallowance by reason of a determination by the IRS or the courts that a transaction lacks economic substance or fails to meet the requirements of any similar rule of law, nor can Tax Advice that we provide be relied upon to protect against applicable penalties that may be asserted if it is determined that the transaction lacked economic substance where otherwise required.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

Where our written consent under the Agreement is required for you to disclose to a third party any of our Reports (other than Tax Advice), we will also require that third party to execute a non-reliance and release letter acceptable to us in form and substance.

If we receive a request from a third party for any information relating to our Tax Advice, we will notify you and will not release any such information unless you have executed an appropriate written consent authorizing such disclosure and the third party has executed a non-reliance and release letter acceptable to us in form and substance.

**Timetable**

Unless otherwise agreed, and subject to the General Terms and Conditions of the Agreement, we expect to perform the Services during the period from March 2019 to June 2020. Subject to your timely provision of all information we deem necessary to perform these Services, we will send our preliminary draft values to you approximately four weeks from the date of this SOW for the Adoption Date and approximately within three weeks of Subsequent Analysis Dates (if performed).

**Contacts**

You have identified Phil Garofolo as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be Kris Shirley and Drew Banach.

A member firm of Ernst & Young Global Limited



Building a better
working world

**Fees and expenses**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

Total professional fees for the Services under this SOW will be between $50,000 and $75,000 for the Adoption Analysis Date and between $10,000 and $15,000 for each Subsequent Analysis Date as requested by the Client.

In addition, you shall reimburse EY for expenses incurred in connection with the performance of the Services, including reasonable and customary out-of-pocket expenses such as travel, meals accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. Actual out-of-pocket costs incurred by EY while executing the Services will be billed separately, not to exceed 2% of fees.

**Billing and Payment**

We will submit invoices on a monthly basis in arrears for actual hours and expenses incurred. Payment is due upon your receipt of our invoice. An initial billing will occur on later of (i) signing of this SOW or (ii) commencement of the Services, and will represent 25% of estimated fees. This initial payment will be credited against our final invoice.

To ensure timely and efficient submission of our invoices, we will submit invoices directly to Phil Garofolo You will provide a Purchase Order or other such details in a timely manner, should this be required by you for payment. Any delays in providing a Purchase Order or any information necessary for our invoicing will not affect the payment terms based on our invoice date.

You shall also pay all applicable taxes (including VAT and others imposed) incurred in connection with the delivery of the Services or the Reports (except for taxes imposed on EY's income). You shall also pay any administrative costs that result from billing arrangements specifically requested by you. A service charge of twelve (12) percent per annum (one (1) percent per month) will be added to each invoice to cover all amounts more than thirty (30) days overdue. EY reserves the right to suspend the Services if any invoices are more than 60 days overdue.

Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of the proposed transaction.

A member firm of Ernst & Young Global Limited



EY
Building a better working world

In witness whereof, the parties have executed this SOW as of the date set forth above.

By: Kris Shirley
Kris Shirley
Authorized Signatory

**Pyxus International**

By: [signature]
Name: PHILIP GAROFOLO
Title: VP - CORPORATE CONTROLLER

A member firm of Ernst & Young Global Limited

## Appendix A:
## Statement of Limiting Conditions

1. Nothing has come to our attention to cause us to believe that the facts and data set forth in this Report are not correct.

2. Provision of recommendations of IBRs and considerations of the issues described herein are areas of regular valuation practice for which we believe that we have, and hold ourselves out to the public as having, substantial knowledge and experience. The services provided are limited to such knowledge and experience and do not represent audit, advisory or tax-related services that may otherwise be provided by Ernst & Young LLP.

3. This Report has been prepared solely for the purpose stated, and may not be used for any other purpose. Neither this Report nor any portions hereof may be copied or disseminated through advertising, public relations, news, sales, Securities and Exchange Commission disclosure documents or any other public (or private) media without the express prior written approval of Ernst & Young LLP.

4. The recommendations of IBRs contained herein are not intended to represent the values of the subject assets at any time other than the effective date that is specifically stated in this Report. Changes in market conditions could result in recommendations of value substantially different than those presented at the stated effective date. We assume no responsibility for changes in market conditions or for the inability of the owner to locate a purchaser of the subject assets at the values stated herein.

5. No responsibility is assumed for information furnished by others, including management, and such information is believed to be reliable.

6. In the course of our analysis, we were provided with written information, oral information, and/or data in electronic form, related to the structure, operation, and financial performance of the subject company and subject assets. We have relied upon this information in our analyses and in the preparation of this Report and have not independently verified its accuracy or completeness.

7. We assume no responsibility for any financial and tax reporting judgments, which are appropriately those of management. It is our understanding that management accepts responsibility for any financial statement and tax reporting issues with respect to the assets covered by our analysis, and for the ultimate use of our Report.

8. Ernst & Young LLP is not required to furnish additional work or services, or to give testimony, or be in attendance in court with reference to the assets, properties, or business interest in question or to update any Report, recommendation, analysis, conclusion or other document relating to its services for any events or circumstances unless arrangements acceptable to Ernst & Young LLP have been separately agreed with the Company.

9. This Report does not comprise a Comprehensive Written Business Valuation Report as described in BVS-VIII, by the Business Valuation Committee of the American Society of Appraisers ("ASA") and approved by the ASA Board of Governors. Sections consisting of descriptions concerning the history and nature of the business, industry and economic outlook and historical financial analysis may have been omitted from this Report. Where applicable, the data underlying these sections will be retained in our working papers.

**Exhibit A-7**

**SOW— Adoption of ASU 2016-13 (CECL)**

## Statement of Work

*Phase 1 – ASC 326 Implementation Assistance*

This Statement of Work, dated August 28, 2019 (this "SOW") is made by Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc. ("Pyxus", "you" or "Client"), pursuant to the Agreement, dated August 1, 2016 (the "Agreement"), between EY and Pyxus International, Inc. (formally Alliance One International) to provide accounting assistance and other services as described below (the "Services").

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

### Scope of Services

Under this SOW, we will provide accounting and financial reporting assistance and other services as described below in connection with your adoption of ASU 2016-13 related to the new "expected credit loss" model under ASC 326, *Financial instruments – credit losses* ("ASC 326"). The Services will be divided into three phases: Phase 1 – Assessment, Phase 2 - Design, and Phase 3 – Implementation. At your direction, we may provide the following Services:

| Phase | Activities |
|---|---|
| *Upfront and ongoing project governance and planning* | ▪ Assist you in developing your project governance structure, including identifying your key stakeholders and process owners to serve as main contacts for the project<br>▪ Conduct a technical accounting, data, and modeling workshop with key stakeholders around ASC 326<br>▪ Assist you with ongoing project management activities |
| *Phase 1: Assessment* | |
| **Current State Assessment** | ▪ Provide insights and guidance regarding the requirements in ASC 326<br>▪ Assist you in developing an approach to identify the population of receivables and other financial assets that are in scope of ASC 326<br>▪ Assist you in developing your approach to identify relevant data and related documentation that would be required to calculate expected credit losses under ASC 326<br>▪ As applicable, assist you in developing surveys, enablers, and/or data analytic procedures to assist in the identification of in scope items for CECL and the understanding of current processes |

- Assist you in analyzing the surveys and related data received (for no more than 2 markets)
- Assess current quantitative methods, processes, and technology used for impairment purposes

**Gap assessment**

- Assist you in identifying differences between your existing accounting, reporting, and data collection practices and the requirements of ASC 326
- Assist you in preparing your accounting and disclosure gap analysis, with a focus on data requirements for future assets (i.e., assets where there is not associated allowance being recorded currently) expected to be within scope of ASC 326
- Identify other implementation matters for your consideration in adopting the ASC 326

*Phase 2: Design*

**Development of implementation plan**

- Assist you in formulating an approach to remediate gaps identified in Phase 1
- Assist you in developing a detailed list of data needs for in-scope assets
- Assist you in identifying potential changes to current processes, models, and data requirements to perform expected loss calculations
- Provide you with observations and recommendations from Phase 1 and Phase 2 to assist you in identifying potential changes to accounting policies, processes, and valuation and data collection methodologies for the future state
- Assist you in preparing a detailed implementation plan that bridges from current state to future state

*Phase 3: Implementation*

**Execution of implementation plan**

- Activities to be determined and agreed upon based on the results of Phase 2.
- Potential activities include the following:
    - Assist you in identifying and, at your request, gathering, the relevant data needed to determine the potential financial statement impact of ASC 326
- Based on the population of assets determined to be included within scope of ASC 326 (per Phase 1), assist you in assessing the potential materiality and impact of the expected credit loss model for in-scope assets

We may engage in discussions with your personnel, including officers and employees, and outside consultants, as determined by you. We may also read documentation, including contracts and memoranda, as specified by you. Further, we may identify factors or considerations that are relevant to your analysis of identified accounting and financial reporting matters. You are responsible for collecting and organizing data that is relevant to the Services. Data quality

deficiencies or delay in the delivery of such data may result in a delay in the time of the completion of the Services and incremental fees.

We may assist you in interpreting the relevant accounting and reporting literature based on your general circumstances, and provide our views on those factors (including your characteristics and structure) which may influence the choice of your accounting policy. We will not conclude on the appropriate accounting treatment based on specific facts or recommend which accounting policy/treatment you should select/adopt. Any observations we provide are intended to assist you as you reach, document and implement your own conclusions and will not constitute our concurrence with, or support of, your proposed accounting or reporting.

We may also provide your personnel, at your request, with general training sessions on certain accounting and financial reporting topics, including periodic updates on financial reporting developments.

At your request, we may provide you with the following written Reports[1]:

| Phase 1 | Reports |
|---|---|
| **Upfront and ongoing project governance and planning** | ▪ Drafting training and workshop materials related to ASC 326 |
| **Current State Assessment** | ▪ Feedback and observations on current accounting policies related to ASC 326<br>▪ Customized survey questionnaire<br>▪ Feedback and observations on survey responses<br>▪ Draft summary survey responses<br>▪ Analysis of sample receivables (for no more than 2 markets) |
| **Gap assessment** | ▪ Accounting data reporting and disclosure gap analysis based on the comparison of current accounting policies, proposed accounting policies based on ASC 326<br>▪ Observations and recommendations report on current-state policies, methodologies, and processes. |

| Phase 2 | Report |
|---|---|
| **Development of implementation plan** | ▪ Detailed roadmap for implementation |

We may, upon your written request, assist you in documenting the conclusions you have reached or positions you have taken on accounting and reporting matters, including the accounting policies you select.

[1] "Reports" is defined in the General Terms and Conditions as including all information, advice, recommendations or other content of any reports, presentations or other communications we provide to you.

You will be responsible for implementing and further customizing these Reports, and for your use thereof and their effectiveness. We will have no obligation with respect thereto.

**Limitations on scope**

We will not identify, address or correct any errors or defects in your computer systems, other devices or components thereof ("Systems"), whether or not due to imprecise or ambiguous entry, storage, interpretation or processing or reporting of data. We will not be responsible for any defect or problem arising out of or related to data processing in any Systems.

The Services shall exclude, in all regards, the accounting for receivables or other activities involving customers or persons in Iran.

The specific nature of the Services will depend both on the amount of detail you provide to us and the timeframe within which you require our assistance.

Any additional services to be performed by EY outside the scope of the Services set forth above or any change in the scope of the Services will be mutually agreed between the parties in writing.

Please note that our ability to perform additional phases at a future date may depend, among other things, on our mutual agreement that our performance of such services will not impair our independence, if required, related to you or any affiliated entities.

**Your specific obligations**

You alone are responsible for the scope and sufficiency of the Services. We also draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, your obligations under paragraphs 11 and 12, and your representation, as of the date hereof, under paragraph 26 thereof.

You alone are responsible for any decisions to implement actions identified in the Services, including as necessary to apply generally accepted accounting principles ("GAAP") appropriately and for compliance with applicable regulatory requirements, including the determination of your accounting policies. You are solely responsible for the preparation of your financial statements, including making all of the judgments inherent in preparing them.

You are responsible for notifying your independent auditor of the performance of the Services and consulting with them on the application of accounting principles and your related accounting policies. You agree that we may make inquiries of your independent auditor in connection with the performance of the Services, provided that, representatives from Client are present during the discussion.

You will not, and you will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

**Specific additional terms and conditions**

EY will not render an assurance report or opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation, as those terms are identified by the American Institute of Certified Public Accountants ("AICPA") or by the Public Company Accounting Oversight Board ("PCAOB"). Accordingly, we will not express any form of assurance on accounting matters, financial statements, any financial or other information or internal controls as part of the Services. None of the Services or any Reports will constitute any legal opinion or legal advice. We will not conduct a review to detect fraud or illegal acts.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

We will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by you solely on information provided by your vendors, directly or through you. We are not responsible for the completeness or accuracy of any such information or for confirming any of it.

Unless prohibited by applicable law, we may provide Client Information to other EY Firms, EY Persons and external third parties, who may collect, use, transfer, store or otherwise process such information in various jurisdictions in which they operate in order to provide support services to any EY Firm and/or assist in the performance of the Services.

Where our written consent under the Agreement is required for you to disclose to a third party any of our Reports (other than Tax Advice), we will also require that third party to execute a letter substantially in the form of Appendix A to this SOW.

Compliance with U.S. immigration requirements may require EY to provide certain information to the U.S. Citizenship and Immigration Services ("USCIS") to confirm that EY employees on certain visas are, in fact, EY employees and not employees of Client or other clients of EY. This will include providing certain information regarding work locations to support compliance with the visa requirements. As such, EY may disclose to USCIS information regarding this SOW, including Client's identity and location, as well as redacted agreements. Upon providing this information, EY will request that USCIS keep any such information confidential. In further support of these legal requirements, the U.S. Department of Labor (DOL) regulations, at 20 CFR § 655.734(a)(1)(ii)(A), require the posting of notice of a Labor Condition Application (LCA) in instances where individuals holding H-1B visas will be working on Client's premises. EY and Client will work together to develop an appropriate notice as required.

EY resources will be operating at all times as an employee of and under the direction and control of Ernst & Young U.S. LLP's management, and all activities including supervision, hiring and firing decisions, and performance evaluations are controlled by Ernst & Young U.S. LLP. Client will not have the right to control EY resources. At all times, EY resources will receive direction from an EY Manager while on-site at Client premises.

The Services may touch upon business relationships (such as transactions, agreements, products purchased) you have with a third party (an "EY Client") for which EY (or another EY Firm)

performs, or has performed, services unrelated to the business relationships. On behalf of yourself and your affiliates, you acknowledge and consent to our performance of such services for any EY Client, and agree that neither you nor your affiliates will make a claim that these circumstances present a conflict of interest, real or perceived, for us or any other EY Firm. If, however, our services for an EY Client directly relate to the business relationships, we will seek the consent of both you and the EY Client to the continued performance of the Services. In any event, we confirm that, except as you and the EY Client otherwise agree in writing, your respective confidential or privileged information will remain confidential in accordance with applicable professional standards.

To the extent that the Services include the development of training materials ("Training Materials"), the Training Materials are "Materials" as set forth in the General Terms and Conditions and will be delivered solely for implementation by Client and its personnel or by EY for Client. Notwithstanding anything contained in the General Terms and Conditions or this SOW to the contrary, you shall not disclose any Training Materials to any third party for any purpose, including implementation thereof for Client.

**Timetable**

The Services in Phase 1 and Phase 2 are expected to be provided during the period of August 28, 2019 to November 30, 2019. The period for the Services may be extended by Pyxus and EY upon mutual agreement of the parties.

**Contacts**

You have identified Phil Garofolo as your contact with whom we should communicate about these Services. Your contact at EY for these Services will be Mike Ohrnstein (919) 791-1672 or mike.ohrnstein@ey.com and Peter Melvin (704) 338-0709 or peter.melvin@ey.com.

**Phase 1 Fees**

You shall pay fees for the Services based on the actual time that our professionals spend performing them, billed at the following agreed upon rates for each level while the Services under this SOW are being performed:

| Title | Hourly Rate |
|---|---|
| Partner and Managing Director | $670 |
| Senior Manager | $525 |
| Manager | $455 |
| Senior | $385 |

The General Terms and Conditions of the Agreement address our fees and expenses generally.

In addition to our fees, you shall reimburse EY for reasonable out-of-pocket travel and living expenses incurred by EY personnel in connection with the performance of the Services, estimated to be 10% of professional fees.

**SOW— Adoption of ASU 2016-13 (CECL)**

Based on our discussions with you we estimate that our professional fees for Phase 1 of this SOW will not exceed $125 thousand, not including out-of-pocket travel and living expenses (T&E). Regarding Phase 2 and Phase 3, EY and you will mutually agree upon an estimated fee range before the commencement of such Services. We will communicate to you bi-weekly the fees incurred to date under this SOW. EY will notify you as soon as we estimate that total billings with respect to each Phase subject to this SOW will be greater than the estimated fee applicable to such Phase. Unless directed by you, will perform no further work until a change order to this SOW for the fees exceeding the estimate above has been created and executed between the company and EY.

We will submit monthly invoices in arrears, reflecting work performed during that period, and a separate amount for expenses incurred during the period. Payment is due upon receipt of invoice. A service charge of twelve (12) percent per annum (one (1) percent per month) will be added to each invoice to cover all amounts more than thirty (30) days overdue. EY reserves the right to suspend the Services if any invoices are more than 60 days overdue.

Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of any proposed transaction.

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst & Young LLP

By: ______________________________

Mike Ohrnstein
Managing Director

Pyxus International, Inc., on behalf of itself and its affiliates

By: [signature]

Phil Garofolo
VP and Corporate Controller

Appendix A
Form of Access Letter
[Letterhead of EY]

[Addressee (e.g., third party seeking access to EY Report)] [Month XX, 20XX]
[Street Address]
[City, State Zip]

Dear [ ] :

[Client] (the "Client") has informed Ernst & Young LLP ("EY") that it wishes to disclose to [party seeking access] (the "Recipient") EY's Report dated [Insert date] resulting from advisory services EY provided to the Client in connection with [describe situation or transaction requiring our involvement] (the "Report(s)"). EY has not placed any limitations on the Client's ability to disclose any contents of the Report relating to the tax aspects or structure of any transaction proposed by the Client.

EY performed advisory services only for the Client. EY did not undertake the services on behalf of, or to serve the needs of, the Recipient or any other third party. The Services did not constitute an audit of the Client's financial statements, nor did EY perform any procedures with respect to the Client's financial information and, accordingly, the Report does not express any form of assurance. EY did not conclude on the appropriate accounting treatment for the Client, based on specific facts nor did it recommend an accounting policy/treatment for the Client's adoption. The observations relating to accounting matters that EY provided to the Client were intended solely to assist the Client in reaching its own conclusions.

EY prepared the Report(s) solely for the Client. The Report(s) address[ es] only the issues identified by the Client, and [ is/are] based solely on information obtained by EY using the procedures specified by the Client or otherwise provided by or on behalf of the Client. The Report(s) [ is/are] subject to many limitations and [ do/does] not provide any form of assurance with respect to any of the information described or referred to therein. The Recipient understands and accepts the scope and limitations of the Report(s). The Recipient has performed or will perform its own due diligence inquiries and procedures for all purposes, including but not limited to satisfying itself as to the financial condition and control environment of the Client as well as the appropriateness of the accounting for any particular situation addressed by the Report(s).

Except (1) where compelled by legal process (of which the Recipient will immediately notify EY and tender to EY, if it so elects, the defense thereof), (2) with respect to any contents of the Report relating to the tax treatment and tax structure of the proposed transaction (including any facts that may be relevant to understanding the proposed tax treatment of the proposed transaction), or (3) with EY's prior written consent, the Recipient will not, circulate, quote, disclose or distribute any of the Report(s) or any information contained therein, or any summary or abstract thereof, or make any reference thereto or to EY, to anyone other than the Recipient's directors, officers or employees or legal advisors who, in each case, need to know its contents in order for the Recipient

to perform its obligations to the Client, and who have agreed to be bound by the terms and conditions of this agreement to the same extent as the Recipient.

The Recipient further agrees that it will not, and will not permit others to, quote or refer to the Report, any portion, summary or abstract thereof, or to EY, in any document filed or distributed in connection with (a) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable or (b) periodic reporting obligations under Securities Laws. The Recipient will not contend that any provisions of Securities Laws could invalidate any provision of this agreement.

In further consideration of EY allowing the Recipient access to the Report(s) and the information contained therein, the Recipient agrees that:

1. It does not acquire any rights against EY, and EY does not assume any duties or obligations to the Recipient or otherwise, as a result of such access.

2. It will not rely on the Report(s) or any portion thereof and will make no claim that it has done so.

3. It will make no claim against EY, its partners, employees or affiliates, or other members of the global Ernst & Young network (collectively, the "EY Parties" that relates in any way to the Report(s), any information contained therein, or the Recipient's access to the Report(s).

4. To the fullest extent permitted by applicable law, it will indemnify, defend and hold harmless the EY Parties from and against any claim or expense, including reasonable attorneys' fees, suffered or incurred by any EY Party relating to any breach by the Recipient of any of its representations or agreements contained herein or the use or disclosure of the Report(s) or any portion thereof by anyone who received it directly or indirectly from or at the request of the Recipient.

This letter shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and fully to be performed therein by residents thereof.

Very truly yours,

Ernst & Young LLP [replace with EY facsimile signature when final]

Accepted by:

[Addressee]

By: ______________________________

**Amendment No. 1 to Statement of Work**

This amendment, dated January 20, 2020 (this "Amendment") amends the Statement of Work, dated, August 28, 2019 (the "Original SOW" and as modified by this Amendment, the "SOW"), between Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc. ("Pyxus", "you" or "Client") related to the accounting and financial reporting assistance and other services as described in the Original SOW in connection with your adoption of ASU 2016-13 related to the new "expected credit loss" model under ASC 326, Financial instruments — credit losses ("ASC 326"). Capitalized terms used, but not otherwise defined, in this Amendment shall have the respective meanings ascribed to them in the Original SOW and identical terms defined in this Amendment and in the Original SOW shall have the respective meanings ascribed to them herein. The Original SOW was executed pursuant to the agreement, dated August 1, 2016 between EY and Pyxus International, Inc. (formally Alliance One International) (the "Agreement").

Except as modified by this Amendment, all terms and conditions of the Original SOW shall continue in full force and effect and be unaffected by this Amendment.

**Scope of services**

In addition to the services set out in the Original SOW, we shall perform the following additional services (such additional services, together with the services described in the Original SOW, the "Services"):

*Phase 3: Implementation*

- Assist with ongoing program management including regular status meetings and escalation of key risks and issues.
- Assist you in preparing your accounting policies and position papers for key concepts and decisions, including assistance with defining and documenting your conclusions and assumptions such as pooling, charge off dates, etc.
- Assist you in preparing your Business Requirement Document (BRD) to catalogue the accounting and reporting needs for the quantitative solution/process.
- Assist you in the assessment, documentation and finalization of your methodology around the expected credit loss (ECL) calculation for trade receivables, including your analysis around the reasonable and supportable assumptions used to support your ECL calculation.
- Assist you in building an excel based model to calculate the ECL (the "Model") for all pools identified.
- With Pyxus active participation, assist you with the selection of macroeconomic factors for all pools identified.
- Assist you in designing sensitivity analyses of macroeconomic factors, on the collectability of the trade receivables.
- Assist you in the development of user acceptance testing (UAT) scripts in the determination of whether the solution meets business requirements. This includes assistance with UAT in parallel with model dry runs for 09/30/2019 and 12/31/2019.
- Assist you with the assessment of the current credit loss allowance process and assist with updates to the control framework and related documentation, if applicable.

**Reports**[1]

In addition to the Reports set out in the Original SOW, we will prepare the following Reports:

*Phase 3: Implementation*

- Draft accounting policies and position papers for key concepts and decisions
- Draft BRD
- Draft ECL calculation and Model, including any applicable code (e.g., VBA) and document procedures on how to update
- Draft UAT scripts
- Updated control framework documentation, if applicable

**Specific additional terms and conditions**

EY will not investigate or review, the software within which the Model operates (e.g., Microsoft Excel) and shall have no responsibility for the consequences of any inherent defect in any third-party software programs.

In connection with these Services, computer files (including versions of the Model) may be transferred between EY and you. Neither of us assumes any responsibility to the other for any loss or damage caused by viruses contained in such computer files. EY will not perform any tests to determine whether versions of the Model submitted for its review contain viruses or similar problems. We shall have no responsibility to third parties for loss or damage caused by viruses or similar problems that may exist in computer files (including versions of the Model) transferred by you to them.

Circular logic is present in a spreadsheet when the inputs to a calculation depend directly on the results of that same calculation. In general, when a model employs circular logic, it is not possible to demonstrate mathematically that the underlying calculation has a unique solution. This leads to uncertainty or instability in a Model's results. For this reason, EY strongly recommends that you do not require the use of circular logic in the construction of the Model. If you require us to incorporate circular logic in the construction of the Model, we assume no responsibility for any uncertainty or errors in calculations and/or outputs that may arise as a result.

A sensitivity is a variation to a model to assess possible outcomes when variables, which cannot be estimated with a reasonable degree of certainty, take alternative values. Where these Services require us to review sensitivity cases, we will be unable to begin a detailed review of these versions of the Model until the base case model has been finalized (that is, our review of the base case is complete, all amendments recommended as a result of our review have been implemented, and the data is in its final form). The time available for us to review sensitivities and the effectiveness of our review may be affected by the timing, nature and extent of amendments to the base case model and data provided by Pyxus.

---

[1] "Report" is defined in the Agreement as including all information, advice, recommendations, templates or other content of any reports, presentations, or other communications we provide to you.

In some circumstances, a sensitivity is a variation to a model to represent an alternative business option (for example, an alternative financing structure), rather than to assess the potential effects of uncertain estimates. This type of sensitivity may be referred to as a "scenario". Our comparison of each sensitivity to the base case model may be less effective for scenario-type sensitivities, where there are significant differences to the base case.

**Timetable**

Subject to the terms and conditions of the Agreement and the Original SOW, and notwithstanding anything in the Original SOW to the contrary, we expect to perform the Services during the period from the date hereof to May 31, 2020. Changes to this schedule may be made upon our mutual agreement.

**Fees**

The terms and conditions of the Agreement address our fees and expenses generally. In addition to the fees and expenses described in the Original SOW, our fees and expenses for the additional services described in this Amendment shall be as outlined below:

You shall pay fees for the Services based on the actual time that our professionals spend performing them, billed at the following agreed upon rates in the Original SOW. In addition to our fees, you shall reimburse EY for reasonable out-of-pocket expenses incurred by EY personnel in connection with the performance of the Services.

Based on our discussions with you we estimate that our professional fees for Phase 3 of this SOW will not exceed $350 thousand, not including out-of-pocket expenses. We will communicate to you bi-weekly the fees incurred to date under this SOW. EY will notify you as soon as we estimate that total billings with respect to each Phase subject to this SOW will be greater than the estimated fee. Unless directed by you, will perform no further work until a change order to this SOW for the fees exceeding the estimate above has been created and executed between the Client and EY.

We will submit monthly invoices in arrears, reflecting work performed during that period, and a separate amount for expenses incurred during the period. Payment is due upon receipt of invoice. A service charge of twelve (12) percent per annum (one (1) percent per month) will be added to each invoice to cover all amounts more than thirty (30) days overdue. EY reserves the right to suspend the Services if any invoices are more than 60 days overdue.

Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of any transaction.

In witness whereof, the parties have executed this Amendment as of the date set forth above.

Ernst & Young LLP

By: ______________________________

Mike Ohrnstein
Managing Director

Pyxus International, Inc., on behalf of itself and its affiliates

By: ______________________________

Phil Garofolo
VP and Corpore Controller

**APPENDIX A**

**MANAGEMENT REPRESENTATION LETTER**

[To be produced on Management letterhead]

Month XX, YYYY

Ernst & Young LLP
4131 Parklake Avenue, Suite 500
Raleigh, NC 27612

In connection with Ernst & Young LLP's ("we" or "EY") assistance to Pyxus International, Inc. ("Pyxus," "you," or "client") in updating/modifying the Expected Credit Loss (ECL) model (the "Model"), represents the following:

1. We accept the delivered versions of the Model.
   Model name: XXXX

2. We acknowledge that the terms of your engagement do not, in any way, require EY to update the Model for events occurring subsequent to delivery of the Model.

3. We have no reason to believe that there are any facts or circumstances which would cause the Model to be inaccurate, misleading, or inappropriate.

4. We acknowledge that the accounting principles, if any, used in the construction of the Model are consistent with those expected to be used by Pyxus during the forecast periods covered by the Model, where applicable.

5. If any historical, projected and/or forecast data was provided to EY for inclusion in the Model, we understand that EY has relied on this historical, projected, and forecasted data in the performance of this engagement, and they may so rely. We have reviewed the projected and forecasted performance of the entities included in the Model, if any, and confirm that the assumptions and forecasted results appear reasonable based on current expectations.

Yours very truly,

Pyxus International, Inc.

By: ______________________________
Name: Phil Garofolo
Title: VP and Corporate Controller


Building a better
working world

## Amendment No. 2 to Statement of Work

This amendment, dated April 29, 2020 (this "Amendment") amends the Statement of Work, dated, August 28, 2019, as amended by Amendment dated January 20, 2020 (the "Original SOW" and as modified by this Amendment, the "SOW"), between Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc. ("you" or "Client") related to the accounting and financial reporting assistance and other services as described in the Original SOW in connection with your adoption of ASU 2016-13 related to the new "expected credit loss" model under ASC 326, Financial instruments — credit losses ("ASC 326"). Capitalized terms used, but not otherwise defined, in this Amendment shall have the respective meanings ascribed to them in the Original SOW and identical terms defined in this Amendment and in the Original SOW shall have the respective meanings ascribed to them herein. The Original SOW was executed pursuant to the agreement, dated August 1, 2016 between EY and Pyxus International, Inc. (the "Agreement").

Except as modified by this Amendment, all terms and conditions of the Original SOW shall continue in full force and effect and be unaffected by this Amendment.

### Scope of services

In addition to the services set out in the Original SOW, we shall perform the following additional services (such additional services, together with the services described in the Original SOW, the "Services"):

Assist you in quarterly updates to the Model, applicable code (i.e. VBA), control framework, documentation and/or disclosures related to ASC 326.

Up to 12 hours of training/model transitioning per quarter related to the methodology and use of the Model.

Assist you in discussions with your external auditors related to the Model, Model implementation and/or related documentation and disclosures for ASC 326.

Please note that our ability to perform services with respect to future/subsequent quarterly assistance set forth in this SOW may depend, among other things, on our mutual agreement that our performance of such services will not impair our independence, if required, related to you or any affiliated entities.

### Reports[1]

In addition to the Reports set out in the Original SOW, as amended, we may prepare the following Reports at your request:

- Updates to or drafts of accounting policies and position papers
- Updates to accounting disclosures
- Training materials

[1] "Report" is defined in the Agreement as including all information, advice, recommendations, templates or other content of any reports, presentations, or other communications we provide to you.

A member firm of Ernst & Young Global Limited

**Timetable**

Subject to the terms and conditions of the Agreement and the Original SOW, and notwithstanding anything in the Original SOW to the contrary, we expect to perform the Services during the period from the date hereof to June 30, 2021. Changes to this schedule may be made upon our mutual agreement.

**Fees**

The terms and conditions of the Agreement address our fees and expenses generally. In addition to the fees and expenses described in the Original SOW, our fees and expenses for the additional services described in this Amendment shall be as follows:

You shall pay fees for the Services based on the actual time that our professionals spend performing them, billed at the following agreed upon rates in the Original SOW. In addition to our fees, you shall reimburse EY for reasonable out-of-pocket expenses incurred by EY personnel in connection with the performance of the Services.

Based on our discussions with you we expect that our professional fees for the additional services described in this Amendment will not exceed $25 thousand per quarter, not including out-of-pocket expenses. As the work progresses each quarter we will provide weekly progress updates. EY will notify you as soon as we estimate that total billings with respect to each quarter subject to this SOW be greater than the estimated fee.

Immediately upon the execution of this SOW, the Client shall provide EY an advance payment pursuant to the retainer, dated 3rd April 2020 between EY and Pyxus International, Inc. (the "Retainer"). EY will submit invoices to the Client for services provided and the Client will immediately replenish amounts by which the Retainer is reduced upon receipt of the invoice. You acknowledge and agree that EY will apply the Retainer as advance payment for fees and expenses reimbursement for services rendered from time to time, whether or not an invoice has yet been submitted to the Client for such work, including without limitation for work anticipated to be performed before the filing of any bankruptcy case. If invoices are not paid or the Retainer is not replenished immediately as required hereunder, EY, in its discretion, may cease performing nay and all services until receipt of payment is made.

Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of any transaction.



A member firm of Ernst & Young Global Limited



Building a better
working world

In witness whereof, the parties have executed this Amendment as of the date set forth above.

**Ernst & Young LLP**

By: ______________________________
Peter C Melvin, Ph.D.
Authorized Signatory

**Pyxus International, Inc.**
*on behalf of itself and its affiliates*

By: ______________________________
Phil Garofolo
Vice President and Corporate Controller

A member firm of Ernst & Young Global Limited

**Exhibit A-8**

**REDACTED IN ITS ENTIRETY**

**Exhibit A-9**

**Statement of Work**

This Statement of Work, dated November 8, 2011 ( this "SOW") is made by Ernst & Young LLP ("we" or "EY") and Alliance One International ("you", "Client" or "Alliance One"), pursuant to the Master Agreement for Performance of Professional Services ("MSA" or "Agreement"), dated October 6, 2011, between EY and Alliance One.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Scope of Services and Level of Effort**

EY understands that the Company is requesting EY assist management with the following activities by fiscal year:

**Fiscal Year 2012**

*PMO Activities:* EY will assist the Company with various PMO activities including preparation of status reporting for the Audit Committee as well as attending the Audit Committee meeting as requested. In addition, PMO activities will include project planning and resource scheduling, budget versus actual time reporting, measuring and monitoring project status and internal audit dashboard reporting. Furthermore, during the Transition phase below, additional PMO activities may be required as the Company transitions to a co-sourcing model in late FY12.

*Internal Audit – Turkey:* EY will assist the Company in its execution of internal audit testing procedures in Turkey. We will review and revise if necessary the currently developed Internal Audit plan for Turkey. Then we will develop the final plan and deploy local Turkish resources to execute the fieldwork during the time requested by management. All results will be reported back to the US team based in Raleigh and final results will be reported to Management.

*Development of Transformation Plan:* EY understands that the Company will be moving to a co-sourcing model during fiscal year 2012. EY will develop a five year transformation plan that will include activities with internal control, internal audit, all in alignment with Foreign Corrupt practice Act (FCPA) Standards between November 14, 2011 and March 31, 2012. Activities will include but are not limited to the following:

- Obtaining an understanding of the current state of the compliance with Sarbanes-Oxley (SOX) and rationalizing the Company's internal control listing
- Obtaining an understanding of the current state of the internal audit annual plan; developing a roll forward strategy to complete fiscal year 2012 SOX and internal audit testing;
- Assist with incorporating FCPA and data analytics procedures into future audit programs;

*Other Support Services (as needed):* In accordance with Management direction, EY will support the Company's SOX efforts through testing or remediation of internal controls. EY will also assist the Company in completing any open internal audits and FCPA activities/procedures, as deemed necessary.

**Fiscal Year 2013 through 2017:**

*PMO Activities:* for each fiscal year, EY will assist the Company with various PMO activities including preparation of status reporting to Executive Management; including the CFO and CAO and the Audit Committee. In addition, EY will be available to attend the Audit Committee meetings. Additional activities include project planning and resource scheduling, budget versus actual time reporting, measuring and monitoring project status and internal audit dashboard reporting.

*SOX:* for each fiscal year, in accordance with management direction, EY will assist the Company with its SOX compliance efforts; specifically, EY will:

- Create a calendar with timing of procedures
- Perform an Audit Standard #5 Risk Assessment of the Internal Control over Financial Report environment
- Update documentation and conduct control walkthroughs
- Plan and perform testing of key business process controls, as defined by management
- Plan and perform testing of key IT general controls, as defined by management
- Plan and perform testing at in-scope international locations, as defined by management
- Draft initial deficiency assessments to summarize internal control testing results
- Report results to management

*Enterprise Risk Assessment:* for each fiscal year, EY will develop a process to conduct or revise an enterprise risk assessment. The results will be used to create the internal audit plan for the subsequent year.

*Fraud Risk Assessment:* for each fiscal year, EY will develop a process to conduct or revise a fraud risk assessment. The results will be used in the internal audit plan, the SOX program and leveraged in alignment with Foreign Corrupt Practice Act (FCPA) procedures.

*Internal Audit:* for each fiscal year, EY will assist the Company with its internal audit activities; specifically, EY will:

- Develop the domestic and international internal audits plan based on the results of the Enterprise Risk Assessment
- Plan and coordinate EY domestic and international resources for internal audits to be performed in conjunction with the internal audit plan. For international locations, we will coordinate the timing for internal audit procedures to coincide with the SOX and FCPA procedures
- Develop and executive the specific internal audit plans for those domestic and international internal audits identified in the plan

- Report the results of internal audit activities in a finding and recommendations report or some other mutually agreeable format
- Develop reporting protocols and templates for management and the audit committee and meet on a periodic basis to communicate the results and findings of the internal audits completed

*Data Analytics:* Develop a data analytics strategy to be leveraged as appropriate in the internal audit, SOX and FCPA programs/procedures.

**Project Assumptions**

Management of the Company is responsible for establishing and maintaining the Company's system of controls over financial, strategic, operational, and compliance processes and directing the risk management function. With respect to the risk management function, the Company's management and the Audit Committee are responsible for the following:

- Designating a competent employee or employees, preferably within senior management, to be responsible for the function. EY understands Hampton "Buck" Poole, Chief Accounting Officer, has been designated as this individual.
- Determining the scope, risk, and frequency of risk management activities, including those activities performed by EY.
- Evaluating the findings and results arising from these activities, including those performed by EY.
- Evaluating the adequacy of the procedures performed and the findings resulting from these activities, including those activities performed by EY, and the actions by management, if any, necessary to respond to the findings and among other things, obtaining reports from EY.
- Avoiding reliance on EY's procedures as the primary basis for determining the adequacy of the system of internal control.

When assisting the Company in the performance of EY's activities, EY will not:

- Perform ongoing internal control monitoring activities or other control activities that affect the execution of transactions or ensure that transactions are properly executed and/or accounted for or perform routine activities in connection with the Company's operating or production processes that are equivalent to those of an ongoing compliance or quality control function.
- Determine which, if any, recommendations for improving internal control should be implemented.
- Act on behalf of management in the development and implementation of remediation plans resulting from internal audit findings or report to the Board of Directors, or Audit Committee management's response and status of remediation to our internal audit findings.
- Authorize, execute or consummate transactions or otherwise exercise authority on behalf of the Company.
- Prepare source documents on transactions.
- Have custody of assets.
- Approve, the overall monitoring plan, including the assessment of audit risk, determination of scope, project priorities and frequency of performance of audit procedures.

- Act in any capacity equivalent to a member of management or an employee.

**Limitations on scope**

We will not identify, address or correct any errors or defects in your computer systems, other devices or components thereof ("Systems"), whether or not due to imprecise or ambiguous entry, storage, interpretation or processing or reporting of data. We will not be responsible for any defect or problem arising out of or related to data processing in any Systems.

**Your specific obligations**

You will not, and you will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

We will not assume any of your management responsibilities in connection with the Services. We will not be responsible for the use or implementation of the output of the Services, although we may otherwise provide advice and recommendations to assist you in your management functions and making decisions.

You shall assign a qualified person to oversee the Services. You are responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for your purposes.

**Specific additional terms and conditions**

The Services are advisory in nature. EY will perform the Services in accordance with the Statement on Standards for Consulting Services (CS100) of the American Institute of Certified Public Accountants ("AICPA"). EY will not render an assurance report or opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts. Alliance One acknowledges and agrees that Alliance One has the ultimate responsibility for all management decisions relating to the Services.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

We will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by you solely on information provided by your vendors, directly or through you. We are not responsible for the completeness or accuracy of any such information or for confirming any of it.

Any information, advice, recommendations or other content of any reports, presentations or other communications we provide ("Reports"), other than Client Information, are for your internal use only. You may not disclose a Report (or any portion or summary of a Report) externally (including to your affiliates) or refer to us or to any other EY Firm in connection with the Services, except:(a) to your lawyers (subject to these disclosure restrictions), who may use it only to give you advice relating to the Services, (b) to the extent, and for the purposes, required by subpoena or similar legal process (of which you will promptly notify us), (c) to other persons (including your affiliates) with our prior written consent and who may use it only as we have specified in our consent, or (d) to the extent it contains Tax Advice. If you are permitted to disclose a Report (or a portion thereof) externally, you shall not alter, edit or modify it from the form we provided.

Where our written consent under the Agreement is required for you to disclose to a third party any of our Reports (other than Tax Advice), we will also require that third party to execute a letter substantially in the form of Appendix A to this SOW.

**Contacts**

EY's global relationship with Alliance One will be managed and maintained in the Raleigh, NC office. We will provide you with progress updates and, at your request, meet with you periodically to review status and results of the activities. Your contact at EY for these Services will be Keith Feuz, Engagement Partner.

**Fees and Expenses**

The Company shall pay EY's fees for the Services plus direct expenses, which are based on hours worked by members of our firm based on a blended hourly rate per hour as determined by the level of resourcing required for the activity. The predicated staffing level mix for the services under each activity are based on a certain percentage of executive (including Partner, Senior Manager and Manager) and associate (including Senior and Staff) time. The blended rate per hour and predicated staffing level mix for each activity are as follows:

*Fiscal Year Ended March 31, 2012:*

| Activity | Blended Rate per Hour | Executive Staffing Mix | Associate Staffing Mix |
|---|---|---|---|
| Project Management Office | $200 | 50% | 50% |
| Transformation Plan Development * | $200 | 50% | 50% |
| Internal Audit - Turkey | $162 | 30% | 70% |
| SOX & IA Assistance | $162 | 30% | 70% |
| FCPA Assistance | $162 | 35% | 65% |

An estimate to complete the FY 12 activities will be presented and agreed to by both parties prior to execution of activities noted above.

** Transformational plan development cost is estimated at 700 to 1,000 hours or $140,000 to $200,000. EY will absorb all cost incurred related to this activity as part of the overall five-year co-sourcing arrangement. Should the actual term of the agreement be less than five years but greater than 3 year, then EY will invoice Alliance-One 50% of these cost as the termination of the agreement. If the actual term of the agreement is less than three years, then EY will invoice Alliance-One 100% of these costs at the termination of the agreement.*

*Fiscal Year Ended March 31, 2013 through June 30, 2017:*

The Company shall pay EY's fees for the Services plus direct expenses, which are based on hours worked by members of our firm at a blended hourly rate of $162 per hour. This rate shall remain in effect from April 1, 2012 through March 30, 2013. The blended hourly rate will be adjusted on April 1, 2013 to factor in a 3% cost of living adjustment or to a blended hourly rate of $167 per hour. Then on April 1 of each successive fiscal year a 3% cost of living adjustment will applied to adjust the prior fiscal year blended rate per hour through the term of this agreement.

While the actual estimated work effort for each year is not specifically referred to in this statement of work, EY and Alliance One will gain agreement related to estimated hours to complete each year's work upon completion of the risk assessment and development and approval of the audit plan.

The blended rate above for Services has been calculated based on a certain staffing level mix by the level of experience required to complete the activity. The predicated staffing level mix for the services are based on 30% executive (including Partner, Senior Manager and Manager) and 70% associate (including Senior and Staff) time. Furthermore, the blended rate above for Services has been calculated based on EY use of certain staffing measures & strategies to provide the most effective and efficient staffing model in the delivery of the Services; such as the use of EY Global Talent Hub. Company agrees to allow EY to deploy such staffing strategy. All time will be billed based on the actual hours incurred at the blended rate per hour outlined above.

In addition, the Company shall reimburse EY for direct expenses incurred in connection with the performance of the Services. Direct expenses include reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses specifically related to this engagement. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients. The Company shall also pay all applicable taxes incurred in connection with the delivery of the Services or the Reports (except for taxes imposed on EY's income).

Direct expenses are not expected to exceed $125,000 in any given fiscal year. If it is expected that out-of-pocket expenses will exceed $125,000, management and Ernst & Young agree to discuss the situation as soon as the matter is identified and come to a mutually agreeable resolution prior to our incurring additional out-of-pocket travel expenses.

EY shall bill the Company for its fees and direct expenses (and applicable taxes, if any) as they are incurred on a bi-monthly basis and payment is due upon receipt. All time will be billed based on the actual hours incurred at the blended rate per hour outlined above.

**Project Duration and Level of Effort**

Unless EY and Management of the Company otherwise agree, the fieldwork associated with the scope of services for all phases, as discussed above, under this SOW will be performed during the period from October 15, 2011 through June 30, 2017. Following this period, EY shall continue to operate in this capacity for the Company on an on-going basis until otherwise mutually determine to terminate this agreement. As such, the terms of this Agreement shall apply to any Services requested by the Company and provided by EY after the end of the period unless otherwise agreed in writing by the parties.

Should matters arise that would impact the project duration under the Scope of Services section above, management and Ernst & Young agree to discuss the matter(s) as soon as the matter(s) is/are identified and come to a mutually agreeable resolution.

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst & Young LLP

By: ______________________________

Keith M. Feuz

Engagement Partner

Alliance One International

By: ______________________________

Robert Sheets

Executive Vice President – Chief Financial Officer and Chief Administrative Officer

**Appendix A**

Form of Access Letter

[Letterhead of EY]

[Addressee (e.g., third party seeking access to EY Report)] [Month XX, 20XX]

[Street Address]

[City, State Zip]

Dear [_______] :

Alliance One International (the "Client") has informed Ernst & Young LLP ("EY") that it wishes to disclose to [party seeking access] (the "Recipient") EY's [describe report(s)] , dated [___________] , relating to [describe subject] (the "Report(s)"). EY has not placed any limitations on the Client's ability to disclose any contents of the Report relating to the tax aspects or structure of any transaction proposed by the Client.

EY performed advisory services only for the Client. EY did not undertake the services on behalf of, or to serve the needs of, the Recipient or any other third party. EY did not audit the Client's financial statements, nor did it perform any procedures with respect to its financial information, or otherwise for or relating to any period subsequent to the date(s) of the Report(s).

EY prepared the Report(s) solely for the Client. The Report(s) address[ es] only the issues identified by the Client, and [ is/are] based solely on information obtained by EY using the procedures specified by the Client or otherwise provided by or on behalf of the Client. The Report(s) [ is/are] subject to many limitations and [ do/does] not provide any form of assurance with respect to any of the information referred to therein. The Recipient understands and accepts the scope and limitations of the Report(s).

Except (1) where compelled by legal process (of which the Recipient will immediately notify EY and tender to EY, if it so elects, the defense thereof), (2) with respect to any contents of the Report relating to the tax treatment and tax structure of the proposed transaction (including any facts that may be relevant to understanding the proposed tax treatment of the proposed transaction), or (3) with EY's prior written consent, the Recipient will not, circulate, quote, disclose or distribute any of the Report(s) or any information contained therein, or any summary or abstract thereof, or make any reference thereto or to EY, to anyone other than the Recipient's directors, officers or employees or legal advisors who, in each case, need to know its contents in order to ___________ , and who have agreed to be bound by the terms and conditions of this agreement to the same extent as the Recipient.

The Recipient further agrees that it will not, and will not permit others to, quote or refer to the Report, any portion, summary or abstract thereof, or to EY, in any document filed or distributed in connection with (a) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable or (b) periodic reporting obligations under Securities Laws. The Recipient will not contend that any provisions of Securities Laws could invalidate any provision of this agreement.

In further consideration of EY allowing the Recipient access to the Report(s) and the information contained therein, the Recipient agrees that:

1. It does not acquire any rights against EY, and EY does not assume any duties or obligations to the Recipient or otherwise, as a result of such access.

2. It will not rely on the Report(s) or any portion thereof and will make no claim that it has done so.

3. It will make no claim against EY, its partners, employees or affiliates, or other members of the global Ernst & Young network (collectively, the "EY Parties" that relates in any way to the Report(s), any information contained therein, or the Recipient's access to the Report(s).

4. To the fullest extent permitted by applicable law, it will indemnify, defend and hold harmless the EY Parties from and against any claim or expense, including reasonable attorneys' fees, suffered or incurred by any EY Party relating to any breach by the Recipient of any of its representations or agreements contained herein or the use or disclosure of the Report(s) or any portion thereof by anyone who received it directly or indirectly from or at the request of the Recipient.

Very truly yours,

Ernst & Young LLP [replace with EY facsimile signature when final]

Accepted by:

[Addressee]

By: ______________________________

July 31, 2014

**AMENDMENT**

This Amendment is to the Statement of Work, dated November 8, 2011 ("SOW"), pursuant to the Master Agreement for Performance of Professional Services ("Agreement"), dated October 6, 2011, between Ernst & Young LLP ("EY") and Alliance One International ("Alliance One"), regarding certain professional services to be provided by EY.

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree:

1. that the heading "Fiscal Year 2013 through 2019" will replace the heading "Fiscal Year 2013 through 2017"on page 2 of the SOW;
2. that heading "Fiscal Year Ended March 31, 2013 through June 30, 2019" will replace the heading "Fiscal Year Ended March 31, 2013 through June 30, 2017"on page 6 of the SOW; and
3. that the first sentence under "Project Duration and Level or Effort" on page 7 shall be replaced with the following:

   "Unless EY and Management of the Company otherwise agree, the fieldwork associated with the scope of services for all phases, as discussed above, under this SOW will be performed during the period from October 15, 2011 through June 30, 2019."

In the event of a conflict between the terms and conditions of the SOW or of the Agreement and those of this Amendment, the terms and conditions of this Amendment shall control. Except as expressly amended hereby, all terms and conditions of the SOW and of the Agreement remain in full force and effect.

**AGREED TO AND ACCEPTED:**

**Alliance One International**

By: [signature]

**Name:**

**Title:** **Joel Thomas**
**Executive Vice President & Chief Financial Officer**

**AGREED TO AND ACCEPTED:**

**Ernst & Young LLP**

By: [signature]

**Name:** Keith M. Feuz

**Title:** Partner Alliance - One Global Coordinating Service Partner

July 20, 2016

**AMENDMENT**

This Amendment is to the Statement of Work, dated November 8, 2011 ("SOW"), pursuant to the Master Services Agreement for Performance of Professional Services ("Agreement"), dated October 6, 2011, between Ernst & Young LLP ("**EY**") and Alliance One International ("Alliance One"), regarding certain professional services to be provided by EY.

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree:

1. that the scope of service and level of effort section for the wording "Fiscal Year 2013 through 2017" on page 2 of the SOW will be expanded to include the following:
   a. Internal Control Procedures (ICP) for each fiscal year, in accordance with management direction, EY will assist the Company with ICP efforts; separately EY will:
      - Create a calendar with timing of procedures
      - Gain an understanding of each ICP location's key business process and document this understanding in a process flow chart and walkthrough the controls as directed by management
      - Plan and perform testing of key business controls at ICP locations, as defined by management
      - Summarize results internal control design and operational testing
      - Report results to Management

   b. Fraud testing program and location visits: for each fiscal year, in accordance with management direction, EY will assist the Company with their fraud prevention and detection efforts; at as many locations as determined by management, separately EY will:
      - Develop and execute a program to test internal controls and business transactions for possible fraud and bribery implications; at locations agreed to with management annually
      - Conduct fraud interviews with key local, regional and Corporate individuals as determined by management
      - Summarize results of fraud testing procedure
      - Report results to Management

2. that the fees and expense will be expanded to include the following:
   a. that the following sentences will be added "Total professional services fees for the Services will not exceed $3 million in any given fiscal year. If it is expected that professional service fees for the Services will exceed $3 million, management and Ernst & Young agree to discuss the situations as soon as the matter is identified to come to a mutually agreeable resolution prior to our incurring additional professional service fees." following the sentence "Wile the actual estimated work effort for each year is not specifically referred to in this statement of work, EY and Alliance One will gain

agreement related to estimated hours to complete each year's work upon the completion of the risk assessment and development and approval of the audit plan."

b. that the sentence "Direct expenses are not expected to exceed 7.5% of total professional service fees in any given fiscal year" will replace "Direct expenses are not expected to exceed $125,000 in any given fiscal year"

3. that the project duration will be expanded to include the following:

   a. that the heading "Fiscal Year 2013 through 2021" will replace the heading "Fiscal Year 2013 through 2017" on page 2 of the SOW;

   b. that the heading "Fiscal Year Ended March 2013 through June 30, 2021" will replace the heading "Fiscal Year Ended March 2013 through June 30, 2017" on page 6 of the SOW; and,

   c. that the first sentence under "Project Duration and Level or Effect" on page 7 shall be replaced with the following:

   "Unless EY and Management of the Company otherwise agree, the fieldwork associated with the scope of services for all phases, as discussed above, under this SOW will be performed during the period from October 15, 2011 through June 30, 2021"

In the event of a conflict between the terms and conditions of the SOW or of the Agreement and those of this Amendment, the terms and conditions of this Amendment shall control. Except as expressly amended hereby, all terms and conditions of the SOW and of the Agreement remain in full force and effect.

**AGREED TO AND ACCEPTED:**

**Alliance One International**

**By:** [signature]

**Joel Thomas**
**Executive Vice President &**
**Chief Financial Officer**

**AGREED TO AND ACCEPTED:**

**Ernst & Young LLP**

**By:** [signature]

**Keith M. Feuz**
**Alliance One Global Coordinating**
**Service Partner**

October 15, 2018

**AMENDMENT**

This Amendment is to the Statement of Work, dated November 8, 2011 ("SOW"), pursuant to the Master Services Agreement for Performance of Professional Services ("Agreement"), dated October 6, 2011, between Ernst & Young LLP ("**EY**") and Alliance One International ("Alliance One"), regarding certain professional services to be provided by EY.

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree that the project duration will be expanded to include the following:

a. that the heading "Fiscal Year 2013 through 2023" will replace the heading "Fiscal Year 2013 through 2017" on page 2 of the SOW;

b. that the heading "Fiscal Year Ended March 2013 through June 30, 2023" will replace the heading "Fiscal Year Ended March 2013 through June 30, 2017" on page 6 of the SOW; and,

c. that the first sentence under "Project Duration and Level or Effect" on page 7 shall be replaced with the following:

"Unless EY and Management of the Company otherwise agree, the fieldwork associated with the scope of services for all phases, as discussed above, under this SOW will be performed during the period from October 15, 2011 through June 30, 2023"

In the event of a conflict between the terms and conditions of the SOW or of the Agreement and those of this Amendment, the terms and conditions of this Amendment shall control. Except as expressly amended hereby, all terms and conditions of the SOW and of the Agreement remain in full force and effect.

**AGREED TO AND ACCEPTED:**

**Alliance One International**

**By:** ____________________

**Joel Thomas**
**Executive Vice President &**
**Chief Financial Officer**

**AGREED TO AND ACCEPTED:**

**Ernst & Young LLP**

**By:** ____________________

**Keith Feuz**
**Alliance One Global Coordinating**
**Service Partner**

**Exhibit A-10**



Building a better
working world

Pyxus International, Inc.
Attn: Laura D. Jones
8001 Aerial Center Parkway
Morrisville, NC 27560

January 16, 2020

## Statement of Work

This Statement of Work, which is effective as of January 01, 2020 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY" (previously "E&Y")) and Pyxus International, Inc. and, if applicable, the other parties listed in Appendix A, named herein ("you" or "Client"), pursuant to the Agreement, dated October 6, 2011, as amended by the Amendment dated August 1, 2016 (the "Agreement"), between EY and Pyxus International, Inc.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

### Scope of Services

EY will provide the following expatriate tax services (the "Services") to you starting January 1, 2020, continuing through December 31, 2022. Specifically, EY will provide to Client the Services described in Attachment 1.

EY will provide the Services for authorized participants in Client's mobility program, including, when so determined by Client, employees of Client's subsidiaries and affiliates, who (1) have been identified to EY by Client as participants, (2) have elected to use EY's services and have executed an agreement in form similar to Attachment 2 ("Participants"), (3) have executed consents for the years concerned authorizing EY to disclose the Participant's tax return information to other members of the EY global network and to process personal data that will assist in preparing the Participant's home and host country income tax returns and provide related services, and (4) have completed a questionnaire for the period of service confirming that the Participant, and, if applicable, the Participant's spouse and/or dependent(s) are not in a Financial Reporting Oversight Role (FROR) that would prohibit EY from providing tax services to Participant. EY will provide the Services using information submitted by Participants and Client. EY will provide the appropriate consents and the FROR questionnaire to the Participants for completion, as required. A tax data organizer (or multiple

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

organizers if appropriate) will also be provided to each Participant. The consents, FROR questionnaire, and tax data organizer(s) must be completed and returned in a timely manner by such Participant.

**Scope Specific Provisions**

EY will not render an assurance report or opinion under this SOW, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts.

In performing the Services, we will not take any action that we reasonably believe could impair our independence with respect to any of our audit clients or those of other EY Firms. For example, we will not instruct, supervise or contract with an entity, without having first determined that such action would not impair our independence.

**Your Obligations**

We draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, and your representation, as of the date hereof, under paragraph 26 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

Management of Client is responsible for establishing and maintaining its expatriate tax policies and, in that connection, it will:

- Designate the appropriate individual to be responsible for the mobility function within Client. Based on our prior discussions, we understand that Laura D. Jones will be designated to perform that role.
- Determine the participants in its mobility program for whom EY will perform Services pursuant to this engagement, and ensure that each participant complies with Client's requirements for participation in the mobility program, including if necessary, providing a consent (including, where applicable, a consent from the participant's spouse) authorizing EY to disclose the participant's tax return information to Client in connection with EY's assistance in determining tax equalization/reimbursement payments and other services relating to the mobility program.
- Provide EY with accurate and timely data, and other appropriate resources, and require Participants in Client's mobility program to provide EY with accurate and timely data and information.

A member firm of Ernst & Young Global Limited



Building a better
working world

**Contacts**

You have identified Laura Jones as your contact with whom we should communicate about these Services. Your contacts at EY for these Services will be Amy Brimmer and Matt Corey.

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

The fees for EY's services pursuant to this SOW are set forth in Attachment 1 hereto. Our professional fees will be subject to an annual fee increase of 2% starting on January 1, 2021 and each January 1 thereafter.

EY will invoice Client for 100% of the annual compliance services by February 15 of the year in which the services are to be provided (pre-bill) and a final reconciliation invoice will be issued by November 15. In addition, EY will invoice Client for all other services provided under this SOW, expenses, and applicable taxes or other charges, if any, on a monthly basis.

Payment of each invoice is due upon receipt of the invoice. You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you. In addition, a charge will be added to our fees reflecting an estimated technology cost incurred equal to 3% of the professional fees for this engagement.

Fees for the preparation of host country (non-U.S.) individual income tax returns and related compliance services will be based on the customary charges for these services by the EY Firm providing the Services and will vary by country. All amounts quoted in foreign currency will be converted to U.S. dollars at the time of billing.

In the case of any change in the assumptions and/or Client responsibilities set forth in this SOW, Client and EY agree to renegotiate EY's fees. If the parties do not reach an agreement on the renegotiated fees within thirty (30) days after EY has initiated negotiations with Client with respect to its fees, Client and EY shall have the right to terminate this SOW.

EY's commitment to provide the Services for the fees set out in Attachment 1 is based upon the following conditions:

- EY receives from each Participant an executed agreement in the form attached hereto as Attachment 2 (or such other form as is acceptable to EY) that documents the commitment of

A member firm of Ernst & Young Global Limited



the Participant to cooperate fully in the process. Full cooperation means that each Participant will provide EY in a timely manner with a properly completed electronic tax data organizer (unless EY has agreed to accept information in an alternative format and it and Client have agreed on the additional compensation attendant to such alternative), and will be responsive to requests for additional information. EY will bring to Client's attention any situation in which EY is not receiving full cooperation. EY will not be responsible for more than 3 attempts to secure information and at that time will escalate such issues to Client and Client will assume responsibility for obtaining the missing information from the Participant. In such instances where Client requests EY to continue to attempt to secure missing information, an additional charge will apply at our agreed rates.

- EY receives complete and accurate compensation information from the Client on a timely basis in a format that can be imported into our compensation bridging system.
- EY receives from each Participant and, where applicable, the Participant's spouse, an executed consent authorizing the disclosure of the Participant's tax return information to other members of the EY global network that will assist in the preparation of the Participant's home and host country income tax returns.
- Any legislative or regulatory change that significantly alters the scope of the Services, or the amount of time required to deliver the Services, will be considered an event for which EY may modify the fees. Accordingly, EY and Client shall promptly meet to negotiate an adjustment in the fees payable to EY as a result of such changes. EY shall have no obligation to commence work in connection with such changes until the fee impact is agreed upon by the parties in writing.

Thank you again for your selection of our firm.

*Ernst + Young LLP*

AGREED:
Pyxus International, Inc., on behalf of itself and its affiliates

By: *Laura D. Jones*
Laura D. Jones, SVP Human Resources

Date: *2/12/2020*

A member firm of Ernst & Young Global Limited


EY
Building a better
working world

**Appendix A**

The scope of Services and fees are detailed below. If Client requests new expatriate tax compliance services not referenced below, EY and Client may mutually agree to such additional services and document the agreed scope and fees via email correspondence, or where applicable, an amendment or separate SOW. Any such additional services will be subject to audit committee pre-approval, as required, and all other terms and conditions of this SOW.

**Services included:**

**Expatriate tax services for Participants:**

The following expatriate tax compliance services will be provided as authorized by Client for Participants in Client's mobility program.

***Fixed fee:***

The following tax compliance services will be billed based on the fixed fees indicated below.

| US compliance fee | Fee (USD) |
|---|---|
| • Annual Individual Federal tax return | $1,525 per return |
| • State and local income tax return(s) | $475 per return |
| • Request for extension without calculation | Included |
| • Request for extension to file with detailed calculation | $475 per extension |
| • U.S. Report of Foreign Bank and Financial Accounts Form FinCEN 114 where all required information is provided to us no later than 6 (six) weeks prior to the due date of Form FinCEN 114, unless otherwise mutually agreed by the parties in writing. | $550 per form |
| • U.S. Statement of Specific Foreign Financial Assets, Form 8938, based on information provided with no more than 10 reportable assets and no special valuation required | $450 per form |
| • Entry/Exit orientation meeting/call, limited to one hour duration | $575 per meeting/call |
| • Tax Settlement Calculation | $475 per calculation |

| Malawi compliance fee | Fee (USD) |
|---|---|
| • Entry/exit tax briefing | $500 per meeting/call |
| • Computation of monthly payroll tax | $400 per month per calculation |
| • Application for a tax clearance certificate upon expiry of the contract | $500 per application |

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

***Hourly rates:***

U.S.

For the following expatriate tax compliance services for Participants, you shall pay fees for the tax compliance services based on the actual time that our professionals spend performing them:

- Preparation of tax returns that include more than three Schedule K-1s
- Preparation of tax returns including more than one rental property
- Responses to correspondence audits/inquiries by Federal, State and/or local tax authorities regarding returns prepared by EY

You will be billed for these services at the following agreed upon rates for each level while the tax compliance services under this SOW are being performed:

| Level | Rate (USD) |
|---|---|
| Partner/Principal | $775 |
| Executive Director | $725 |
| Senior Manager | $650 |
| Manager | $550 |
| Senior | $450 |
| Staff | $275 |

In addition, with Client approval, the following services may be provided as needed:

- Preparation of tax returns involving complex forms, schedules and/or transactions such as 8865, 8621, and 5471 to report foreign gifts or ownership or transfers in foreign trusts, partnerships, passive foreign investment companies and/or corporations
- Preparation of Forms 3520 and 3520-A, as applicable
- Preparation of Form 8938 (Statement of Specified Foreign Financial Assets): with more than 10 reportable assets and/or special valuation(s) required
- Additional tax returns, other than home and host country returns

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

**On-call expatriate tax program services**

Upon written request, EY will provide additional, on-call tax services related to Client's mobility program when such services are not specifically identified as in-scope services above or otherwise covered by a separate SOW, and do not involve any significant tax planning or projects. Such on-call services are intended to be used to respond to one-off questions and for projects that are expected, at the beginning of the project, to involve professional time not to exceed (with respect to the specific project) $10,000 in professional fees. When applicable, an amendment or separate SOW will be provided to cover additional expatriate tax program services.

**Tax return preparation services to be paid by the Participant**

Authorized Participants in Client's mobility program are eligible to receive additional assistance with tax return compliance to be paid for by the Participant. Specific tasks or return preparation that may be requested by the Participant include the following:

- Children's or other dependents' tax returns
- Tax returns relating to household employees

The Participant may request these services at a future date by providing EY with a written request. The specific fee, which is not to exceed in the aggregate $10,000 per Participant per year for all such additional tax compliance services, may be agreed upon at the time the service will be provided and will be the responsibility of the Participant. If the tax return preparation services to be paid by the Participant are expected to involve total professional time that will exceed in the aggregate $10,000 in professional fees per year, such services will be considered outside the scope of this agreement. In such instance, a separate engagement agreement shall be entered into with the Participant.

**Services beyond the scope of this engagement**

Services that will not be provided to Participants under this SOW include but are not limited to:

- Contacting third parties (e.g., realtors, brokers, or other agents) to gather certain information (e.g., information regarding real estate or securities transactions) in order to prepare Participants' tax return(s)
- Children's or other dependents' tax returns, unless otherwise requested and agreed to be paid for by the Participant under the arrangements described above
- Retirement, insurance, financial or estate planning
- Personal tax planning

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

- Gift/trust/estate tax returns, other than Forms 3520/3520A, which is included in scope above
- Financial counseling
- Advice on rental of non-principal residence
- U.S. domicile ruling requests
- Tax returns relating to household employees, unless otherwise requested and agreed to be paid for by the Participant under the arrangements described above

We will be happy to discuss and provide fee estimates for such services beyond the scope of this engagement, which will be subject to an amendment or separate SOW to cover such additional services.

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

**Attachment 2**

**TERMS OF SERVICE AGREEMENT FOR MOBILITY SERVICES**

In this Terms of Service Agreement for mobility Services, Pyxus International, Inc., has engaged Ernst & Young LLP (referred to herein as "EY") to provide you with mobility services.

The Terms of Service Agreement is intended to inform you of what services will be provided to you by EY and confirm your responsibilities and the relevant terms contained in the engagement agreement with your employer that will apply to you as the recipient of EY's services.

EY will perform certain mobility services for you and, if applicable, for your spouse or spousal equivalent and other family members (each referred to as "you" or "Participant") as described in the Scope of Services section below, under the mobility services program of your employer or one of its affiliates (collectively "your employer" or the "Company").

EY may also provide other services to your employer under your employer's mobility services program. All services provided under your employer's mobility services program, including the services provided to you, are collectively referred to herein as "Services".

The terms of the mobility services program are set out in an engagement agreement between EY and your employer ("Engagement Agreement"). Extracts of clauses from the Engagement Agreement relevant to the provision of Services to you are set out below.

**THE EY NETWORK**

EY is an independent member of Ernst & Young Global Limited which acts as the central coordinating body of the EY network of independent firms ("EY Network"). No member of the EY Network other than EY assumes any responsibility to you in connection with the Services we provide to you. You acknowledge that EY is not the agent of any member of the EY Network and that none of those other entities are agents of EY.

You agree that (i) any claim arising out of or in connection with the Services we provide to you shall be brought only against EY and (ii) not to bring any proceedings arising out of or in connection with the Services personally against any other persons involved in the performance of the Services. You agree not to bring any proceedings arising out of or in connection with the Services in any jurisdiction against any member of the EY Network (other than EY) or any partner or staff thereof.

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

Each member of the EY Network and each partner or member of staff thereof and each of our partners or members of staff shall have the express benefit of this section and shall have the right to rely on and enforce any of its terms.

## TAX AUTHORITY NOTICE

You acknowledge that the taxpayer is responsible for compliance with the tax law. The obligations of the taxpayer include maintaining records and providing accurate and complete information to the tax authorities as required by the tax law. Penalties may be imposed by the tax authorities on the taxpayer for failure to comply with the tax law.

## COMMUNICATION BY ELECTRONIC MEANS

Unless otherwise agreed in writing with you, we may correspond by means of electronic media including email or provide information to you in electronic form as mutually agreed with your employer. Due to the inherent risks associated with the electronic transmission of information, we cannot guarantee the confidentiality and integrity of any information sent or received in relation to the Services once they are outside of our firewalls.

Although it is our policy to utilize anti-virus software, we similarly cannot guarantee that transmissions or other electronic information will be free from infection.

## TERMS OF USE OF TECHNOLOGY

EY may provide you with access to our proprietary software tool *GlobalOne* for the purpose of delivering documents to you and assisting you to provide information to EY. You may also be entitled to download and use our offline calendar application and Microsoft excel organizers (*GlobalOne* and such calendar application and organizers are referred to collectively herein as the "Software"). In such event, your access to and use of the Software will be subject to the terms and conditions which are contained within the *GlobalOne* site.

## PROVISION OF SERVICES

In order for EY to provide the Services to you, you agree to provide to EY in a timely and accurate manner the information that EY reasonably requires from you, which could, for example, include details with respect to your personal income or copies of your tax returns (collectively, your "Data"). You also acknowledge and confirm that you have authorized your employer to provide EY with any Data we may require from your employer in order to provide the Services to you.

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

Where your employer has transferred the provisioning of the Services to EY from another service provider, you agree that EY may contact your previous service provider in order to obtain your Data and you will complete the appropriate consent form in order to facilitate this process.

Information relating to tax advice EY provides to you, including communications between us or communications between EY and a third party, and any material EY creates in the course of providing that advice, may in some jurisdictions be privileged and protected from disclosure to the local tax authorities or any other authorities where relevant to the jurisdiction ("Client Privilege"). If the local authorities seek disclosure from you or EY of written or oral communications relating to such advice, EY will whenever reasonably possible discuss with you whether and how you may assert, or waive, the Client Privilege.

**SCOPE OF SERVICES**

In accordance with the terms of the Engagement Agreement between EY and your employer, EY will provide to you such of the Services as set out below. These Services will be provided to and accessible by you, only if determined necessary by your employer, in consultation with EY. From time to time during the term of the engagement these Services may be varied. We will notify you of a variation to the Services where such variation is applicable or relevant to you.

We have agreed with your employer how we will collect data from you, process that data and how we will deliver the Services to you.

Should you require assistance with any Services that are not included below, we will be pleased to discuss our capabilities with you. Following this discussion we could make a request to your employer for approval for out of scope Services or alternatively enter into a separate engagement agreement with you in relation to these Services. Should you require more information please refer to your usual EY contact or your relevant contact at your employer.

**Expatriate tax services**

Preparation of:

- Annual home country Federal / National/State/Local individual income tax returns (including more regular tax filings such as monthly tax returns where applicable)
- Annual host country Federal / National/ State/Local individual income tax returns (including more regular tax filings such as monthly tax returns where applicable)
- Additional individual income tax returns to be paid for by the Company as agreed in writing with the Company

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

- Annual tax reimbursement calculation, as required
- Tax return extension requests, as required
- U.S. Report of Foreign Bank and Financial Accounts Form FinCEN 114 where information received no later than six weeks prior to the due date of Form FinCEN 114, unless otherwise mutually agreed by the parties in writing
- Review and notification of tax assessment, as applicable, regarding returns prepared by EY
- Responses to initial routine correspondence audits/inquiries by tax authorities regarding returns prepared by EY

In addition, where approved by the Company, the following services may be provided as needed:

- Preparation of tax returns involving complex forms, schedules and/or transactions such as 8865, 8621, and 5471 to report foreign gifts or ownership or transfers in foreign trusts, partnerships, passive foreign investment companies and/or corporations
- Preparation of Forms 3520 and 3520-A, as applicable
- Preparation of Form 8938 (Statement of Specified Foreign Financial Assets): with more than 10 reportable assets and/or special valuation(s) required
- Additional tax returns, other than home and host country returns

Services beyond the scope of our engagement include but are not limited to:

- Preparation of estimated income tax payments
- Children's or other dependents' or household employees' tax returns
- Gift and/or estate tax returns: other than Forms 3520/3520A, which is included in scope above
- Preparation of filings to report ownership in trusts, partnerships and/or corporations
- Contacting third parties (i.e., your realtor, broker or other agents) to gather certain information (e.g., information regarding real estate or securities transactions) in order to complete your tax return
- Retirement, insurance, financial or estate planning
- Personal tax planning
- Financial counseling

**On-call expatriate tax program services to be paid by the Company**

When approved by the Company, Participants under the Company's mobility program are eligible to receive assistance with tax issues and dealings with tax authorities to be paid by the Company up to $10,000 for all such Services provided to you. Specific tasks that may be involved in connection with the Services include participation in meetings and telephone calls with you, participating in meetings and telephone calls with taxing authorities and other third parties, review of transactional

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

documentation, research of technical issues, and the preparation of technical memoranda, letters, e-mails, and other written documentation.

If Services to be provided with respect to specific questions, projects, and assignments are expected, at the beginning of the project, to involve total professional time that will exceed $10,000 in professional fees, such services will be considered outside the scope of this agreement. In such instance, a separate engagement agreement shall be prepared for approval by the Company and Participant.

**Tax return preparation services to be paid by Participant**

In addition to the expatriate tax compliance services [and on-call mobility program services] to be paid for by the Company, Participants may request additional tax compliance services to be paid for by the Participant. The additional tax compliance services that may be requested by the Participant include the following:

______ Children's or other dependents' tax returns

______ Tax returns relating to household employees

______ Review of foreign corporation reporting requirements, such as PFICs

If you are unsure at this time if you will need these services, these services may be requested at a later date via a written request to EY. The specific fee, which is not to exceed $10,000 per year for all such services, may be agreed upon at the time the service will be provided and will be the responsibility of the Participant. If the tax return preparation services to be paid for by Participant are expected to involve total professional time that will exceed $10,000 per year in professional fees or are beyond the scope of this agreement, a separate engagement agreement shall be entered into with Participant.

## LIMITATION OF LIABILITY

EY will not be liable for any claim for damages arising out of or in connection with any services provided hereunder for you or your employer in an amount greater than the amount of fees actually received by EY with respect to the services performed on your behalf and directly relating to and forming the basis of such claim. If the basis of such claim relates to services provided for you for a

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

given year, EY's liability shall be limited to the fees received with respect to services rendered to you for that year.

No party to this agreement will, in any event, be liable to the other, for any reason, for any consequential, incidental, special, punitive or indirect damages, including loss of profits, revenue, data, use of money or business opportunities, regardless of whether notice has been given or there is an awareness that such damages have been or may be incurred.

**GOVERNING LAW**

This agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and fully performed therein by residents thereof.

**DISPUTE RESOLUTION**

Any controversy or claim arising out of or relating to the services covered by this agreement and provided to you shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("Rules") as in effect on the date of this agreement. Judgment on any arbitration award may be entered in any court of appropriate jurisdiction.

**AGREEMENT TO TERMS OF SERVICE WITHIN THIS NOTICE**

Upon your acceptance, this Terms of Service Agreement is deemed effective as of the date of that acceptance for the whole period EY is engaged to provide Services to you. You confirm that you are authorized to accept these terms on behalf of your spouse or spousal equivalent and other family members where applicable.

Laura D Jones
Signature

Laura D Jones
Name (please print)

2/12/2020
Date

A member firm of Ernst & Young Global Limited



EY
Building a better
working world

**Use of EY Interact (EYI) for this engagement**
**(To be completed and returned with signed SOW)**

*Collaborating between EY firms:*

The EY firm engaged to provide the Services ("Prime") will establish a storage location ("library") for Client Information, Reports and other information it receives, develops, or stores as part of providing the Services (the "Engagement Information"). This "working library" will be accessible only to members of the Prime engagement team, EY Persons providing administrative support services, or for quality and risk management purposes. If the Prime subcontracts a portion of the Services to one or more EY firms (each referred to as a "Subcontractor"), then each Subcontractor will establish a separate library to create and store its Engagement Information. Access to each of these libraries is limited to members of the respective Subcontractor team and administrative or quality and risk management personnel.

The Prime EY firm team may create a separate library for the purpose of exchanging or sharing documents with a Subcontractor. This "sharing library" is only accessible by members of the Prime EY team and the Subcontractor team. No more than one Subcontractor will have access to a sharing library so that members from one Subcontractor team will not have access to Engagement Information from another Subcontractor team.

The Prime will have a separate library (the "common library") that allows for shared access to unrestricted information between the Prime and all Subcontractors.

*Collaborating with Client:*

Collaboration between Client and EY is managed within EYI by creating a client workspace with one or more sharing libraries to which Client employees designated by Client and at least one member of the Prime engagement team are provided access ("Client Library"). The Prime team could include one or more persons from outside the Prime country. Client may use the Client Library to deposit information and retrieve EY deliverables.

**Check only ONE box below to indicate the collaboration model to be used in this engagement**

X

Check this box if the **Centralized** collaboration model is to be used in this engagement:

The **Centralized** collaboration model enables collaboration through use of a single library on the client workspace where Client and all EY member firms participating in the engagement

A member firm of Ernst & Young Global Limited





EY
Building a better
working world

can exchange documents and information. Because access is managed at the library level, everyone with access to the library will be able to access all documents stored in the library.

☐ Check this box if the **Distributed** collaboration model is to be used in this engagement:

The **Distributed** collaboration model enables Client to collaborate directly with the Prime and each Subcontractor separately. Under this model a client sharing library is created on the client workspace to share access with the Prime and additional sharing libraries are created to share access with each Subcontractor. In its role as the engaging EY firm, at least one Prime team member will have access to each client sharing library, but team members from a Subcontractor will be granted access to only their respective sharing library unless otherwise requested by Client.

**Insert below the name and email address of the Client employee who will determine which Client employees will have access to the respective collaboration library(ies):**

Client employee name: Laura Jones
Email address: ljones@pyxus.com

A member firm of Ernst & Young Global Limited

**Exhibit A-11**

**REDACTED IN ITS ENTIRETY**

**Exhibit A-12**



EY
Building a better working world

Ernst & Young LLP
100 North Tryon Street
Suite 3800
Charlotte, NC 28202

Tel: +1 704 372 6300
ey.com

## Statement of Work

This Statement of Work, which is effective as of June 15, 2020 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc. (f/k/a Alliance One International, Inc.) (collectively, "you" or "Client"), pursuant to the Agreement, dated June 15, 2020, between EY and Pyxus International, Inc. (f/k/a Alliance One International, Inc.) (the "Agreement"), which was executed in connection with the Client filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on June 15, 2020 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and describes certain tax services that EY will perform for the Client during the Client's Chapter 11 proceedings. This SOW shall be effective as of the date of Client's filing a Chapter 11 petition with Bankruptcy Court.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the tax advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

### Scope of Services

We will provide the following tax advisory Services to you, contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in the Agreement (inclusive of this SOW):

EY will work with appropriate Client personnel and/or Client's outside counsel and other advisors in developing an understanding of the tax implications associated with the Client's Chapter 11 filing or restructuring or other plan. In addition, the Services may include the following:

- Analyzing the tax implications of reorganization and/or restructuring alternatives Client is evaluating, that may result in a change in the equity, capitalization, and/or ownership of the shares of Client or its assets;

- Analyzing the indirect tax implications of any reorganization and/or restructuring alternatives Client is evaluating;

- Analyzing the US federal and state income tax consequences of cancellation of indebtedness income ("CODI") and the tax impact of the bankruptcy on future cash taxes;

- Advising Client in developing an understanding of the tax implications of its bankruptcy restructuring alternatives and post-bankruptcy operations including, as needed, research and analysis of Internal Revenue Code sections, Treasury regulations, state tax statutes and



Ernst & Young LLP
100 North Tryon Street
Suite 3800
Charlotte, NC 28202

Tel: +1 704 372 6300
ey.com

**Out-of-Scope Services**

Any activities not described as Services, as indicated above under Scope of Services, are not covered by the fees stated herein. These services will be considered outside the scope of this SOW and are the responsibility of Client to perform on a timely basis unless otherwise agreed by the parties in writing (in a separate SOW or an amendment to this SOW) and approved by the Bankruptcy Court.

**Your obligations**

We draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, and your representation, as of the date hereof, under paragraph 26 thereof.

You will not, and you will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this SOW.

**Scope Specific Provisions**

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. We will not conduct a review to detect fraud or illegal acts.

To facilitate performance of the Services, we may use certain software and tools that allow us to collaborate with you electronically, including *EY Interact* (collectively, "Collaboration Tools"). You shall not, and shall not permit third parties to, copy or modify any Collaboration Tools, or decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Collaboration Tools. Collaboration Tools are provided "as is," and none of EY or any other party involved in the creation, production or delivery of any Collaboration Tool makes any warranties, express or implied, with respect to any Collaboration Tool, or any warranty that the operation of any Collaboration Tool will be uninterrupted, error free or that it will be compatible with any of your hardware or software. Notwithstanding the foregoing, EY will use commercially reasonable efforts to assist you in resolving system compatibility issues between your systems and the Collaboration Tools in the event such issues arise.

Your use of Collaboration Tools (or use on your behalf) is not to be used to conduct ongoing management activities and is not a substitute for any documentation or system of records you must create or maintain pursuant to law, including Internal Revenue Code Section 6001. You are responsible for maintaining a copy of any document or information that you input into any Collaboration Tool and



Ernst & Young LLP
100 North Tryon Street
Suite 3800
Charlotte, NC 28202

Tel: +1 704 372 6300
ey.com

for maintaining copies for your use. Collaboration tools may not be used for activities not related to EY. EY may remove documents from your view without notification.

We may subcontract a portion of the Services to one or more EY Firms and to subcontractors, including retired EY tax partners, working under our direction who may communicate directly with you. EY, however, will remain solely responsible to Client for the performance of the Services. If EY has prepared or reviewed (or will prepare or review) Client's US income tax returns, Client authorizes the EY Firms, including those located outside the United States, and our subcontractors to disclose information received or generated in connection with the preparation of any such U.S. income tax returns of the Client to and among each other for the purpose of rendering the Services and discussing and providing other services to you. You have the ability to request a more limited disclosure of tax return information than that described above. If, at any time, you would like us to narrow the scope of the information to be disclosed, please contact us in writing and we will limit any disclosures that have not yet occurred. You acknowledge that this consent will be valid for three years from the date this SOW is signed by you below.

EY, the other EY Firms and our respective service providers may Process Client Information obtained in connection with Services performed for you, for benchmarking, research, thought leadership and related purposes, and to enhance the services we provide to you and other clients, provided that we do not identify you or any individuals related to you, or otherwise make reference to you, in connection with these matters. In all such matters, we will comply with applicable law and professional obligations.

**Contacts**

You have identified Phil Garofolo as your contact with whom we should communicate about these Services. Your contacts at EY for these Services will be Britt Byrom and George Harrison.

**Engagement Team**

George Harrison (Partner) and Morgan Lendino (Senior Manager) will lead the EY team in providing the Services. If either of these individuals ceases to provide the Services to the Client pursuant to this SOW, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in an efficient manner.

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.



Ernst & Young LLP
100 North Tryon Street
Suite 3800
Charlotte, NC 28202

Tel: +1 704 372 6300
ey.com

You shall pay fees for the Services, which fees are based on the time that our professionals spend performing them. The rates, by level of professional, are as follows:

| Title | Rate Per Hour |
|---|---|
| Partner/Principal | $ 900 |
| Managing Director | $ 850 |
| Senior Manager | $ 725 |
| Manager | $ 650 |
| Senior | $ 475 |
| Staff | $ 300 |

You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.

We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses, in accordance with the United States Bankruptcy Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the District of Delaware ("Local Rules") and any relevant administrative orders. We will submit our invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

We acknowledge that payment of our fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of us and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst + Young LLP

Pyxus International, Inc. (f/k/a Alliance One International, Inc.)

By: ______________________________

Name: Joel Thomas
Title: Executive Vice President - Chief Financial Officer

Date: June 19, 2020



Building a better
working world

Ernst & Young LLP
100 North Tryon Street
Suite 3800
Charlotte, NC 28202

Tel: +1 704 372 6300
ey.com

regulations, case law and other relevant US tax authorities, and assisting and advising in securing rulings from the Internal Revenue Service or applicable state tax authorities;

- Providing tax advisory services regarding the availability, limitations on the use, and preservation of tax attributes, such as net operating losses, credits, and tax basis of assets, including tax calculations to compare the potential consequences of a hypothetical Section 382 ownership change qualifying under Section 382(l)(5) vs. Section 382(l)(6);

- If and as applicable, providing tax advisory services regarding the validity of tax claims in order to determine if the tax amount claimed reasonably represents the correct tax liability pursuant to applicable tax law;

- Analyzing legal and other professional fees incurred during the bankruptcy period for purposes of determining future deductibility of such costs for US federal, state and local tax purposes;

- Preparing documentation, as appropriate or necessary, of tax analyses, opinions, recommendations, conclusions and correspondence for proposed restructuring alternatives, bankruptcy tax issues or other tax matters described herein;

- Advising the Client in connection with its dealings with tax authorities (e.g., compliance and audit issues arising in the ordinary course of business while in bankruptcy), including participation in meetings and telephone calls with the Client, taxing authorities, and other third parties;

- Advising the Client personnel on the bankruptcy tax process and procedure lifecycle, the typical tax issues, options and opportunities related to a Chapter 11 filing, the typical impact of a Chapter 11 filing on a corporate tax department's operations, and leading practices for addressing such impact areas while operating in bankruptcy and the post-emergence period;

- Assistance in obtaining rulings with tax authorities as relevant and necessary;

- Consultation and discussions with Client and its outside advisors (e.g., legal, financial) relative to the Services; and

- Documentation to support our analyses and conclusions, as necessary, and agreed with Client.

The Services may be modified from time to time by our mutual written agreement and approval of the Bankruptcy Court, if required.

Client acknowledges and agrees that, whether or not this SOW has been approved by the Bankruptcy Court at the time any Report is rendered, any such Report rendered by EY prior to the delivery of its final Report is preliminary in nature and cannot be relied upon for any purpose, including penalty protection.

**Exhibit A-13**

**OMNIBUS AMENDMENT**

This Omnibus Amendment, dated June 26, 2020 (this "Amendment") amends each of the Statements of Work, attached hereto as Exhibit A (the "SOWs"), between Ernst & Young LLP ("we" or "EY") and Pyxus International, Inc., f/k/a Alliance One International, Inc. ("you" or "Client"). This Amendment shall be effective as of the date of the Client's filing a petition under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. Capitalized terms used, but not otherwise defined, in this Amendment shall have the respective meanings ascribed to them in the SOWs and identical terms defined in this Amendment and in the SOWs shall have the respective meanings ascribed to them herein. This Amendment replaces and supersedes the Omnibus Amendment dated as of June 15, 2020 by and between EY and Client.

Each of the SOWs is hereby amended as follows:

1. Notwithstanding anything to the contrary in the SOWs, each such SOW shall be subject to the Agreement, dated June 15, 2020 ("Agreement") between EY and Client, which was executed in connection with the Client filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on or about June 15, 2020 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").
2. EY will provide the Services set forth in each SOW to you, contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in the Agreement and this Amendment.
3. The Services set forth in each SOW may be modified from time to time by our mutual written agreement and approval of the Bankruptcy Court, if required.
4. Client acknowledges and agrees that, whether or not an SOW has been approved by the Bankruptcy Court at the time any Report is rendered, any such Report rendered by EY prior to the delivery of its final Report is preliminary in nature and cannot be relied upon for any purpose, including penalty protection.
5. Any activities not described as Services in a SOW are not covered by the fees set forth therein. These services will be considered outside the scope of such SOW and are the responsibility of Client to perform on a timely basis unless otherwise agreed by the parties in writing (in a separate SOW) and approved by the Bankruptcy Court.
6. Subject to Bankruptcy Court approval, we may subcontract portions of the Services to other EY Firms.
7. Set forth on Exhibit A is a list of individuals who will lead the EY team in providing the Services for each SOW. If any of these individuals ceases to provide services to the Client pursuant to such SOW, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in an efficient manner.
8. We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses, in accordance with the United States Bankruptcy Code (the "Bankruptcy

Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the District of Delaware ("Local Rules") and any relevant administrative orders. We will submit our invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

9. You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.
10. We acknowledge that payment of our fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of us and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.
11. Notwithstanding anything to the contrary set forth in a SOW, EY will not invoice the Client for any technology costs or service charges for late payments for such engagement.
12. Statement of Work No. 9 as referenced in Exhibit A, dated November 8, 2011, as amended on July 31, 2014, July 20, 2016 and October 15, 2018, relating to internal audit services, shall be revised to remove the "Fees" section in its entirety and replace it with the following language:

> "Fees for the Internal Audit Services will be billed at a rate per hour based on level of resource utilized. The following rate card will be used:
>
> | Level | Rate |
> |---|---|
> | PPED | $500 |
> | Senior Manager | $350 |
> | Manager | $210 |
> | Senior | $150 |
> | Staff | $120 |
>
> Total professional fees for the Services will not exceed $3.3 million for FY21. EY will invoice for direct expenses incurred in connection with the performance of these services. Direct expenses include reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses specifically related to this engagement."

13. Statement of Work No. 1 as referenced in Exhibit A, dated July 9, 2018, relating to provisional co-sourcing, shall be revised to adjust the "Fees" section, replacing the rate card therein with the following rate card:

| Level | Core | Specialty | National |
|---|---|---|---|
| PPED | $670 | $705 | $780 |
| Executive Director | $560 | $600 | $670 |
| Senior Manager | $450 | $495 | $585 |

| Manager | $325 | $375 | [redacted] |
|---|---|---|---|
| Senior | $255 | [redacted] | [redacted] |
| Staff | $170 | [redacted] | [redacted] |

14. The following SOWs shall be revised to extend the time period during which Services may be rendered thereunder through December 31, 2020:
    14.1Statement of Work No. 8 as referenced in Exhibit A, dated June 16, 2019, as amended on October 8, 2019, relating to financial accounting and advisory services.
13. Our ability to perform Services set forth in the Statement of Works may depend, among other things, on our mutual agreement that our performance of such Services will not impair our independence, if required, related to you or any affiliated entities.

Except as modified by this Amendment, all terms and conditions of the SOWs shall continue in full force and effect and be unaffected by this Amendment.

[*Signature page follows*]

In witness whereof, the parties have executed this Amendment as of the date set forth above.

Ernst & Young LLP

BY: Keith M. [signature]

Title: Partner, Central Region Mobility Advisory Market Segment Leader

Pyxus International, Inc.

By: [signature]

Title: VP Corporate Controller

Exhibit A

| Number | SOW Description | Original SOW Date | Amendment Date(s) | Contacts |
|---|---|---|---|---|
| 1 | FY20 Provision Co-Sourcing | 7/9/2018 | N/A | Britt Byrom |
| 2 | FY20 Transfer Pricing Controversy and Documentation | 6/12/2020 | N/A | Sarah McCarthy |
| 3 | FY20 Routine On-Call Assistance | 6/12/2020 | N/A | Britt Byrom |
| 4 | China RO Deregistration | 4/9/2018 | N/A | Scott Shell |
| 5 | Global Internal Restructuring - Design & Implementation | 12/27/2017 | N/A | Scott Shell |
| 6 | VME IBR Valuation | 3/29/2019 | 5/8/2020 | Kris Shirley<br>Drew Banach |
| 7 | FAAS/VME CECL - Phase 3 | 8/28/2019 | 1/20/2020;<br>4/29/2020 | Mike Ohrnstein<br>Peter Melvin |
| 8 | FAAS Accounting Optimization | 6/19/2019 | 10/8/2019 | Rachel Gerring<br>Sharon Bernacki |
| 9 | Internal audit SOW | 11/8/2011 | 7/31/2014;<br>7/20/2016;<br>10/15/2018 | Tony Blackman<br>Brittney Fleming |
| 10 | Expatriate services | 2/12/2020 | N/A | Amanda Brimmer<br>Matt Corey |
| 11 | China Restructuring Support | 5/8/2020 | N/A | Vickie Lin |

**Exhibit A-14**

**Master Services Agreement**


Building a better
working world

Ernst & Young LLP
Suite 500
4131 ParkLake Avenue
Raleigh, NC 27612

Tel: +1 919 981 2800
ey.com

Pyxus International, Inc.
Attention: Mr. Joel Thomas
Executive Vice President & Chief Financial Officer
8001 Aerial Center Parkway
Morrisville, NC 27560

June 15, 2020

Dear Mr. Thomas:

Thank you for choosing Ernst & Young LLP ("we" or "EY") to perform professional services (the "Services") for Pyxus International, Inc. ("you" or "Client") subsequent to Client filing a petition under Chapter 11 ("Chapter 11") of the United States Bankruptcy Code ("Bankruptcy Code") on or about June 15, 2020 with the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Our performance of Services is contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in this Agreement. We appreciate the opportunity to assist you and look forward to working with you.

For each project that we agree to undertake for you, we will prepare a Statement of Work describing the particular Services, as well as any advice, presentations, or filings to be made, our fees therefor, and any other project-specific arrangements and shall be subject to approval of the Bankruptcy Court. All of the Services will be subject to the terms and conditions of this letter, its attachments, including the General Terms and Conditions, and the applicable Statement of Work (together, this "Agreement").

We may enter into Statements of Work with you for a period of five years following the date of this letter, although we may agree with you to extend that period, including by executing additional Statements of Work referencing this Agreement, provided you continue to operate under Chapter 11 bankruptcy protection.

This Agreement shall be effective as of the date of Client's filing of a Chapter 11 petition in the Bankruptcy Court.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it to Keith Feuz at your earliest convenience. If you have any questions about any of these materials, please do not hesitate to contact Keith Feuz so that we can address any issues you identify before we begin to provide any Services.

Very truly yours,

Ernst + Young LLP

AGREED:

Pyxus International, Inc.

By: ______________________________
Joel Thomas, Executive Vice President and Chief Financial Officer

# General Terms and Conditions

## Our relationship with you

1. We will perform the Services in accordance with applicable professional standards, including those established by the American Institute of Certified Public Accountants ("**AICPA**").

2. We are a member of the global network of Ernst & Young firms ("**EY Firms**"), each of which is a separate legal entity.

3. We will provide the Services to you as an independent contractor and not as your employee, agent, partner or joint venturer. Neither you nor we have any right, power or authority to bind the other.

4. Subject to Bankruptcy Court approval, we may subcontract portions of the Services to other EY Firms, who may deal with you directly. Nevertheless, we alone will be responsible to you for the Reports (as defined in Section 11), the performance of the Services, and our other obligations under this Agreement. From time to time, non-CPA personnel may perform the Services.

5. We will not assume any of your management responsibilities in connection with the Services. We will not be responsible for the use or implementation of the output of the Services, although we may otherwise provide advice and recommendations to assist you in your management functions and making decisions.

## Your responsibilities

6. You shall assign a qualified person to oversee the Services. You are responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for your purposes.

7. You shall provide (or cause others to provide) to us, promptly, the information, resources and assistance (including access to records, systems, premises and people) that we reasonably require to perform the Services.

8. To the best of your knowledge, all information provided by you or on your behalf ("**Client Information**") will be accurate and complete in all material respects. The provision of Client Information to us will not infringe any copyright or other third-party rights.

9. We will rely on Client Information made available to us and, unless we expressly agree otherwise, will have no responsibility to evaluate or verify it.

10. You shall be responsible for your personnel's compliance with your obligations under this Agreement.

## Our Reports

11. Any information, advice, recommendations or other content of any reports, presentations or other communications we provide under this Agreement ("**Reports**"), other than Client Information, are for your internal use only (consistent with the purpose of the particular Services).

12. You may not disclose a Report (or any portion or summary of a Report) externally (including to your affiliates) or refer to us or to any other EY Firm in connection with the Services, except:

    (a) to your lawyers (subject to these disclosure restrictions), who may review it only to give you advice relating to the Services,

    (b) to the extent, and for the purposes, required by subpoena or similar legal process (of which you will promptly notify us),

    (c) to other persons (including your affiliates) with our prior written consent, who have executed an access letter substantially in the form we prescribe, or

    (d) to the extent it contains Tax Advice, as set forth in Section 13.

    If you are permitted to disclose a Report (or a portion thereof) externally, you shall not alter, edit or modify it from the form we provided.

13. You may disclose to anyone a Report (or a portion thereof) solely to the extent that it relates to tax matters, including tax advice, tax opinions, tax returns, or the tax treatment or tax structure of any transaction to which the Services relate ("**Tax Advice**"). With the exception of tax authorities, you shall inform those to whom you disclose Tax Advice that they may not rely on it for any purpose without our prior written consent.

14. You may incorporate into documents that you intend to disclose externally EY summaries, calculations or tables based on Client Information contained in a Report, but not our recommendations, conclusions or findings. However, you must assume sole responsibility for the contents of those documents and not refer to us or any other EY Firm in connection with them. This provision does not affect your ability to circulate Reports internally.

15. You may not rely on any draft Report. We shall not be required to update any final Report for circumstances of which we become aware, or events occurring, after its delivery.

## Limitations

16. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, any consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, including any amount for loss of profit, data or goodwill, whether or not the likelihood of such loss or damage was contemplated.

17. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by our fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

18. You shall make any claim relating to the Services or otherwise under this Agreement no later than one year after you became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

19. You may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or our or its subcontractors, members, shareholders, directors, officers, partners, principals or employees ("**EY Persons**"). You shall make any claim or bring proceedings only against us. The provisions of Sections 16 through 20 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

## Indemnity

20. To the fullest extent permitted by applicable law and professional regulations, you shall indemnify us, the other EY Firms and the EY Persons against all claims by third parties (including your affiliates and attorneys) and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of the disclosure of any Report (other than Tax Advice) or a third party's use of or reliance on any Report (including Tax Advice) disclosed to it by you or at your request.

## Intellectual property rights

21. We may use data, software, designs, utilities, tools, models, systems and other methodologies and know-how that we own or license ("**Materials**") in performing the Services. Notwithstanding the delivery of any Reports, we retain all intellectual property rights in the Materials (including any improvements or knowledge developed while performing the Services), and in any working papers compiled in connection with the Services (but not Client Information reflected in them).

22. Upon payment for particular Services and subject to the other terms of this Agreement, you may use the Reports relating to those Services, as well as any Materials owned by us that are included therein, solely to the extent necessary to use the Reports.

## Confidentiality

23. Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential and/or proprietary. Either of us may, however, disclose such information to the extent that it:

    (a) is or becomes public other than through a breach of this Agreement,

    (b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information,

    (c) was known to the recipient at the time of disclosure or is thereafter created independently,

    (d) is disclosed as necessary to enforce the recipient's rights under this Agreement, or

    (e) must be disclosed under applicable law, legal process or professional regulations.

24. Either of us may use electronic media to correspond or transmit information and such use will not in itself constitute a breach of any confidentiality obligations under this Agreement.

25. Unless prohibited by applicable law, we may provide Client Information to other EY Firms (which are listed at www.ey.com) and EY Persons, as well as external third parties providing services on our or their behalf, who may collect, use, transfer, store or otherwise process (collectively, "**Process**") it in various jurisdictions in which they operate in order to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, to provide financial

accounting and other administrative support services or for quality and risk management purposes. We shall be responsible to you for maintaining the confidentiality of Client Information, regardless of where or by whom such information is Processed on our behalf.

26. With respect to any Services, if U.S. Securities and Exchange Commission auditor independence requirements apply to the relationship between you or any of your associated entities and any EY Firm, you represent, to the best of your knowledge, as of the date of this Agreement and as of the date of each Statement of Work hereunder, that neither you nor any of your affiliates has agreed, either orally or in writing, with any other advisor to restrict your ability to disclose to anyone the tax treatment or tax structure of any transaction to which the Services relate. An agreement of this kind could impair an EY Firm's independence as to your audit or that of any of your affiliates, or require specific tax disclosures as to those restrictions. Accordingly, you agree that the impact of any such agreement is your responsibility.

## Data protection

27. If we Process Client Information that can be linked to specific individuals ("**Personal Data**"), we will Process it in accordance with Section 25 of this Agreement, as well as applicable law and professional regulations, including, where applicable, the EU-U.S. Privacy Shield Framework and the Swiss-U.S. Privacy Shield Framework, each administered by the U.S. Department of Commerce and to which EY has self-certified (collectively, the "Privacy Shield Framework"). Further information (including disclosures required by the Privacy Shield Framework) is set out at www.ey.com/us/privacyshield. We will require any service provider that Processes Personal Data on our behalf to provide at least the same level of protection for such data as is required by the Privacy Shield Framework and other legal and regulatory requirements applicable to us. If any Client Information is protected health information under the Health Insurance Portability and Accountability Act, as amended, this Agreement is deemed to incorporate all of the terms otherwise required to be included in a business associate contract relating to such information.

28. You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been Processed in accordance with applicable law. In order to provide the Services, we may need to access Personal Data consisting of protected health information, financial account numbers, Social Security or other government-issued identification numbers, or other data that, if disclosed without authorization, would trigger notification requirements under applicable law ("Restricted Personal Data"). In the event that we need access to such information, you will consult with us on appropriate measures (consistent

with professional standards applicable to us) to protect the Restricted Personal Data, such as deleting or masking unnecessary information before it is made available to us, encrypting any data transferred to us, or making the data available for on-site review at a Client site. You will provide us with Restricted Personal Data only in accordance with mutually agreed protective measures.

## Fees and expenses generally

29. You shall pay our professional fees and specific expenses in connection with the Services as detailed in the applicable Statement of Work. You shall also reimburse us for other reasonable expenses incurred in performing the Services. Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally). Unless otherwise set forth in the applicable Statement of Work, payment is due within 30 days following receipt of each of our invoices. We may receive rebates in connection with certain purchases, which we use to reduce charges that we would otherwise pass on to you.

30. Subject to Bankruptcy Court approval, if necessary, we may charge additional professional fees if events beyond our control (including your acts or omissions) affect our ability to perform the Services as originally planned or if you ask us to perform additional tasks.

31. If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

## Force majeure

32. Neither you nor we shall be liable for breach of this Agreement (other than payment obligations) caused by circumstances beyond your or our reasonable control.

## Term and termination

33. This Agreement applies to the Services whenever performed after the date of your filing of a Chapter 11 petition (including before the date of this Agreement).

34. This Agreement shall terminate upon the completion of the Services. This Agreement and/or any or all Statements of Work may be terminated at any time by you or us, but in any event this Agreement including all Statements of Work will expire upon the effective date of your confirmed plan of reorganization, or liquidation

of your assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise.

35. You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

36. The provisions of this Agreement, including Section 14 and Section 37 and otherwise with respect to Reports, that give either of us rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement and shall survive completion of the Client's bankruptcy whether through a confirmed plan of reorganization under Chapter 11, liquidation of the Client's assets under Chapter 7 of the Bankruptcy Code, or otherwise, but our respective confidentiality obligations (other than those relating to Reports or under Section 14) shall continue thereafter for three years only.

## Governing law and dispute resolution

37. This Agreement, and any non-contractual matters or obligations arising out of this Agreement or the Services, including (without limitation) claims arising in tort, fraud, under statute or otherwise relating to the Services, or questions relating to the scope or enforceability of this Section 37, shall be governed by, and construed in accordance with, the laws of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Client, EY and any all successors and assigns thereof.

## Miscellaneous

38. This Agreement constitutes the entire agreement between us as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered. In addition, any policy, protocol, agreement (other than this Agreement) or other instrument, in whatever form, imposed at any time that purports to obligate EY, any other EY Firm or any EY Person with respect to the use of Client Information shall be void and of no further effect, and you shall not seek to enforce any such obligation. Except as expressly provided otherwise herein, this Agreement does not modify the terms or provisions for other professional services executed prior to Client's filing of a Chapter 11 petition in the Bankruptcy Court.

39. Both of us may execute this Agreement (including Statements of Work), as well as any modifications thereto, by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement or any Statement of Work hereunder, subject to Bankruptcy Court approval, if necessary.

40. Each of us represents to the other that each person signing this Agreement or any Statement of Work hereunder on its behalf is expressly authorized to execute it and to bind such party to its terms. You also represent that this Agreement has, if necessary, been considered and approved by your Audit Committee. You represent that your affiliates and any others for whom Services are performed shall be bound by the terms of this Agreement.

41. You agree that we and the other EY Firms may, subject to professional obligations, act for other clients, including your competitors.

42. Neither of us may assign any of our rights, obligations or claims arising out of or related to this Agreement or any Services.

43. If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

44. If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the Cover Letter, (b) the applicable Statement of Work and any attachments thereto, (c) these General Terms and Conditions, and (d) other attachments to this Agreement.

45. Neither of us may use or reference the other's name, logo or trademarks publically without the other's prior written consent, although we may publically identify you as a client in connection with specific Services or generally.

46. By agreement to the provision of the Services, we are not providing a guarantee to you that our performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee your successful reorganization under Chapter 11.

# Appendix 1

## Dispute resolution procedures

### Mediation

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

### Arbitration

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.  In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.