## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PYXUS INTERNATIONAL, INC., *et al.,*[1] | ) | Case No. 20-11570 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Ref. Docket Nos. 15 & 84** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated June 15, 2020 (the "DIP Motion"),[2] of Pyxus International, Inc.

(the "DIP Borrower" or "Pyxus") and each of its affiliates that are debtors and

debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases") and pursuant to sections 105, 361, 362, 363, 364, 365, 503, 506, and 507

of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1,

4001-2, 9006, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the District

of Delaware (the "Local Rules") seeking entry of an interim order, which was entered by this Court

on June 17, 2020 [Docket No. 84] (together with all annexes, schedules, and exhibits thereto, the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pyxus International, Inc. (6567); Alliance One International, LLC (3302) ("AOI"); Alliance One North America, LLC (7908) ("AONA"); Alliance One Specialty Products, LLC (0115); and GSP Properties, LLC (5603). The Debtors' service address is: 8001 Aerial Center Parkway, Morrisville, NC 27560-8417.

[2]  Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the applicable DIP Loan Documents (as defined herein).

"Interim Order") and this final order (together with all annexes, schedules, and exhibits hereto, this "Final Order"):

(1) authorizing the DIP Borrower to obtain postpetition financing on a secured superpriority basis, consisting of a new money term loan facility (the "DIP Facility," and the loans issued thereunder, the "DIP Loans") in an aggregate principal amount of up to $206,700,000, of which (x) $131,700,000 was made available to the DIP Borrower upon entry of the Interim Order and (y) $206,700,000 less the aggregate principal amount of any DIP Loans funded following entry of the Interim Order shall be available to the DIP Borrower following entry of this Final Order, in each case, pursuant to the terms and conditions set forth in the Interim Order and this Final Order (collectively, the "DIP Orders"), as applicable, and that certain credit agreement, dated as of June 17, 2020, substantially in the form of Exhibit B to the DIP Motion (as may be amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement"), executed by the DIP Borrower, Cortland Capital Market Services LLC, as the administrative agent and collateral agent for the DIP Facility (the "DIP Agent"), and each of the Lenders (as defined in the DIP Credit Agreement, the "DIP Lenders" and, together with the DIP Agent, the "DIP Secured Parties"), along with any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, escrow agreements, instruments, notes, and documents executed in connection therewith (including any Loan Documents (as defined in the DIP Credit Agreement)) (each as amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms hereof and thereof, and collectively with the DIP Credit Agreement, the "DIP Loan Documents");

(2) authorizing the DIP Borrower to incur, and for the Subsidiary Guarantors (as defined in the DIP Credit Agreement) that are Debtors (the "DIP Debtor Guarantors," and, together with the DIP Borrower, the "DIP Debtor Loan Parties") to guarantee, together with the other Subsidiary Guarantors that are not Debtors (the "DIP Non-Debtor Guarantors" and together with the DIP Debtor Guarantors, the "DIP Guarantors"; the DIP Guarantors together with the DIP Borrower, the "DIP Loan Parties"), on an unconditional joint and several basis, the principal, interest, fees, costs, expenses, obligations (whether contingent or otherwise), and all other amounts (including, without limitation, all Obligations as defined in the DIP Credit Agreement), as and when due and payable under each of the DIP Loan Documents (collectively, the "DIP Obligations");

(3) authorizing the DIP Debtor Loan Parties to execute, deliver, and perform under the DIP Credit Agreement and all other DIP Loan Documents, and to perform such other and further acts as may be necessary or desirable in connection with this Final Order, the DIP Loan Documents, and the transactions contemplated hereby and thereby;

(4) granting to the DIP Agent, for the benefit of the DIP Secured Parties, and authorizing the DIP Debtor Loan Parties to incur, the DIP Liens (as defined below), as applicable, in all DIP Collateral (as defined below), in each case, subject to the Carve Out (as defined below), the terms hereof and the DIP Loan Documents;

(5)    granting to the DIP Agent, for the benefit of the DIP Secured Parties, and authorizing the DIP Debtor Loan Parties to incur, allowed superpriority administrative expense claims against each of the DIP Debtor Loan Parties, on a joint and several basis, in respect of all DIP Obligations, in each case, in accordance with and subject to the Carve Out and the terms hereof;

(6)    authorizing the DIP Debtor Loan Parties' use of Prepetition Collateral (as defined below), including Cash Collateral (as defined below), as well as the proceeds of the DIP Facility, subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents, including to immediately and indefeasibly refinance all Prepetition ABL Credit Facility Obligations (as defined below) in full, including (without limitation) interest (at the non-default contract rate) and fees (including professional fees) through the date of repayment (the "Prepetition ABL Discharge"), from the initial draw under the DIP Facility, which Prepetition ABL Discharge shall be subject to paragraph 28 hereof;

(7)    providing adequate protection, subject to the Carve Out and as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) of their respective interests in the Prepetition Collateral (including Cash Collateral) arising out of the Prepetition Loan Documents (as defined below);

(8)    modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise solely to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order;

(9)    as set forth in paragraphs 29 and 31 herein, authorizing the Debtors to waive (a) their right to surcharge the DIP Collateral (as defined herein) or any Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and

(10)    as set forth in paragraph 30 herein, authorizing the Debtors to waive the equitable doctrine of "marshaling" and other similar doctrines with respect to (a) the DIP Collateral, for the benefit of any party other than the DIP Secured Parties, and (b) the Prepetition Collateral, for the benefit of any party other than the Prepetition Secured Parties, in either case, subject to the Carve Out.

The interim hearing on the DIP Motion (the "Interim Hearing") pursuant to Bankruptcy Rule 4001 having been held by this Court on June 16, 2020, and a final hearing to consider entry of this Final Order (the "Final Hearing") having been held by this Court on July 17, 2020, to the extent necessary, and the Court having considered the DIP Motion, the DIP Loan Documents, the

*Declaration of Joel Thomas, Executive Vice President and Chief Financial Officer of Debtor*

*Pyxus International, Inc., in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] and the *Declaration of Brandan Aebersold in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors (A) To Obtain Postpetition Financing and (B) To Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 16] (collectively, the "First Day Declarations"), the pleadings filed with the Court, the evidence submitted and arguments proffered or adduced at the Interim Hearing and Final Hearing, if any, and upon the record of these Chapter 11 Cases; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested in the DIP Motion is necessary and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      **Petition Date.** On June 15, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these Chapter 11 Cases. On June 16, 2020, this Court entered an order approving the joint administration of the Chapter 11 Cases for procedural purposes only.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

26765387.2

B.    **Debtors-in-Possession.** The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of these Chapter 11 Cases.

C.    **Committee Formation.** As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases (together with any statutory committee that may appointed or formed in the Chapter 11 Cases or any Successor Cases, the "Official Committee").

D.    **Jurisdiction and Venue.** The Court has jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and Local Rules 2002-1, 4001-2, 9006, and 9013-1.

E.    **Debtors' Stipulations.** Without prejudice to the rights of the DIP Debtor Loan Parties' estates or any other party in interest (but subject to the limitations thereon contained in paragraph 28 hereof), the DIP Debtor Loan Parties, on behalf of their estates, admit, stipulate, acknowledge, and agree as follows:

(a)    Prepetition First Lien Notes:

(i)    **Prepetition First Lien Notes Indenture:** Pursuant to that certain Indenture, dated as of October 14, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date, the "Prepetition First Lien Notes Indenture," and, together with any other agreements and documents executed and delivered in connection therewith, including the Note Documents (as defined in the Prepetition First Lien Notes Indenture), the "Prepetition First Lien Notes Documents"), among Pyxus, the other Debtors party thereto (the "Prepetition First Lien Notes

Guarantors"), The Bank of New York Mellon Trust Company, N.A., as trustee (solely in such capacity, the "Prepetition First Lien Notes Trustee") and as notes collateral agent (solely in such capacity, the "Prepetition First Lien Notes Collateral Agent"), Pyxus issued 8.500% Senior Secured First Lien Notes due 2021 ("Prepetition First Lien Notes"; and the holders thereof, the "Prepetition First Lien Noteholders," and together with the Prepetition First Lien Notes Trustee, the Prepetition First Lien Notes Collateral Agent and The Bank of New York Mellon Trust Company, N.A. as registrar for the Prepetition First Lien Notes, the "Prepetition First Lien Notes Secured Parties");

(ii)     **Prepetition First Lien Notes Obligations:** Pursuant to the Prepetition First Lien Notes Indenture, Pyxus issued, and the Prepetition First Lien Notes Guarantors guaranteed $275.0 million in aggregate principal amount of Prepetition First Lien Notes. As of the Petition Date, Pyxus and the Prepetition First Lien Notes Guarantors were liable and indebted to the Prepetition First Lien Notes Collateral Agent and the Prepetition First Lien Noteholders, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $275.0 million, plus any other amounts due and payable under the Prepetition First Lien Notes Documents, including, without limitation, accrued and unpaid interest thereon, premiums (including redemption premiums), reimbursement obligations (contingent or otherwise), fees, costs, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith (including all Secured Obligations as defined in the Prepetition First Lien Notes Indenture), in each case, as and to the extent provided in the Prepetition First Lien Notes Documents (collectively, the "Prepetition First Lien Notes Obligations"); and

(iii)     **Prepetition First Lien Notes Liens:** To secure the Prepetition First Lien Notes Obligations, Pyxus and each of the Prepetition First Lien Notes Guarantors granted to the Prepetition First Lien Notes Collateral Agent, for the benefit of the Prepetition First Lien Notes Secured Parties, properly perfected continuing liens, mortgages on, and security interests (collectively, the "Prepetition First Lien Notes Liens") in all Collateral as defined in the Prepetition First Lien Notes Indenture (the "Prepetition First Lien Notes Collateral"). Prior to the Petition Date, the Prepetition First Lien Notes Secured Parties released their lien on all Purchased Receivables and/or Sold Receivables, together with any Related Security and Collections (in each case, as defined in the applicable prepetition receivables facilities arranged by Finacity Corporation and the Standard Bank of South Africa Limited (the "Prepetition Receivables Facilities")) sold pursuant to the Prepetition Receivables Facilities.  Such Purchased Receivables, Sold Receivables and Related Securities and Collections are referred to herein as the "Receivables Assets".

(b)     **Prepetition Second Lien Notes:**

(i)     **Prepetition Second Lien Notes Indenture:** Pursuant to that certain Indenture, dated as of August 1, 2013 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date, the "Prepetition Second

Lien Notes Indenture," and, together with any other agreements and documents executed or delivered in connection therewith, including the Note Documents (as defined in the Prepetition Second Lien Notes Indenture), the "Prepetition Second Lien Notes Documents"), among Pyxus, the other Debtors party thereto (the "Prepetition Second Lien Notes Guarantors"), Wilmington Trust, as successor trustee to Law Debenture Trust Company of New York (solely in such capacity, the "Prepetition Second Lien Notes Trustee") and as notes collateral agent (solely in such capacity, the "Prepetition Second Lien Notes Collateral Agent"), Pyxus issued 9.875% Senior Secured Second Lien Notes due 2021 (the "Prepetition Second Lien Notes"; and the holders thereof, the "Prepetition Second Lien Noteholders," and together with the Prepetition Second Lien Notes Trustee, the Prepetition Second Lien Notes Collateral Agent and Deutsche Bank Trust Company Americas as registrar for the Prepetition Second Lien Notes, the "Prepetition Second Lien Notes Secured Parties"; the Prepetition First Lien Notes Secured Parties together with the Prepetition Second Lien Notes Secured Parties, the "Prepetition Continuing Secured Parties");

(ii)    **Prepetition Second Lien Notes Obligations:** Pursuant to the Prepetition Second Lien Notes Indenture, Pyxus issued, and the Prepetition Second Lien Notes Guarantors guaranteed $635,700,000 in aggregate principal amount of Prepetition Second Lien Notes. As of the Petition Date, Pyxus and the Prepetition Second Lien Notes Guarantors were liable and indebted to the Prepetition Second Lien Notes Collateral Agent and the Prepetition Second Lien Noteholders, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $635,700,000 in Prepetition Second Lien Notes, plus any other amounts due and payable under the Prepetition Second Lien Notes Documents, including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith (including all Obligations as defined in the Prepetition Second Lien Notes Indenture), in each case, as and to the extent provided in the Prepetition Second Lien Notes Documents (collectively, the "Prepetition Second Lien Notes Obligations"); and

(iii)    **Prepetition Second Lien Notes Liens:** To secure the Prepetition Second Lien Notes Obligations, Pyxus and each of the Prepetition Second Lien Notes Guarantors granted to the Prepetition Second Lien Notes Collateral Agent, for the benefit of the Prepetition Second Lien Notes Secured Parties, properly perfected continuing liens, mortgages on and security interests (collectively, the "Prepetition Second Lien Notes Liens") in all Collateral as defined in the Prepetition Second Lien Notes Indenture (the "Prepetition Second Lien Notes Collateral"). The Prepetition Second Lien Notes Secured Parties released their lien on all Receivable Assets sold pursuant to the Prepetition Receivables Facilities prior to the Petition Date.

(c)    **Prepetition ABL Credit Facility:**

(i)      **Prepetition ABL Credit Agreement:** Pursuant to that certain Credit Agreement, dated as of October 14, 2016 (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement," and, together with any other agreements and documents executed or delivered in connection therewith, including the Credit Documents (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Credit Documents" and, together with the Prepetition First Lien Notes Documents and the Prepetition Second Lien Notes Documents, the "Prepetition Loan Documents"), among Pyxus, the other Debtors party thereto (the "Prepetition ABL Credit Facility Guarantors" and, together with the Prepetition First Lien Notes Guarantors and the Prepetition Second Lien Notes Guarantors, the "Prepetition Guarantors"), Deutsche Bank AG New York Branch, as administrative agent and collateral agent under the Prepetition ABL Credit Agreement (solely in such capacity, the "Prepetition ABL Credit Facility Agent," and together with the Prepetition First Lien Notes Trustee and the Prepetition Second Lien Notes Trustee, the "Prepetition Agents"), and the lenders party thereto (the "Prepetition ABL Credit Facility Lenders," and together with the Prepetition ABL Credit Facility Agent, any Lender Counterparties (as defined in the Prepetition ABL Credit Agreement) and each Issuing Lender (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Credit Facility Secured Parties," and together with the Prepetition First Lien Notes Secured Parties and the Prepetition Second Lien Notes Secured Parties, the "Prepetition Secured Parties"), the Prepetition ABL Credit Facility Lenders provided an asset-based revolving facility to Pyxus pursuant to the Prepetition ABL Credit Documents (the "Prepetition ABL Credit Facility"), and the Prepetition ABL Credit Facility Guarantors irrevocably and unconditionally guaranteed, on a joint and several basis, all of the Prepetition ABL Credit Facility Obligations;

(ii)      **Prepetition ABL Credit Facility Obligations:** As of the Petition Date, the Credit Parties (as defined in the Prepetition ABL Credit Agreement) were jointly and severally liable and indebted to the Prepetition ABL Credit Facility Agent and the Prepetition ABL Credit Facility Lenders, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $44,900,000, plus any other amounts due and payable under the Prepetition ABL Credit Documents, including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith (including all Credit Party Obligations as defined in the Prepetition ABL Credit Agreement), in each case, as and to the extent provided in the Prepetition ABL Credit Documents (collectively, the "Prepetition ABL Credit Facility Obligations," and together with the Prepetition First Lien Notes Obligations and the Prepetition Second Lien Notes Obligations, the "Prepetition Secured Obligations"); and

(iii)      **Prepetition ABL Credit Facility Liens:** To secure the Prepetition ABL Credit Facility Obligations, the DIP Borrower and each of the Prepetition ABL Credit Facility Guarantors granted to the Prepetition ABL Credit Facility Agent, for the benefit of the Prepetition ABL Credit Facility Secured Parties, properly perfected continuing liens,

mortgages on, and security interests (collectively, the "Prepetition ABL Credit Facility Liens," and together with the Prepetition First Lien Notes Liens and the Prepetition Second Lien Notes Liens, the "Prepetition Liens") in all Collateral as defined in the Prepetition ABL Credit Agreement (the "Prepetition ABL Credit Facility Collateral," and together with the Prepetition First Lien Notes Collateral and the Prepetition Second Lien Notes Collateral, the "Prepetition Collateral"). The Prepetition ABL Credit Facility Secured Parties released their lien on all Receivable Assets sold pursuant to the Prepetition Receivables Facilities prior to the Petition Date.

(d)     **Validity and Enforceability of Prepetition First Lien Notes Liens.** All of the Prepetition First Lien Notes Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are valid, binding, enforceable, non-avoidable, and perfected liens in the Prepetition First Lien Notes Collateral securing the Prepetition First Lien Notes Obligations, subject only to (i) pre-existing liens, solely to the extent such liens are permitted to be senior to the Prepetition First Lien Notes Liens as of the Petition Date under the Prepetition First Lien Notes Documents and such liens were existing, valid, enforceable, properly perfected, and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code against the DIP Borrower or the Prepetition First Lien Notes Guarantors, as applicable (the "Prepetition First Lien Notes Permitted Prior Liens") and (ii) the terms and conditions of the Prepetition Intercreditor Agreements (as defined below). The Prepetition First Lien Notes Liens are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, avoidance or other claim, cause of action, or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise. The Prepetition First Lien Notes Liens were granted to or for the benefit of the Prepetition First Lien Notes Secured Parties, for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations secured thereby.

(e)     **Validity and Enforceability of Prepetition Second Lien Notes Liens.** All of the Prepetition Second Lien Notes Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are valid, binding, enforceable, non-avoidable, and perfected liens in the Prepetition Second Lien Notes Collateral securing the Prepetition Second Lien Notes Obligations, subject only to (i) pre-existing liens, solely to the extent such liens are permitted to be senior to the Prepetition Second Lien Notes Liens as of the Petition Date under the Prepetition Second Lien Notes Documents and such liens were existing, valid, enforceable, properly perfected, and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code against the DIP Borrower or the Prepetition Second Lien Notes Guarantors, as applicable (the "Prepetition Second Lien Notes Permitted Prior Liens") and (ii) the terms and conditions of the Prepetition Intercreditor Agreements. The Prepetition Second Lien Notes Liens are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, disallowance, subordination, recharacterization, recoupment, avoidance or other claim, cause of action, or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise. The Prepetition Second Lien Notes Liens were granted to or for the benefit of

the Prepetition Second Lien Notes Secured Parties, for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations secured thereby.

(f)      **Validity and Enforceability of Prepetition ABL Credit Facility Liens.** All of the Prepetition ABL Credit Facility Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are valid, binding, enforceable, non-avoidable, and perfected liens in the Prepetition ABL Credit Facility Collateral securing the Prepetition ABL Credit Facility Obligations, subject only to (i) pre-existing liens, solely to the extent such liens are permitted to be senior to the Prepetition ABL Credit Facility Liens as of the Petition Date under the Prepetition ABL Credit Facility Documents and such liens were existing, valid, enforceable, properly perfected, and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code against the DIP Borrower or the Prepetition ABL Credit Facility Guarantors (the "Prepetition ABL Credit Facility Permitted Prior Liens") and (ii) the terms and conditions of the Prepetition Intercreditor Agreements. The Prepetition ABL Credit Facility Liens are not subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, avoidance or other claim, cause of action, or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise. The Prepetition ABL Credit Facility Liens were granted to or for the benefit of the Prepetition ABL Credit Facility Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations secured thereby.

(g)      **Relative Priority of the Prepetition Liens Under, and Enforceability of, the Prepetition Intercreditor Agreements.** The Prepetition ABL Credit Facility Agent and the Prepetition First Lien Notes Collateral Agent are party to, and Pyxus and certain Debtors have acknowledged, that certain Senior Lien Intercreditor Agreement (as amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date, the "Senior Lien Intercreditor Agreement"), dated as of October 14, 2016, which sets forth the relative lien priorities (including the lien priorities in respect of the First Lien Notes Priority Collateral, on the one hand, and the ABL Priority Collateral, on the other hand (each as defined in the Senior Lien Intercreditor Agreement)) and other rights and remedies of the Prepetition ABL Credit Facility Secured Parties and the Prepetition First Lien Notes Secured Parties with respect to, among other things, the Prepetition ABL Credit Facility Collateral and the Prepetition First Lien Notes Collateral. The Prepetition ABL Credit Facility Agent, the Prepetition First Lien Notes Collateral Agent and the Prepetition Second Lien Notes Collateral Agent are party to, and Pyxus and certain Debtors have acknowledged, that certain Intercreditor Agreement (as amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date, including pursuant to the joinder dated as of October 14, 2016, and together with the Senior Lien Intercreditor Agreement, the "Prepetition Intercreditor Agreements"), dated as of August 1, 2013, which sets forth the relative lien priorities and other rights and remedies of the Prepetition ABL Credit Facility Secured Parties, the Prepetition First Lien Notes

Secured Parties and the Prepetition Second Lien Notes Secured Parties with respect to, among other things, the Prepetition ABL Credit Facility Collateral, the Prepetition First Lien Notes Collateral and the Prepetition Second Lien Notes Collateral. The Prepetition Intercreditor Agreements are binding and enforceable against Pyxus, the other Debtors party thereto, and the other parties thereto in accordance with their terms. The parties to the Senior Lien Intercreditor Agreement stipulate, and the Court hereby finds, that any repayment of the Prepetition ABL Credit Facility Obligations pursuant to this Final Order shall not be deemed to constitute a "Discharge of ABL Obligations" (as defined in the Senior Lien Intercreditor Agreement).

(h)    **Validity and Enforceability of Prepetition Secured Obligations.** Each of the Prepetition First Lien Notes Obligations, the Prepetition Second Lien Notes Obligations, and the Prepetition ABL Credit Facility Obligations, respectively, constitutes the legal, valid, binding, enforceable, and non-avoidable obligations of Pyxus and the applicable Prepetition Guarantors that are party to the applicable debt arrangements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of any of the Prepetition Secured Obligations or any payment made to any of the Prepetition Secured Parties (or applied to or paid on account of any of the Prepetition Secured Obligations), as applicable, at any time is subject to any offset, contest, challenge, objection, defense, claim or counterclaim, subordination, recharacterization, disgorgement, avoidance or any other claim, cause of action, or challenge of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, except as otherwise contemplated herein.

(i)    **Value of Prepetition ABL Liens and Prepetition ABL Claims.** As of the date hereof, the aggregate value of the ABL Priority Collateral exceeds the aggregate amount of the Prepetition ABL Credit Facility Obligations.

(j)    **No Control.** None of the DIP Secured Parties nor the Prepetition Secured Parties control the DIP Debtor Loan Parties or their properties or operations, has authority to determine the manner in which any of the DIP Loan Parties' operations are conducted, or is a control person or insider of the DIP Debtor Loan Parties or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Final Order, the DIP Facility, the DIP Loan Documents, or the Prepetition Loan Documents.

(k)    **Release.** Effective as of the date of the entry of the Interim Order, the DIP Debtor Loan Parties, on behalf of themselves and their respective estates, forever and irrevocably released and forever discharged the Prepetition Secured Parties and the DIP Secured Parties (in each case, solely in their capacities as such) and each of their respective former, current, and future officers, directors, employees, shareholders, owners, members, managers, partners, subsidiaries, affiliates, funds or managed accounts, agents, advisors, attorneys, accountants, investment bankers, consultants, and other representatives, together with each of their predecessors and successors in interest (collectively, the "Releasees") from any and all claims, offsets, defenses, counterclaims, set off rights, objections, challenges, causes of action and/or choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement

26765387.2

obligations (including, attorneys' fees), costs, expenses, or judgments of every type, whether known or unknown, asserted or unasserted, fixed or contingent, pending or threatened, of any kind or nature whatsoever, whether arising at law or in equity (including, without limitation, any theory of so-called "lender liability" or equitable subordination or any claim or defense asserting recharacterization, subordination, or avoidance, any claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or any other provision of the Bankruptcy Code or of applicable state or federal law, or any other claim, cause of action, or defense arising under the Bankruptcy Code or applicable non-bankruptcy law), in each case, arising under, in connection with, or related to the DIP Debtor Loan Parties or their estates, the extent, amount, validity, enforceability, priority, security, and perfection of the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Loan Documents, the DIP Facility, the DIP Obligations, the DIP Liens, the DIP Loan Documents, and/or the transactions contemplated thereunder and/or hereunder, except as otherwise contemplated herein; *provided* that that the DIP Debtor Loan Parties do not release any such claims to the extent arising out of relationships or transactions between the DIP Debtor Loan Parties and any Releasees in any capacity other than their capacity as Prepetition Secured Parties or DIP Secured Parties, as the case may be.

(l)    **Cash Collateral.** All cash, whether existing as of the Petition Date or thereafter, wherever located (including, without limitation, all cash on deposit or maintained by the DIP Debtor Loan Parties in any account or accounts), of Pyxus and of each other Debtor that is a guarantor of any of the Prepetition Secured Obligations constitutes or will constitute "cash collateral" of the Prepetition Secured Parties and DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>"). The Cash Collateral does not include the Receivables Assets sold prior to the Petition Date pursuant to the Prepetition Receivables Facilities and will not include any Receivables Assets sold after the Petition Date pursuant to the amended Prepetition Receivables Facilities which shall be continued postpetition (the "<u>Postpetition Receivables Facilities</u>"), which Postpetition Receivables Facilities the Debtors were authorized to enter into by interim order of this court entered June 16, 2020 (the "<u>Receivables Facilities Interim Order</u>") and final order of this Court entered concurrently herewith (the "<u>Receivables Facilities Final Order</u>") (but the Cash Collateral shall include, for the avoidance of doubt, all proceeds received by the Debtors from the sales of such Receivables Assets).

F.    <u>**Findings Regarding Corporate Authority.**</u> Each of the DIP Debtor Loan Parties has all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

G.    <u>**Findings Regarding Postpetition Financing and Use of Cash Collateral**</u>.

(i)    **Good Cause**. Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the Debtors to obtain financing pursuant to the DIP Facility and the DIP Loan Documents and to use Cash Collateral as set forth herein.

(ii)    **Need for Postpetition Financing and Use of Cash Collateral**. The Debtors' need to use the Prepetition Collateral (including Cash Collateral) and to obtain credit pursuant to the DIP Facility as provided for herein is critical to the Debtors, their estates, their creditors, and other parties in interest. The Debtors need to obtain the DIP Loans and other financial accommodations and to continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other things: (i) permit the orderly continuation of the operation of their businesses, including by continuing to fund non-Debtor subsidiaries as set forth in more detail in the DIP Motion, including to make required payments under the Foreign Operating Lines (as defined in the DIP Motion); (ii) maintain business relationships with customers, vendors, and suppliers, including purchasing necessary materials and services to maintain compliance with all applicable regulatory and safety requirements; (iii) make payroll; (iv) satisfy other working capital, capital improvement, and operational needs; (v) pay professional fees, expenses, and obligations benefitting from the Carve Out; (vi) pay costs, fees, and expenses associated with or payable under the DIP Facility, subject to the terms of this Final Order and the DIP Loan Documents; (vii) make adequate protection payments as set forth herein; and (viii) repay in full in cash the Prepetition ABL Credit Facility Obligations. The Debtors' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the pendency of these Chapter 11 Cases. The access by the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral and the incurrence of new indebtedness under the DIP Loan Documents are necessary and vital to preserve and maintain the going concern values of the Debtors. The terms of the DIP Facility, pursuant to the DIP Loan Documents, and this Final Order are fair and reasonable, reflect each Debtor's exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

(iii)    **No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain financing and other financial accommodations from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility and the DIP Loan Documents. The Debtors have been unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also have been unable to obtain adequate credit for money borrowed (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code or (b) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien. Postpetition financing is not otherwise available without granting the DIP Agent, for the benefit of the respective DIP Secured Parties and subject to the Carve Out: (1) the DIP Liens on all DIP Collateral, as set forth herein, (2) the DIP Superiority Claims (as defined below), and (3) the other protections set forth in the DIP Orders. After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

(iv)    **Use of Proceeds of the DIP Facility and Cash Collateral.** As a condition to entry into the DIP Loan Documents, the extension of credit and other financial accommodations made under the DIP Facility and the consent to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), each of the DIP Secured

26765387.2

Parties require, and the Debtors have agreed, that Cash Collateral, the proceeds of the DIP Facility, and all other cash or funds of the Debtors, shall be used solely in accordance with the terms and conditions of this Final Order and the DIP Loan Documents, and only for the expenditures set forth in and consistent with the Approved DIP Budget (as defined below) (subject to Permitted Variances (as defined in the DIP Credit Agreement)), and for no other purpose.

(v)    **Adequate Protection.** The Debtors have agreed, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to provide the Prepetition Secured Parties adequate protection, as and to the extent set forth in this Final Order, for any diminution in the value of their respective interests in the Prepetition Collateral as provided for and allowed under the Bankruptcy Code and applicable case law interpreting the same (the "Diminution in Value"). Based on the DIP Motion, the declarations, or other evidence filed in support of the DIP Motion, and the record presented to the Court in connection with the Interim Hearing and the Final Hearing, if any, the terms of the adequate protection arrangements and of the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

(vi)    **Consent.** To the extent such consent is required, the Prepetition Continuing Secured Parties have consented to the Debtors' use of Prepetition Collateral (including Cash Collateral) and the DIP Loan Parties' entry into the DIP Facility and the DIP Loan Documents, in each case, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents. The entry into and performance of the DIP Credit Agreement and the other DIP Loan Documents is consistent with the Prepetition Intercreditor Agreements.

(vii)    **Limitation on Charging Expenses Against Collateral.** As set forth in paragraph 29 herein, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or any Prepetition Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Secured Parties or the Prepetition Secured Parties (in the case of the Prepetition ABL Credit Facility Secured Parties, prior to the Prepetition ABL Discharge), as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, as applicable, and nothing contained in this Final Order, the DIP Loan Documents or the Prepetition Loan Documents shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment, or claims against the DIP Collateral or any Prepetition Collateral, as applicable, under section 506(c) of the Bankruptcy Code or otherwise.

(viii)    **No Marshaling.** As set forth in paragraph 30 herein, in no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the

DIP Obligations, the Prepetition Collateral or the Prepetition Secured Obligations, as applicable. Further, as set forth in paragraph 31 herein, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties and Prepetition Collateral.

(ix)     **Business Judgment and Good Faith Pursuant to Section 364(e).** Based on the DIP Motion, the First Day Declarations, and the record presented to the Court at the Interim Hearing and the Final Hearing, if any, (i) the extension of credit and other financial accommodations made under the DIP Facility and the DIP Loan Documents, (ii) the terms of the DIP Facility, (iii) the fees and other amounts paid and to be paid thereunder, (iv) the terms of adequate protection granted to the Prepetition Secured Parties, (v) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral), (vi) the Cash Collateral arrangements described therein and herein and (vii) the use of proceeds of the DIP Facility, including to effect the Prepetition ABL Discharge and to continue funding of non-Debtor subsidiaries as set forth in more detail in the DIP Motion, including to make required payments under the Foreign Operating Lines, in each case, pursuant to this Final Order and the DIP Loan Documents, (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; (c) are supported by reasonably equivalent value and fair consideration; and (d) represent the best financing available. The DIP Facility and the use of Prepetition Collateral (including Cash Collateral) were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Continuing Secured Parties. The use of Prepetition Collateral (including Cash Collateral) and the credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Secured Parties and the Prepetition Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

(x)     **Good Faith of DIP Secured Parties.** The DIP Facility, the adequate protection granted to the Prepetition Continuing Secured Parties, and the use of Prepetition Collateral (including Cash Collateral) hereunder have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and their respective advisors, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility and the DIP Loan Documents, including, without limitation, all loans and other financial accommodations made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and any DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the claims, security interests and liens, and other rights, benefits, and protections granted to the DIP Secured Parties (and the successors and assigns thereof) pursuant to this Final Order and the DIP Loan Documents shall each be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(xi)    **Good Faith of Prepetition Secured Parties.** The Prepetition Continuing Secured Parties have acted in good faith regarding the DIP Facility and the Debtors' continued use of Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses (including the incurrence and payment of any adequate protection obligations and the granting of adequate protection liens), in accordance with the terms hereof, and the adequate protection claims, security interests and liens, and other rights, benefits and protections granted to the Prepetition Secured Parties (and their successors and assigns thereof) pursuant to this Final Order and the DIP Loan Documents shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(xii)    **Initial Budget.** The Debtors prepared and delivered to the DIP Secured Parties the initial itemized cash flow forecast set forth on Exhibit 2 to the Interim Order (the "Initial Budget"), which is in form and substance acceptable to the Required Consenting Financing Parties, setting forth all line-item and cumulative cash receipts and operating disbursements (including all necessary and required expenses which the Debtors expect to incur) on a weekly basis for the period beginning as of the week including the Closing Date (as defined in the DIP Credit Agreement) through and including the end of the thirteenth (13th) calendar week following such week. The DIP Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Initial Budget (as may be updated by the Debtors and approved by the DIP Secured Parties from time to time pursuant to and in accordance with the terms of the DIP Credit Agreement, the "Approved DIP Budget"), in accordance with the terms hereof and the DIP Loan Documents, in determining to enter into the postpetition financing arrangements provided for in the DIP Orders and to allow the Debtors to use Prepetition Collateral (including Cash Collateral) subject to the terms of this Final Order.

(xiii)    **Notice.** Notice of the Final Hearing requested in the DIP Motion has been provided by the Debtors, pursuant to section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and Local Rules 2002-1 and 4001-2, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including: (a) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: David L. Buchbinder, Esq. (david.l.buchbinder@usdoj.gov)); (b) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Sandeep Qusba (squsba@stblaw.com), Michael Torkin (michael.torkin@stblaw.com), and Nicholas Baker (nbaker@stblaw.com)), proposed co-counsel for the Debtors; (c) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan (pmorgan@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com)), proposed co-counsel for the Debtors; (d) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher Hansen, Esq. (khansen@stroock.com) and Jonathan Canfield, Esq. (jcanfield@stroock.com)) and Pachulski, Stang, Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and James E. O'Neill, Esq. (joneill@pszjlaw.com)), co-counsel to the Ad Hoc First Lien Group (as defined below); (e) Wachtell Lipton Rosen & Katz, 51 West 52nd Street, New York, New

York 10019 (Attn: Joshua Feltman (jafeltman@wlrk.com) and Benjamin Arfa (bsarfa@wlrk.com)) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801 (Attn: Derek C. Abbott (dabbott@mnat.com)), co-counsel to the Ad Hoc Crossholder Group (as defined below) and the DIP Agent; (f) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Scott Greissman (sgreissman@whitecase.com) and Andrew Zatz (azatz@whitecase.com)), counsel to the Prepetition ABL Credit Facility Agent; (g) counsel to any committee appointed in these Chapter 11 Cases; (h) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (i) the United States Attorney's Office for the District of Delaware; (j) the Receivables Facilities Parties (as defined in the Receivables Facilities Final Order); (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; and (m) any other party entitled to notice under Bankruptcy Rule 2002 (collectively, the "Notice Parties").

(xiv)    **Relief Essential; Best Interests of the Debtors' Estates.** Absent entry of this Final Order, the Debtors' businesses, properties, and estates will be irreparably harmed. The Court concludes that entry of this Final Order is in the best interests of the Debtors' estates, and is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their assets and properties.

**NOW THEREFORE,** based upon the foregoing findings and conclusions, the DIP Motion, the First Day Declarations, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    **DIP Motion Approved.** The DIP Motion is granted on a final basis, and the financing described herein is authorized and approved, in each case, in accordance with and subject to the terms and conditions of this Final Order. Any objections or other statements to any of the relief set forth in this Final Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Final Order, are hereby overruled.

2.    **Authorization of DIP Facility.**

(a)    Subject to the terms and conditions of this Final Order, each of the DIP Debtor Loan Parties were, by the Interim Order, and hereby are authorized to, and to

cause the DIP Non-Debtor Guarantors to, execute, enter into, guarantee (as applicable), and perform all obligations under the DIP Facility and the DIP Loan Documents. The DIP Loan Documents and this Final Order govern the financial and credit accommodations to be provided to the DIP Loan Parties by the DIP Lenders in connection with the DIP Facility.

(b)    The DIP Borrower is authorized to incur, and the DIP Debtor Guarantors are authorized to unconditionally guarantee, on a joint and several basis, all of the DIP Loan Parties' DIP Obligations on account of such incurrence under the DIP Facility, up to an aggregate principal amount of $206,700,000 in new money DIP Loans, inclusive of amounts authorized by the Interim Order, and in each case together with applicable interest, protective advances, expenses, fees, and other charges payable in connection with the DIP Facility, as applicable, in each case, subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents.

(c)    Subject to the terms and conditions of this Final Order, without limiting the foregoing, and without the need for further approval of the Court, each DIP Debtor Loan Party was by the Interim Order and hereby is authorized to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge and security agreements, deeds of trust, and financing statements), and to pay all fees or expenses, in each case that may be required, necessary, or desirable for the DIP Loan Parties to implement the terms of, perform their obligations under or effectuate the purposes of and transactions contemplated by this Final Order, the DIP Facility, and the DIP Loan Documents (as applicable) in accordance herewith and therewith, including, without limitation:

(1)    the execution and delivery of, and performance under, the DIP Loan Documents, including the fee letter with Cortland Capital Market Services LLC dated on or about the date hereof (the "Fee Letter"), and the syndication of the loans and commitments under the DIP Facility in accordance with the Syndication Procedures (as defined in the DIP Motion);

(2)    the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents (including amendments and supplements to effect the syndication of the DIP Facility), in each case, as the DIP Loan Parties and the requisite DIP Secured Parties (in accordance with and subject to the terms of the applicable DIP Loan Documents) may agree, it being understood that no further approval of the Court shall be required for non-material authorizations, amendments, waivers, consents, or other modifications to and under the DIP Loan Documents (and any fees and other expenses (including any attorneys', accountants', appraisers', and financial advisors' fees), amounts, charges, costs, indemnities, and other obligations paid in accordance and connection therewith);

(3)    the non-refundable and irrevocable payment of any and all fees, costs, and expenses, whether paid pursuant to the Interim Order or this Final Order, payable pursuant to the DIP Loan Documents, including, without limitation, (a) any fees payable as original issue discount, closing fees, upfront fee, exit fee, prepayment fee, unused line fees, ticking fees, arrangement fees, structuring fees, duration fees, commitment fees, backstop fees, conversion fees, servicing fees, audit fees, appraisal fees, servicing fees, liquidator fees, agency fees, prepayment premiums, or similar amounts (which fees, in each case, were approved upon entry of the Interim Order, and which fees shall not be subject to any challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Loan Documents and (in the case of indemnification obligations) in accordance with Section 9.05 of the DIP Credit Agreement, (b) any fees and expenses agreed to in the Fee Letter, as more fully set forth in the DIP Motion, and (c) the reasonable and documented invoiced out-of-pocket fees, costs, and expenses as may be due from time to time of the DIP Agent, the DIP Lenders or the Financing Commitment Parties in accordance with Section 9.05 of the DIP Credit Agreement, including, without limitation, the reasonable and documented fees and expenses of (A) the following professionals (whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated): (i) Wachtell, Lipton, Rosen & Katz, (ii) TRS Advisors LLC, (iii) Morris Nichols Arsht & Tunnell LLP, and (iv) one local counsel in each applicable jurisdiction and one conflicts counsel, each as reasonably necessary, and (B) the DIP Agent and its professionals (collectively, each of the fees and expenses described in the foregoing clauses, the "DIP Fees and Expenses"), in each case, without the need to file retention or fee applications, and without the need to

provide notice to any party or obtain further Court approval; *provided* that the DIP Fees and Expenses incurred after the Closing Date by professionals for the DIP Agent or DIP Lenders shall be subject to the review process set forth in paragraph 23;

(4)     subject to the Carve Out, the DIP Debtor Loan Parties' granting of the DIP Liens and the Adequate Protection Liens (as defined below), the perfection of the DIP Liens and the Adequate Protection Liens, the DIP Debtor Loan Parties' granting of the DIP Superpriority Claims and the Adequate Protection Claims (as defined below), and the DIP Debtor Loan Parties' granting of the DIP Protections, in each case, as set forth herein and in the DIP Loan Documents; and

(5)     the DIP Debtor Loan Parties' performance of all other acts necessary, required, or desirable to implement the DIP Facility and to facilitate the transactions contemplated by the DIP Loan Documents and this Final Order.

(d)     No DIP Secured Party shall have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and each DIP Secured Party may rely upon each DIP Debtor Loan Party's representations that the amount of the DIP Facility requested at any time and the use thereof are in accordance with the requirements of this Final Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).

3.     **DIP Obligations.** Subject to the terms and conditions of this Final Order and upon entry of the Interim Order and execution and delivery of the DIP Loan Documents, the DIP Loan Documents constituted valid, binding, enforceable, and non-avoidable obligations of each of the DIP Debtor Loan Parties, and are fully enforceable against each of the DIP Debtor Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "Successor Cases"), and their creditors and other parties in interest, in each case, in accordance with the terms thereof and the DIP Orders, as

applicable. Upon execution and delivery of the DIP Loan Documents, the DIP Obligations included all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by any of the DIP Loan Parties to any of the DIP Agent or DIP Lenders, in each case, under, or secured by, the DIP Loan Documents or this Final Order, including all principal, interest, costs, fees, expenses, and other amounts under the DIP Loan Documents (including this Final Order). As of the entry of the Interim Order, the DIP Debtor Loan Parties are jointly and severally liable for the DIP Obligations. Subject to paragraph 22 of this Final Order and after the expiration of the Remedies Notice Period (as defined herein), the DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease during the continuation of a DIP Termination Event (as defined herein) or the occurrence and continuance of any event or condition set forth in paragraph 21 of this Final Order. Other than with respect to the Prepetition ABL Discharge (and in such case, solely with respect to a successful Challenge, if any, in accordance with paragraph 28 hereof), no obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Final Order to the DIP Secured Parties shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law.

26765387.2

4.      **No Obligation to Extend Credit.** The DIP Secured Parties shall have no obligation to make any loan or advance under the applicable DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit by the applicable DIP Secured Parties under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived in accordance with the terms of the DIP Loan Documents.

5.      **DIP Liens**.

(a)      As security for the DIP Obligations, effective immediately upon the date of the Interim Order and closing of the DIP Facility, and subject and subordinate to the Carve Out, as set forth more fully in this Final Order, the DIP Agent, for the benefit of the DIP Secured Parties, were by the Interim Order and are hereby granted (without the necessity of the execution by the DIP Debtor Loan Parties or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise by the DIP Agent or the DIP Lenders) valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (the "Priming DIP Liens," the "Senior DIP Liens," or the "Junior DIP Liens," as applicable, and collectively, the "DIP Liens") in the DIP Collateral, as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all DIP Obligations, which DIP Liens shall have the following relative rank and priority, as further set forth on **Exhibit 1** attached hereto:

(1)      *Priming DIP Liens*. Pursuant to Section 364(d) of the Bankruptcy Code, a valid, binding, enforceable, fully perfected, first priority senior priming security interest in and lien upon all of the DIP Borrower's and each Prepetition ABL Credit Facility Guarantor's right, title, and interest in, to, and under any tangible and intangible, real and personal prepetition and postpetition property of each such DIP Debtor Loan Party constituting (a) ABL Priority Collateral (as defined in the Senior Lien Intercreditor Agreement) (but not with respect to the ABL Contingent Liens), and/or (b) to the limited extent set forth

26765387.2

herein with respect to the Prepetition Second Lien Notes Liens (but not with respect to the Prepetition First Lien Note Liens), First Lien Notes Priority Collateral (as defined in the Senior Lien Intercreditor Agreement), whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, to the extent such property is subject to the Prepetition Liens securing the Prepetition Secured Obligations (collectively, other than Excluded Assets (as defined in the DIP Loan Documents), the "<u>DIP Priming Collateral</u>"), subject and subordinate only to (i) the Carve Out, (ii) liens on the DIP Priming Collateral existing as of the Petition Date (other than Prepetition Liens), solely to the extent such liens were existing, valid, enforceable, properly perfected and non-avoidable liens on the DIP Priming Collateral as of the Petition Date (the "<u>Permitted Prior DIP Priming Liens</u>"), (iii) solely with respect to First Lien Notes Priority Collateral of the DIP Borrower and the Prepetition First Lien Notes Guarantors and not with respect to ABL Priority Collateral, the Prepetition First Lien Notes Liens, (iv) solely with respect to the ABL Priority Collateral of the DIP Borrower and the Prepetition ABL Credit Facility Guarantors and not with respect to First Lien Notes Priority Collateral, the ABL Contingent Liens and (v) Permitted Liens (as defined in the DIP Credit Agreement) incurred after the Petition Date, solely to the extent such liens are senior by operation of law or are expressly permitted to be senior to the respective Priming DIP Liens under the DIP Loan Documents;

(2)     *Senior DIP Liens*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, fully perfected first priority senior security interest in and lien upon all of the DIP Debtor Loan Parties' right, title, and interest in, to, and under (x) the DIP Proceeds Account (as defined in the DIP Credit Agreement) or any other account that holds the proceeds of any Loans (as defined in the DIP Credit Agreement) pursuant to the DIP Credit Agreement, and the proceeds, products, rents and profits thereof, (y) the proceeds of Claims and Causes of Action[4] under chapter 5 of the Bankruptcy Code, whether pursuant to federal

---

[4]     As used in this Final Order, "<u>Causes of Action</u>" means any action, Claim (as defined in the Bankruptcy Code), cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, and license of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Closing Date, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction law, violation of local, state, or federal or non-U.S. law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any Claim pursuant to Section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of title 11 of the United States Code; (e) any state or foreign law pertaining to actual or constructive fraudulent transfer, fraudulent and (f) any "lender liability" or equitable subordination claims or defenses.

law or applicable state law, of the DIP Debtor Loan Parties or their estates (collectively, the "<u>Avoidance Actions</u>"), and (z) any other unencumbered tangible and intangible, real (including leaseholds) and personal prepetition and postpetition property of each DIP Debtor Loan Party, whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (all of the foregoing, other than Excluded Assets, collectively, the "<u>DIP Priority Collateral</u>"), in each case, subject and subordinate only to (i) the Carve Out, and (ii) Permitted Liens incurred after the Petition Date, solely to the extent such liens are senior by operation of law or are expressly permitted to be senior to the respective Senior DIP Liens under the DIP Loan Documents; and

(3)  *Junior DIP Liens.* Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, enforceable, fully perfected junior security interest in and lien upon all of the DIP Debtor Loan Parties' right, title, and interest in, to, and under any tangible and intangible, real and personal prepetition and postpetition property of each DIP Debtor Loan Party (other than (x) any DIP Priming Collateral (A) that constitutes ABL Priority Collateral (except with respect to the ABL Contingent Liens) and (B) that constitutes First Lien Notes Priority Collateral, to the limited extent set forth herein with respect to the Prepetition Second Lien Notes Liens (but not with respect to the Prepetition First Lien Note Liens) and (y) the DIP Priority Collateral), whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, to the extent such property is subject to an existing, valid, enforceable, properly perfected and non-avoidable lien as of the Petition Date (all of the foregoing, other than Excluded Assets, collectively, the "<u>DIP Junior Collateral</u>" and, together with the DIP Priming Collateral and the DIP Priority Collateral, the "<u>DIP Collateral</u>"), subject and subordinate only to (i) the Carve Out, (ii) Prepetition First Lien Notes Liens on such property constituting First Lien Notes Priority Collateral, (iii) the ABL Contingent Liens, solely with respect to the ABL Priority Collateral of the DIP Borrower and the Prepetition ABL Credit Facility Guarantors, (iv) other pre-existing liens on such property (other than Prepetition Liens), solely to the extent such liens were existing, valid, enforceable, properly perfected and non-avoidable liens on such property as of the Petition Date (the "<u>Permitted Prior DIP Junior Collateral Liens</u>") and (v) Permitted Liens incurred following the Petition Date, solely to the extent such liens are expressly permitted to be senior to the DIP Liens under the DIP Loan Documents.

(b)    For the avoidance of doubt, the Priming DIP Lien shall rank (A) (1)

junior to the Prepetition First Lien Notes Liens on First Lien Notes Priority Collateral and

shall to such extent constitute a junior lien and (2) senior to the Prepetition Second Lien

Notes Liens on First Lien Notes Priority Collateral and shall to such extent constitute

Priming DIP Liens and (B) (1) junior to the ABL Contingent Liens on ABL Priority Collateral and shall to such extent constitute a junior lien and (2) senior to the Prepetition First Lien Notes Liens and Prepetition Second Lien Notes Liens on ABL Priority Collateral and shall to such extent constitute Priming DIP Liens.

(c)     For the avoidance of doubt, the term "DIP Collateral" shall include all assets and properties of each of the DIP Debtor Loan Parties of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, any of the DIP Debtor Loan Parties, whether prior to or after the Petition Date, whether owned or consigned by or to, or leased from or to (in each case, only to the extent of the Debtors' interests therein), the DIP Debtor Loan Parties, and wherever located, including, without limitation, each of the DIP Debtor Loan Parties' rights, title and interests in (i) all Prepetition Collateral, (ii) all "DIP Collateral" (as defined in the DIP Loan Documents) of the DIP Debtor Loan Parties, and (iii) all proceeds, products, offspring, and profits of each of the foregoing and all accessions to, substitutions, and replacements for, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to any DIP Debtor Loan Party from time to time with respect to any of the foregoing; *provided*, *however*, that DIP Collateral shall not include (i) any Excluded Assets (as defined in the DIP Loan Documents) of the DIP Debtor Loan Parties (but shall, for the avoidance of doubt, include any proceeds of such Excluded Assets) and (ii) any Avoidance Actions (but shall, for the avoidance of doubt, include any proceeds of any Avoidance Actions).

(d)     Notwithstanding anything contained herein or in any of the DIP Loan Documents to the contrary ((x) in the case of the Senior DIP Liens, subject only to

the Carve Out, (y) in the case of the Priming DIP Liens, subject only to (i) the Carve Out, (ii) the Permitted Prior DIP Priming Liens, (iii) solely with respect to First Lien Notes Priority Collateral of the DIP Borrower and the Prepetition First Lien Notes Guarantors, the Prepetition First Lien Notes Liens, and (iv) solely with respect to the ABL Priority Collateral of the DIP Borrower and the Prepetition ABL Credit Facility Guarantors, the ABL Contingent Liens, and (z) in the case of the Junior DIP Liens, subject only to (i) the Carve Out, (ii) the Prepetition First Lien Notes Liens and the First Lien Notes Adequate Protection Liens, in each case on the First Lien Notes Priority Collateral, (iii) the Permitted Prior DIP Junior Collateral Liens, and (iv) the ABL Contingent Liens on the ABL Priority Collateral), the DIP Liens (i) shall not be made subject to or *pari passu* with (A) any lien or security interest heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against the DIP Debtor Loan Parties, their estates, any trustee, or any other estate representative appointed or elected in the Chapter 11 Cases, or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the DIP Debtor Loan Parties and their estates under section 551 of the Bankruptcy Code or otherwise, or (C) any intercompany or affiliate lien, and (ii) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code.

(e)     Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent, or the payment of any fees or obligations to, any governmental entity or non-governmental entity in order for the DIP Debtor Loan Parties to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold

interest in any property or the proceeds thereof, is and shall hereby be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the DIP Liens or Adequate Protection Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any DIP Debtor Loan Parties, in favor of the DIP Secured Parties or the Prepetition Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order provided that nothing in this Paragraph constitutes a limitation on any obligation to pay a stamp or similar tax pursuant to Section 1146(a) of the Bankruptcy Code.

(f)     The DIP Liens in the Receivables Assets sold from time to time after the Petition Date pursuant to the Postpetition Receivables Facilities in accordance with the terms thereof shall automatically be released and terminated upon the consummation of each such sale (regardless of whether such sale is subsequently recharacterized).

6.     **DIP Superpriority Claims.** Effective immediately as of entry of the Interim Order, the DIP Agent (on behalf of the DIP Secured Parties) was granted, pursuant to section 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the DIP Debtor Loan Parties' Chapter 11 Cases and any Successor Cases thereof on account of the DIP Obligations, with priority over any and all administrative expenses of the kind that are specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113, 1114, or any other provisions of the Bankruptcy Code and any other claims against the DIP Debtor Loan Parties (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy

26765387.2

27

Code. The DIP Superpriority Claims shall have recourse against each of the DIP Debtor Loan Parties, on a joint and several basis. Notwithstanding anything contained herein or in any of the DIP Loan Documents to the contrary, the DIP Superpriority Claims shall, at all times be (v) with respect to recovery from the First Lien Notes Priority Collateral, junior to the Prepetition First Lien Notes Claims and the First Lien Notes Adequate Protection Claims; (w) with respect to recovery from ABL Priority Collateral, junior to the ABL Contingent Claims; (x) subject to (i) the Carve Out, and (ii) any Liens on the DIP Collateral; (y) *pari passu* with the superpriority claim granted pursuant to the Receivables Facilities Interim Order or the Receivables Facilities Final Order (without waiver of any rights in respect of the DIP Liens); and (z) senior to any and all other administrative expense claims or other claims against the DIP Debtor Loan Parties or their estates, in the Chapter 11 Cases and any Successor Cases.

7.    **Use of Proceeds of the DIP Facility and Cash Collateral.** The use of Prepetition Collateral (including Cash Collateral) was, by the Interim Order, and hereby is authorized and approved on a final basis, in each case, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents. From and after the Closing Date (a) so long as no DIP Termination Event (as defined below) has occurred and is continuing, the DIP Debtor Loan Parties shall be authorized to use Prepetition Collateral (including Cash Collateral that is not Notes Priority Cash Collateral (as defined below)), (b), so long as no Notes Priority Cash Collateral Termination Event has occurred and is continuing, the DIP Debtor Loan Parties shall be authorized to use Notes Priority Cash Collateral and (c), so long as no DIP Termination Event has occurred and is continuing, the DIP Debtor Loan Parties shall be permitted to draw upon DIP Facility and

the proceeds thereof, subject, in each case, to the terms and conditions of this Final Order and the DIP Loan Documents, in accordance with the terms of the Approved DIP Budget (subject to Permitted Variances), including, without limitation: (i) to pay amounts due to DIP Secured Parties under the DIP Loan Documents and professional fees and expenses (including legal, financial advisor, appraisal, and valuation-related fees and expenses) incurred by the DIP Secured Parties, including those incurred in connection with the preparation, negotiation, documentation, and court approval of the transactions contemplated by the DIP Loan Documents; (ii) the payment of any adequate protection payments approved by the Bankruptcy Court; (iii) to fund the Carve Out; (iv) to effect the Prepetition ABL Discharge; and (v) to provide working capital, for other general corporate purposes of the DIP Debtor Loan Parties and their subsidiaries, including the funding of non-Debtor subsidiaries as set forth in more detail in the DIP Motion, including to make required payments under the Foreign Operating Lines and to pay administration costs of the Chapter 11 Cases and claims or amounts approved by the Bankruptcy Court, including in the First Day Orders (as defined in the DIP Credit Agreement) and any "second day" orders or as required under the Bankruptcy Code. For the avoidance of doubt, none of the DIP Debtor Loan Parties will use any DIP Loans, the proceeds of the DIP Facility or DIP Collateral (including Cash Collateral) in a manner or for a purpose other than those consistent with the Approved DIP Budget, the DIP Loan Documents, and this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any DIP Collateral (including Cash Collateral) or other proceeds resulting therefrom, except as expressly permitted in this Final Order, the DIP Loan Documents, and the Approved DIP

Budget. All collections and proceeds of the Debtors, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents.

8.      **Disposition of DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) other than in the ordinary course of business without the prior written consent of the DIP Lenders (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders), except as otherwise permitted in the DIP Loan Documents.

9.      **Payment of the Prepetition ABL Credit Facility Obligations.** The Debtors were authorized and directed pursuant to the Interim Order to (x) execute a customary payoff letter by and among the DIP Borrower, the Prepetition ABL Credit Facility Agent and the other parties thereto in connection with the Prepetition ABL Discharge (in form and substance reasonably satisfactory to the Required Financing Commitment Parties and the Prepetition ABL Credit Facility Agent) (the "Prepetition ABL Payoff Letter") and perform the transactions and undertakings set forth therein, which were by Interim Order and hereby are approved in all respects, and (y) use proceeds of the DIP Facility and Cash Collateral to, upon the closing of the DIP Facility, effect the Prepetition ABL Discharge. On June 17, 2020, the Prepetition ABL Payoff Letter was executed and the related payment was made to the Prepetition ABL Facility Agent. The Prepetition ABL Credit Facility Liens shall be automatically released and terminated upon the Prepetition

ABL Discharge, subject to paragraph 28 hereof and the terms of the Prepetition ABL Payoff Letter.

10.    **Adequate Protection**.

(a)    **Adequate Protection for Prepetition First Lien Notes Secured Parties.** Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Debtors granted upon entry of the Interim Order to the Prepetition First Lien Notes Secured Parties adequate protection of their interests in all Prepetition First Lien Notes Collateral against any Diminution in Value of the Prepetition First Lien Notes Secured Parties' interests in the Prepetition First Lien Notes Collateral, from and after the Petition Date:

(i)    **Adequate Protection Lien.** The Prepetition First Lien Notes Collateral Agent, on behalf of the Prepetition First Lien Notes Secured Parties, was granted upon the entry of the Interim Order, a valid, binding, enforceable, and automatically perfected postpetition lien on all DIP Collateral to the extent of any Diminution in Value of the Prepetition First Lien Notes Secured Parties' interests in its Prepetition First Lien Notes Collateral (the "First Lien Notes Adequate Protection Liens"), which First Lien Notes Adequate Protection Liens shall be (x) subject to the Prepetition Intercreditor Agreements as if such DIP Collateral had been Prepetition Collateral as of the Petition Date and (y) subject and subordinate to (I) the Carve Out, (II) Prepetition First Lien Notes Permitted Prior Liens, (III) ABL Contingent Liens (as defined below) but solely as to the DIP Priming Collateral other than First Lien Notes Priority Collateral and (IV) DIP Liens, but not with respect to DIP Liens over First Lien Notes Priority Collateral.

(ii)    **Adequate Protection Claim.** The Prepetition First Lien Notes Collateral Agent, on behalf of the Prepetition First Lien Notes Secured Parties, was granted upon the entry of the Interim Order an allowed superpriority administrative expense claim, to the extent of any Diminution in Value of the Prepetition First Lien Notes Secured Parties' interests in the Prepetition First Lien Notes Collateral, as provided for in section 507(b) of the Bankruptcy Code (the "First Lien Notes Adequate Protection Claims"), against each of the DIP Debtor Loan Parties on a joint and several basis, which shall be (A) subject and subordinate to the Carve Out, (B) junior to the DIP Superpriority Claims and the superpriority claims granted pursuant to the Receivables Facilities Interim Order or the Receivables Facilities Final Order, except as set forth in paragraph 6 above, (C) junior to the ABL Contingent Claims, but solely with respect to ABL Priority Collateral, and (D) otherwise senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code. Except to the extent expressly set forth in the DIP Orders or the DIP Loan Documents, the

Prepetition First Lien Notes Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the First Lien Notes Adequate Protection Claims from the DIP Collateral unless and until the Carve Out and any claims having a priority superior to the First Lien Notes Adequate Protection Claims have indefeasibly been paid in cash in full and all commitments to extend credit under the DIP Facility have been terminated.

(b)     **Additional Adequate Protection for Prepetition First Lien Notes Secured Parties.** As additional adequate protection of the Prepetition First Lien Notes Secured Parties' security interests in the Prepetition First Lien Notes Collateral, the Debtors were, by the Interim Order, and hereby are authorized to provide adequate protection in the form of the following:

(i)     **Interest Payments**. The DIP Debtor Loan Parties shall pay to the Prepetition First Lien Notes Trustee, on behalf of the Prepetition First Lien Notes Secured Parties, all accrued but unpaid interest on the Prepetition First Lien Notes Obligations under the Prepetition First Lien Notes Indenture as such interest becomes due and payable at the applicable non-default rate thereunder and in the amounts specified in the Prepetition First Lien Notes Indenture as if the Petition Date had not occurred.

(ii)     **Fees and Expenses.** The DIP Debtor Loan Parties shall pay all prepetition and postpetition reasonable and documented invoiced out-of-pocket fees, costs, and expenses of (A) the following professionals for the ad hoc committee of Prepetition First Lien Notes Secured Parties (the "Ad Hoc First Lien Group") in connection with the Chapter 11 Cases: (i) Stroock & Stroock & Lavan LLP, as counsel, (ii) Pachulski, Stang, Ziehl & Jones LLP, as Delaware counsel, and (iii) Perella Weinberg Partners, as financial advisor (collectively, the "Ad Hoc Committee Advisors"), in the case of clause (iii) only to the extent agreed to in a writing signed by the Debtors and the financial advisor prior to the date hereof, and (B) one counsel to the Prepetition First Lien Notes Trustee and the Prepetition First Lien Notes Collateral Agent, in each case, subject to the review procedures set forth in paragraph 12 of this Final Order.

(iii)     **Financial Reporting.** The DIP Debtor Loan Parties shall provide the Ad Hoc Committee Advisors, on behalf of the Ad Hoc First Lien Group, with (A) copies of the DIP Reporting (as defined below) promptly after providing the same to the DIP Secured Parties, if provided, and (B) a copy of the Approved DIP Budget, promptly after the same is approved by the DIP Secured Parties, in each case, in accordance with paragraph 14 hereof and subject to the confidentiality restrictions set forth in the DIP Credit Agreement; provided, that, for the avoidance of doubt such restrictions do not prohibit the information described in this paragraph from being provided to the Ad Hoc Committee Advisors.

(c)    **Adequate Protection for Prepetition Second Lien Notes Secured Parties.** Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Debtors granted upon entry of the Interim Order (and hereto, confirm) the Prepetition Second Lien Notes Secured Parties adequate protection of their interests in all Prepetition Second Lien Notes Collateral, against any Diminution in Value of the Prepetition Second Lien Notes Secured Parties' interests in the Prepetition Second Lien Notes Collateral, from and after the Petition Date:

(i)    **Adequate Protection Lien.** The Prepetition Second Lien Notes Collateral Agent, on behalf of the Prepetition Second Lien Notes Secured Parties, was granted upon entry of the Interim Order a valid, binding, enforceable, and automatically perfected postpetition lien on all DIP Collateral to the extent of any Diminution in Value of the Prepetition Second Lien Notes Secured Parties' interests in its Prepetition Second Lien Notes Collateral (the "Second Lien Notes Adequate Protection Liens"), which Second Lien Notes Adequate Protection Liens shall be (x) subject to the Prepetition Intercreditor Agreements as if such DIP Collateral had been Prepetition Collateral as of the Petition Date and (y) subject and subordinate to the Carve Out, Prepetition Second Lien Notes Permitted Prior Liens, First Lien Notes Adequate Protection Liens, ABL Contingent Liens and DIP Liens.

(ii)    **Adequate Protection Claim.** The Prepetition Second Lien Notes Collateral Agent, on behalf of the Prepetition Second Lien Notes Secured Parties, was granted upon entry of the Interim Order an allowed superpriority administrative expense claim, to the extent of any Diminution in Value of the Prepetition Second Lien Notes Secured Parties' interests in the Prepetition Second Lien Notes Collateral, as provided for in section 507(b) of the Bankruptcy Code (the "Second Lien Notes Adequate Protection Claims"), against each of the DIP Debtor Loan Parties on a joint and several basis, which shall be (A) subject and subordinate to the Carve Out, (B) junior to the DIP Superpriority Claims and the superpriority claims granted pursuant to the Receivables Facilities Interim Order or the Receivables Facilities Final Order, (C) subject to any Lien on such DIP Collateral, (D) junior to the First Lien Notes Adequate Protection Claims and ABL Contingent Claims, and (E) otherwise senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code. Except to the extent expressly set forth in the DIP Orders or the DIP Loan Documents, the Prepetition Second Lien Notes Secured Parties, shall not receive or retain any payments, property or other amounts in respect of the Second Lien Notes Adequate Protection Claims from the DIP Collateral unless and until the Carve Out and any claims having a priority superior to the Second Lien Notes Adequate Protection

Claims have indefeasibly been paid in cash in full and all commitments to extend credit under the DIP Facility have been terminated.

(d)     **Additional Adequate Protection for Prepetition Second Lien Notes Secured Parties.** As additional adequate protection of the Prepetition Second Lien Notes Secured Parties' security interests in the Prepetition Second Lien Notes Collateral, the Debtors were, by Interim Order, as applicable, and hereby are authorized to provide adequate protection in the form of the following:

(i)     **Fees and Expenses.** The DIP Debtor Loan Parties shall pay all reasonable and documented invoiced out-of-pocket fees, costs, and expenses of Wachtell, Lipton, Rosen & Katz, Morris Nichols Arsht & Tunnell LLP and TRS Advisors LLC, and shall advance any fees, costs and expenses of Spencer Stuart, in each case as advisors to an ad hoc committee of Prepetition Second Lien Notes Secured Parties and Prepetition First Lien Notes Secured Parties (the "Ad Hoc Crossholder Group") in connection with the Chapter 11 Cases, as well as the out of pocket fees, costs and expenses of the Prepetition Second Lien Notes Trustee and the Prepetition Second Lien Notes Collateral Agent, subject to the review procedures set forth in paragraph 12 of this Final Order.

(ii)     **Financial Reporting.** The DIP Debtor Loan Parties shall provide Wachtell, Lipton, Rosen & Katz and TRS Advisors LLC, on behalf of the Ad Hoc Crossholder Group, with (I) copies of the DIP Reporting (as defined below) promptly after providing the same to the DIP Secured Parties, if provided, and (II) a copy of Approved DIP Budget, promptly after the same is approved by the DIP Secured Parties, in each case, in accordance with paragraph 14 hereof.

(e)     **Adequate Protection for Prepetition ABL Credit Facility Secured Parties.** Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Debtors granted upon entry of the Interim Order (and hereto, confirm) the Prepetition ABL Credit Facility Secured Parties adequate protection of their interests in all Prepetition ABL Credit Facility Collateral, including Cash Collateral, in the form of the following:

(i)     **Contingent Lien**. The Prepetition ABL Credit Facility Agent, on behalf of the Prepetition ABL Credit Facility Secured Parties, was granted upon entry of the Interim Order a valid, binding, enforceable, and automatically perfected postpetition lien on all DIP Collateral (the "ABL Contingent Liens" and, together with the First Lien Notes Adequate Protection Liens and Second Lien Notes Adequate Protection Liens, the "Adequate Protection Liens") to the extent (i) any

unpaid portion of any Prepetition ABL Credit Facility Obligations (including, without limitation, any indemnity claims arising hereafter and any Prepetition ABL Credit Facility Obligations subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid to the DIP Debtor Loan Parties or the Prepetition ABL Credit Facility Secured Parties and the liens securing the Prepetition ABL Credit Facility Obligations shall not have been avoided) and (ii) of any Diminution in Value of the Prepetition ABL Credit Facility Secured Parties' interests in the Prepetition ABL Credit Facility Collateral (including Cash Collateral) from and after the Petition Date, which ABL Contingent Liens shall be (x) subject to the Prepetition Intercreditor Agreements and (y) subject and subordinate to the (I) the Carve Out, (II) Prepetition ABL Credit Facility Permitted Prior Liens, (III) First Lien Notes Adequate Protection Liens but solely as to First Lien Notes Priority Collateral, (IV) Prepetition First Lien Notes Liens but solely as to the First Lien Notes Priority Collateral and (V) DIP Liens, except with respect to ABL Priority Collateral.

(ii)     **Contingent Claim.** The Prepetition ABL Credit Facility Agent, on behalf of the Prepetition ABL Credit Facility Secured Parties, was granted upon entry of the Interim Order an allowed superpriority administrative expense claim, as provided for in section 507(b) of the Bankruptcy Code, to the extent (i) any unpaid portion of any Prepetition ABL Credit Facility Obligations (including, without limitation, any indemnity claims arising hereafter and any Prepetition ABL Credit Facility Obligations subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid to the DIP Debtor Loan Parties or the Prepetition ABL Credit Facility Secured Parties and the liens securing the Prepetition ABL Credit Facility Obligations shall not have been avoided) and (ii) of any Diminution in Value of the Prepetition ABL Credit Facility Secured Parties' interests in the Prepetition ABL Credit Facility Collateral (including Cash Collateral) from and after the Petition Date (the "ABL Contingent Claims" and, together with the First Lien Notes Adequate Protection Claims and Second Lien Notes Adequate Protection Claims, the "Adequate Protection Claims"), against each of the DIP Debtor Loan Parties on a joint and several basis, which shall be (A) subject and subordinate to the Carve Out, (B) junior to the DIP Superpriority Claims (except with respect to recovery from ABL Priority Collateral as set forth in paragraph 6 above) and the superpriority claims granted pursuant to the Receivables Facilities Interim Order or the Receivables Facilities Final Order, (C) subject to any Liens on the DIP Collateral, (D) junior to the First Lien Notes Adequate Protection Claims, but solely with respect to the First Lien Notes Priority Collateral and (E) otherwise senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code. Except to the extent expressly set forth in the DIP Orders, or the DIP Loan Documents, the Prepetition ABL Credit Facility Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the ABL Contingent Claim from the DIP Collateral (other than ABL Priority Collateral) unless and until the Carve Out and any claims having a priority superior to the ABL Contingent Claims have indefeasibly been paid in cash in full and all commitments to extend credit under the DIP Facility have been terminated.

(iii)    **Fees and Expenses.** The DIP Debtor Loan Parties shall pay all prepetition and postpetition reasonable and documented fees, costs and out-of-pocket expenses of (i) White & Case LLP, counsel to the Prepetition ABL Credit Facility Agent, in connection with the Chapter 11 Cases (including, without limitation, in connection with defending any Challenge), (ii) a financial advisor for the Prepetition ABL Credit Facility Agent solely in connection with defending any Challenge, and (iii) the Prepetition ABL Credit Facility Agent, in each case, subject to the review procedures set forth in paragraph 12 of this Final Order.

(iv)    **Adequate Protection Payments.** As further adequate protection, the Debtors are authorized and directed to pay in cash, solely to the extent that any Prepetition ABL Credit Facility Obligations remain outstanding after entry of this Final Order, interest (at the non-default contract rate following the date of this Final Order) and principal due under the Prepetition ABL Credit Facility Documents, subject to the rights preserved in paragraph 28 of this Final Order.

(f)    **Receivables Assets**. The Adequate Protection Liens in the Receivables Assets sold from time to time pursuant to the Postpetition Receivables Facilities in accordance with the terms thereof shall automatically be released and terminated upon the consummation of each such sale (regardless of whether such sale is subsequently recharacterized); *provided, however,* that the Adequate Protection Liens shall attach to the proceeds of such Receivables Assets received by the Debtors.

11.    **Relative Priority of Liens**. Notwithstanding anything to the contrary in this Final Order or in the DIP Loan Documents, the relative priority of each DIP Lien, the Prepetition Liens, and the Adequate Protection Liens shall be as set forth in **Exhibit 1** attached hereto; *provided* that, for the avoidance of doubt, each such Lien shall be subject and subordinate to the Carve Out in all respects.

12.    **Adequate Protection Fees and Expenses**. Subject to the review procedures set forth in this paragraph 12, payment of all reasonable and documented invoiced out-of-pocket fees and expenses provided for herein as adequate protection shall not be required to file fee applications with the Court with respect to any fees or expenses, may be in summary form only (and shall not be required to contain time entries and which

may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, counsel to the DIP Agent, counsel to the Ad Hoc Crossholder Group, counsel to the Ad Hoc First Lien Group, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Fee Notice Parties"); *provided*, *however*, that any time such professionals seek payment of fees and expenses from the Debtors, the Debtors and the U.S. Trustee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals, subject to any attorney-client privilege limitations. If no objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten (10) business days after delivery of such invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any case, within ten (10) business days. If an objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Notwithstanding the foregoing, the DIP Debtor Loan Parties were, by Interim Order, and hereby are authorized and directed, without further notice or hearing, to pay, on the date on which the DIP Facility was initially funded, all reasonable and documented fees, costs, and out-of-pocket expenses of the Prepetition First Lien Notes Secured Parties

(including the Ad Hoc Committee Advisors), Prepetition Second Lien Notes Secured Parties and Prepetition ABL Credit Facility Secured Parties incurred on or prior to such date to the extent otherwise payable in accordance with the terms of the Prepetition First Lien Notes Documents, Prepetition Second Lien Notes Documents and/or Prepetition ABL Credit Documents, or otherwise pursuant to agreements with the Debtors, as applicable. Payments of any amounts set forth in this paragraph 12 shall not be subject to recharacterization, subordination, or disgorgement, unless expressly provided herein.

13.     **Reservation of Rights of Prepetition Secured Parties**.

(a)     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition First Lien Notes Secured Parties; *provided* that, subject to the Prepetition Intercreditor Agreements, the Prepetition First Lien Notes Trustee, acting on its own behalf or at the direction of the Prepetition First Lien Notes Secured Parties, and the Prepetition First Lien Notes Secured Parties may request further or different adequate protection, and the Debtors, the DIP Secured Parties, or any other party in interest may contest any such request.

(b)     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Second Lien Notes Secured Parties; *provided* that, subject to the Prepetition Intercreditor Agreements, the Prepetition Second Lien Notes Trustee, acting on its own behalf or at the direction of the Prepetition Second

Lien Notes Secured Parties, may request further or different adequate protection, and the Debtors, the DIP Secured Parties, or any other party in interest may contest any such request.

(c)     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition ABL Credit Facility Secured Parties; *provided* that, subject to the Prepetition Intercreditor Agreements, the Prepetition ABL Credit Facility Agent, acting on its own behalf or at the direction of the Prepetition ABL Credit Facility Secured Parties may request further or different adequate protection, and the Debtors, the DIP Secured Parties, or any other party in interest may contest any such request; *provided further* that, notwithstanding anything to the contrary in this Final Order, if the ABL Discharge does not occur within two business days following the date of entry of this Final Order, the Prepetition ABL Credit Facility Agent and the Prepetition Credit Facility Secured Parties reserve their rights to request payment of default interest.

14.     **Approved DIP Budget.** All borrowings under the DIP Facility, and the use of Cash Collateral, shall at all times comply with the Approved DIP Budget (subject to Permitted Variances) and the DIP Loan Documents. The Debtors shall (a) provide copies of the reporting required under Sections 5.01(h), (o) and (r) of the DIP Credit Agreement (collectively, the "DIP Reporting") as and when required under the DIP Credit Agreement and (b) comply with all financial or other reporting, lender or advisor call, budget, variance reporting and testing requirements as set forth in the DIP Loan Documents. As set forth in Section 5.01(o) of the DIP Credit Agreement, on or before 12:00 p.m., New York City

time, on the Wednesday of each (4th) calendar week ending after the week in which the Petition Date occurs (or such later time as agreed to in writing (including via e-mail) by the Required Financing Commitment Parties (as defined in the DIP Credit Agreement) in their sole discretion), the Debtors shall deliver for approval, as described in the DIP Loan Documents, a supplemental budget covering the 13-week period that commences with the beginning of the week in which such supplemental budget is required to be delivered, consistent with the form and level of detail set forth in the Initial Budget and otherwise in form and substance acceptable to the Required Financing Commitment Parties in their reasonable discretion, and once so approved in writing (which may be by e-mail) by the Required Financing Commitment Parties in their reasonable discretion, such supplemental budget shall constitute the then-approved "Approved DIP Budget" effective as of the beginning of the week in which it was delivered; *provided* that unless and until the Required Financing Commitment Parties approve such supplemental budget, the then-current Approved DIP Budget shall remain in effect.

15.    **Modification of Automatic Stay.** Subject to paragraph 22 hereof, the automatic stay imposed by section 362(a) of the Bankruptcy Code was, by the Interim Order, and hereby is modified as necessary to permit: (a) the DIP Debtor Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may reasonably request, to assure the perfection and priority of the DIP Liens and the DIP Superpriority Claims; (b) the DIP Debtor Loan Parties to incur all liabilities and obligations, including all the DIP Obligations, to the DIP Secured Parties as contemplated under this Final Order and the DIP Loan Documents, and to perform under the DIP Loan Documents any and all other instruments, certificates, agreements, and

documents that may be reasonably required, necessary, or prudent for the performance by the applicable DIP Debtor Loan Parties under the DIP Loan Documents and any transactions contemplated therein or in this Final Order; (c) the DIP Debtor Loan Parties to take all appropriate action to grant the Adequate Protection Liens and the Adequate Protection Claims set forth herein, and to take all appropriate action (including such action as the Prepetition Secured Parties may reasonably request) to ensure that the Adequate Protection Liens granted hereunder were perfected upon the date of the Interim Order and maintain the priority set forth herein and therein; (d) the DIP Debtor Loan Parties to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Final Order; (e) the DIP Secured Parties and the applicable Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents and this Final Order; (f) subject to paragraph 21 hereof, the DIP Secured Parties to exercise, upon the occurrence and during the continuance of any DIP Termination Event (as defined below), all rights and remedies provided for in the DIP Loan Documents and take any or all actions provided therein; and (g) subject to paragraph 22 hereof, the implementation and exercise of all of the terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the DIP Loan Documents, in each case, without further notice, motion or application to, or order of this Court.

16.    **Perfection of DIP Liens and Adequate Protection Liens.** The DIP Orders are sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted therein and herein, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of execution, filing, or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be

required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Prepetition Agents, without any further consent of any party, were, by the Interim Order, and hereby are authorized to execute, file, or record, as the case may be (and the DIP Agent and Prepetition Agents may reasonably require the execution, filing, or recording), as each, in its reasonable discretion deems necessary, such financing statements, notices of lien, and other similar documents to enable the DIP Agent and the Prepetition Agents to further validate, perfect, preserve, and enforce the applicable DIP Liens or other liens and security interests granted hereunder, perfect in accordance with applicable law or to otherwise evidence the applicable DIP Liens and/or the applicable Adequate Protection Liens, as applicable, and all such financing statements, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided* that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors were, by the Interim Order, and hereby are authorized to execute and deliver promptly upon reasonable request to the DIP Agent and the Prepetition Agents all such financing statements, notices, and other documents as the DIP Agent and the Prepetition Agents may reasonably request. The DIP Agent and the Prepetition Agents, each in its discretion, may file a photocopy of the Interim Order or this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office and all such offices are authorized to accept such photocopy for filing and as

evidence of the security interests and liens granted hereby, in addition to or in lieu of such financing statements, notices of lien, or similar instruments. To the extent that any Prepetition Agent is a secured party under any account control agreement, listed as an additional insured, loss payee under any of the Debtors' insurance policies, or is the secured party under any loan document, financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction to validate, attach, perfect, or prioritize liens (any such instrument or document, a "Security Document"), the DIP Agent shall also be deemed to be the secured party under each such Security Document, and shall have all the rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received subject to the Carve Out and in accordance with the terms of the DIP Orders, as applicable, and the other DIP Loan Documents. Each Prepetition Agent shall serve as agent for the DIP Agent solely for the purposes of perfecting its security interests in and liens on all DIP Collateral that is of a type such that perfection of a security interest therein (but for the entry of the DIP Orders) may be accomplished only by possession or control by a secured party to the extent such Prepetition Agent possesses or controls such DIP Collateral.

17.     **Proceeds of Subsequent Financing.** Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the indefeasible payment in full in cash (or other form of payment pursuant to an Acceptable Plan) of all of the DIP Obligations and the Prepetition Secured Obligations, the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facility and this Final Order (including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the

Debtors' estates), and the satisfaction of the DIP Superpriority Claims and the Adequate Protection Claims, either the DIP Debtor Loan Parties, the DIP Debtor Loan Parties' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in any of the DIP Debtor Loan Parties' Chapter 11 Cases or any Successor Cases thereof, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents then, unless otherwise agreed by the requisite DIP Lenders in their discretion: (i) after satisfaction of the Carve Out, all of the cash proceeds derived from such credit or debt and all DIP Collateral shall immediately be turned over to the DIP Agent for further distribution to the applicable secured parties on account of their applicable obligations in accordance with the priorities set forth in this Final Order.

18.    **Financial Reporting; Monitoring of Collateral.** Without limitation of the requirements of the DIP Loan Documents, the DIP Debtor Loan Parties shall (a) provide to the DIP Agent and the DIP Lenders (and, in each case, their respective consultants, advisors and professionals) or, if contemplated by the DIP Loan Documents, the financial advisor to the DIP Lenders, (i) all financial information required under the DIP Loan Documents, and (ii) reasonable access upon reasonable notice and during regular business hours to the DIP Debtor Loan Parties' books and records, assets and properties, for purposes of monitoring the Debtors' businesses and the value of the DIP Collateral, and shall be permitted to conduct, at their reasonable discretion and at the DIP Debtor Loan Parties' cost and expense, field audits, collateral examinations, and inventory appraisals in respect of the DIP Collateral to the extent set forth in the DIP Loan Documents. The DIP Debtor Loan Parties shall also provide such reports and information required to be provided

26765387.2

in the DIP Loan Documents, and such other reports, information and access as may be reasonably requested by the Prepetition Secured Parties (and their respective professionals, including the Ad Hoc Committee Advisors), and reasonably cooperate, consult with, and provide to such persons all such reports, information and access as may be reasonably requested. In addition, the Debtors hereby authorize their accountants, attorneys, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Agent and the DIP Lenders (and, in each case, their respective consultants, advisors and professionals) all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors to the extent set forth in the DIP Loan Documents.

19.    **Milestones**. It is a condition to the DIP Facility and to the consensual use of Cash Collateral that the Debtors comply with those certain case milestones set forth in the DIP Credit Agreement and on **Exhibit 2** hereto (the "Milestones"). The failure to comply with any Milestone shall constitute an Event of Default in accordance with the terms of the DIP Credit Agreement.

20.    **Maintenance of DIP Collateral**.

(a)    Until all DIP Obligations are indefeasibly paid in full and the DIP Secured Parties' obligation to extend credit under the DIP Facility has terminated, the Debtors shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Loan Documents. Upon entry of the Interim Order and to the fullest extent provided by applicable law, the DIP Agent was, and was deemed to be, without any further action or notice, named as an additional insured and loss payee on each

insurance policy maintained by the DIP Debtor Loan Parties that in any way relates to the DIP Collateral.

21.    **Termination Events**.

(a)    **DIP Termination Events.** The occurrence of any "Event of Default" under and as defined in the DIP Credit Agreement shall constitute a "DIP Termination Event" under this Final Order (each a "DIP Termination Event"), unless waived in writing by the Required Financing Commitment Parties.

(b)    **First Lien Cash Collateral Termination Events.** Each of the following shall constitute a termination event under this Final Order with respect to the use of Cash Collateral that is First Lien Notes Priority Collateral (such Cash Collateral, the "Notes Priority Cash Collateral" and each such termination event, a "Notes Priority Cash Collateral Termination Event") unless waived in writing by the Prepetition First Lien Notes Trustee:

(1)    the occurrence of an "Event of Default" under and as defined in the DIP Credit Agreement that has not been waived or cured within five (5) Business Days; (2) the consummation of a sale of substantially all of the Debtors' assets; (3) the failure by the Debtors to timely perform any of the terms, provisions, conditions, covenants, or other obligations under this Final Order material to the Prepetition First Lien Notes Secured Parties; (4) an order converting any Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases; (5) an order appointing a chapter 11 trustee in the Chapter 11 Cases; (6) an order appointing an examiner with enlarged powers in the Chapter 11 Cases (beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code); (7) any modifications, amendments, reversal or extensions of this Final Order that are material and adverse to the Prepetition First Lien Notes Secured Parties; or (8) the RSA is terminated with respect to all parties in accordance with its terms.

22.    **Exercise of Remedies**.

(a)    Immediately upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent, at the direction of the Required Financing

Commitment Parties, shall, and any automatic stay, whether arising under section 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Final Order, including clause (b) of this paragraph 22, was, by the Interim Order, and hereby is modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Agent to, upon the delivery of written notice (which may include electronic mail) to the Remedies Notice Parties (as defined below): (i) declare all DIP Obligations owing under the DIP Facility to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend credit to the DIP Loan Parties under the DIP Facility (to the extent any such commitment remains); (iii) terminate the DIP Facility and the DIP Loan Documents as to any future liability or obligation thereunder, but without affecting the DIP Liens or the DIP Obligations; (iv) terminate and/or revoke the Debtors' right, if any, under this Final Order and the DIP Loan Documents to use any Cash Collateral; (v) charge interest at the default rate under the DIP Facility to the extent, and in the manner, set forth in the DIP Credit Agreement; (vi) enforce its lien on the DIP Proceeds Account; (vii) otherwise enforce any and all rights against the DIP Collateral in the possession of the DIP Agent, including, without limitation, disposition of the DIP Collateral solely for application towards the Carve Out and the DIP Obligations in accordance with their respective priorities; and (viii) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents, or applicable law; *provided* that prior to the exercise of any right in clauses (i) though (viii) of this paragraph, the DIP Agent shall be required to provide five (5) business days' written notice to counsel to the Debtors, counsel to the Prepetition Agents, counsel to the Ad Hoc Crossholder Group, counsel to the Ad Hoc First Lien Group, counsel to the Prepetition ABL Credit

Facility Agent, the Receivables Facilities Parties, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Remedies Notice Parties") of the DIP Agent's intent to exercise its rights and remedies (the "Remedies Notice Period"); *provided, however,* that during the Remedies Notice Period, the Debtors, the U.S. Trustee and any Official Committee may seek an emergency hearing before the Court (to be held within the Remedies Notice Period); *provided further* that the DIP Lenders shall not be obligated to make any loans or advances under the DIP Facility during any Remedies Notice Period.

(b)     Upon the occurrence and during the continuation of a Notes Priority Cash Collateral Termination Event, the Prepetition First Lien Notes Trustee may (and any automatic stay otherwise applicable to the Prepetition First Lien Notes Trustee, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Final Order (including this paragraph) is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the Prepetition First Lien Notes Trustee to), upon the delivery of written notice (which may include electronic mail) to the Remedies Notice Parties (as defined below): terminate and/or revoke the Debtors' right under this Final Order to use any Notes Priority Cash Collateral. Upon delivery of such notice by the Prepetition First Lien Notes Trustee, without further notice or order of the Court, the Debtors' authorization to use Notes Priority Cash Collateral hereunder will, subject to the expiration of the Remedies Notice Period, automatically terminate; *provided, however,* that during the Remedies Notice Period, the Debtors and any Official Committee may seek an emergency hearing before the Court (to be held within the Remedies Notice Period).

(c)       Unless during such Remedies Notice Period the Court determines that a DIP Termination Event has not occurred or has occurred and is not continuing, the DIP Agent shall be deemed to have received relief from the automatic stay, and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral or otherwise exercise all rights and remedies available against the DIP Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code or otherwise (in each case, subject to paragraph 22(c) hereof); *provided* that the DIP Agent must file an emergency motion with the Court or file written notice using a CM/ECF emergency event code to terminate the stay to foreclose on or otherwise exercise remedies against all or any portion of the DIP Collateral; *provided further* that in the event that a party challenges the DIP Agent's assertion that a DIP Termination Event has occurred or has occurred and is continuing and the Court is unavailable for a hearing during the Remedies Notice Period, the automatic stay shall remain in effect until the Court has an opportunity to rule on such challenge..

(d)       The Debtors (i) shall reasonably cooperate with the DIP Agent in its exercise of rights and remedies, whether against DIP Collateral or otherwise, (ii) unless the Court orders otherwise, waive any right to seek relief under section 105 of the Bankruptcy Code, and (iii) unless the Court orders otherwise, may not contest or challenge the exercise of any such rights or remedies other than to dispute whether a DIP Termination Event has in fact occurred or is continuing; *provided* that the DIP Agent shall not object to a request by the Debtors for an expedited hearing before the Court to contest whether a

DIP Termination Event has in fact occurred or to seek authority to use cash collateral on a nonconsensual basis. During the Remedies Notice Period, the DIP Debtor Loan Parties and DIP Agent consent to a hearing on an expedited basis. Notwithstanding anything to the contrary set forth in this paragraph 22, during the Remedies Notice Period, the Debtors may use Cash Collateral to pay only the following amounts and expenses: (i) the Carve Out and (ii) amounts that the Debtors have determined in good faith are in the ordinary course, are critical to the preservation of the Debtors and their estates, and are in accordance with the Approved DIP Budget or have otherwise been approved in advance in writing by the Required Financing Commitment Parties.

(e)    So long as there are any DIP Obligations outstanding or any DIP Lenders have any outstanding commitments to extend credit under the DIP Facility, in each case with respect to DIP Collateral that is secured by DIP Liens that in accordance with the DIP Orders are senior to any liens held by Prepetition Secured Parties, then with respect to such DIP Collateral, such Prepetition Secured Parties shall: (i) other than with respect to DIP Junior Collateral that constitutes First Lien Notes Priority Collateral, have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or the DIP Orders, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, including in connection with the Adequate Protection Liens except to the extent required by an order of the Court; (ii) other than with respect to DIP Junior Collateral that constitutes First Lien Notes Priority Collateral, be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral or proceeds thereof (until payment in full in cash of all DIP Obligations (or other form of payment pursuant to an Acceptable Plan) and

termination of the commitments to extend credit under the DIP Facility), to the extent such transfer, disposition, sale, or release is authorized under the applicable DIP Loan Documents; (iii) other than with respect to DIP Junior Collateral that constitutes First Lien Notes Priority Collateral, not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), any of the applicable DIP Secured Parties have filed financing statements or other documents to perfect the liens granted pursuant to the DIP Orders or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or securities interests as of the Petition Date; and (iv) with respect to Prepetition ABL Credit Facility Collateral, deliver or cause to be delivered, at the DIP Debtor Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such Prepetition ABL Credit Facility Collateral subject to any sale or disposition or in connection with the Prepetition ABL Discharge.

23.     **DIP Fees and Expenses.** The DIP Debtor Loan Parties were, by the Interim Order, and hereby are authorized to pay, in cash as original issue discount or in kind, as the case may be, and on a current basis, all DIP Fees and Expenses, as and when due under the DIP Loan Documents and this Final Order, whether or not the transactions contemplated hereby are consummated, whether incurred prior to, on, or after the Petition Date, and whether or not contained in the Approved DIP Budget and without limitation with respect to the dollar estimates contained in the Approved DIP Budget; *provided*, *however*, that

26765387.2

such overages shall not weigh against the DIP Debtor Loan Parties in any testing related to compliance with the Approved DIP Budget and permitted variances established hereunder. Payment of all DIP Fees and Expenses shall not be subject to further review or allowance by the Court. The invoices for such DIP Fees and Expenses may be in summary form only (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, with a copy to the Fee Notice Parties; *provided*, *however*, that the Debtors and the U.S. Trustee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals, subject to any attorney-client privilege limitations. If no objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any case, within ten (10) business days. Any objection to payment of the requested fees and expenses shall be limited to reasonableness and no objection shall be made on any other basis. If any objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Notwithstanding the foregoing, the DIP Debtor Loan

Parties were, by Interim Order, and hereby are authorized and directed, without further notice or hearing, to pay on the date on which the DIP Facility is initially funded all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agent, each DIP Lender, and each of their counsel and advisors, including legal fees and reasonable and documented expenses, incurred on or prior to such date to the extent otherwise payable in accordance with the terms of the DIP Loan Documents. Payments of any amounts set forth in this paragraph 23 shall not be subject to recharacterization, subordination, or disgorgement except as expressly provided in the preceding sentence.

24.    **Indemnification.** The DIP Debtor Loan Parties shall jointly and severally indemnify and hold harmless the DIP Agent and each DIP Secured Party, and each of their respective directors, officers, employees, agents, attorneys, accountants, advisors, controlling persons, equityholders, partners, members, and other representatives and each of their respective successors and permitted assigns (each, an "Indemnified Party") against, and hold each Indemnified Party harmless from, any and all losses, claims, damages, liabilities, reasonable and documented out-of-pocket costs and expenses (including, without limitation, fees, charges and disbursements of counsel but limited, in the case of counsel, to the extent set forth in the DIP Credit Agreement), that may be incurred by or asserted or awarded against any Indemnified Party, in each case, arising out of, or in any way in connection with, or as a result of: (i) the execution or delivery of the DIP Credit Agreement or any other DIP Loan Document, the performance by the parties thereto of their respective obligations thereunder and the other transactions contemplated thereby; (ii) the use of the proceeds of the DIP Loans; (iii) the enforcement or protection of its rights in connection with the DIP Credit Agreement and the other DIP Loan Documents; or (iv) any

26765387.2

claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnified Party is a party thereto and regardless of whether such matter is initiated by a third party or the Debtors or any of their subsidiaries or affiliates or creditors; *provided* that no Indemnified Party will be indemnified for any loss, claim, damage, liability, cost or expense to the extent such loss, claim, damage, liability, cost, or expense (i) is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from such Indemnified Party's gross negligence, bad faith or willful misconduct or a material breach of the obligations of such Indemnitee under the DIP Loan Documents or (ii) relates to any proceedings solely between or among Indemnitees other than claims against the DIP Agent or its affiliates, in their capacity as DIP Agent.

25.    **Proofs of Claim.** The DIP Agent, the DIP Secured Parties, and the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successors Cases for any claim allowed herein or therein in respect of the Prepetition Secured Obligations. Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Secured Parties or the Prepetition Secured Parties; *provided* that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of the DIP Secured Parties, and any of the Prepetition Agents, on behalf of the Prepetition Secured Parties, may (but are not required) in their discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of

claim against each Debtor. Any proof of claim filed by the DIP Secured Parties or any of the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

     26.     **<u>Carve Out</u>**.

     (a)     Notwithstanding anything to the contrary in this Final Order, the DIP Loan Documents, or any other order of the Court to the contrary, the Debtors' obligations to the DIP Secured Parties and Prepetition Secured Parties and the liens, security interests, and superpriority claims granted herein, under the DIP Loan Documents, and/or under the Prepetition Loan Documents, including the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, and the Prepetition Liens shall be subject in all respects and subordinate to the Carve Out.

     (b)     As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors or any Official Committee (if appointed)) (the

"Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Official Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $7,000,000 (the "Post-Carve Out Trigger Notice Cap") incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Amounts"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to any Official Committee (if appointed), which notice may be delivered following (but not prior to) the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors in accordance with paragraph 26(b) above, with a copy to counsel to any Official Committee (if appointed) (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, including cash in the DIP

Proceeds Account, to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees which shall be held in a segregated account (the "Carve Out Account"). Upon entry of the Interim Order, the Debtors deposited and will hold such amounts in the Carve Out Account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in the Carve Out Account in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and together with the "Pre-Carve Out Trigger Notice Reserve", the "Carve Out Reserve"). All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of paragraph (b) above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of paragraph (b) above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations

have been indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 26(c), then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 26(c), prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but each shall have an automatically perfected and continuing first priority security interest in any residual interest in the Carve Out Reserves, with any excess after satisfying all the obligations benefitting from the Carve Out Reserves paid to the DIP Agent for application in accordance with the DIP Loan Documents, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Further, notwithstanding anything to the contrary in the DIP Orders, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce

the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out and (iii) in no way shall the Approved DIP Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(d)    **Payment of Allowed Professional Fees Prior to the Termination Declaration Date.** Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    **No Direct Obligation To Pay Allowed Professional Fees.** None of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases. Nothing in the DIP Orders or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    **Payment of Carve Out On or After the Termination Declaration Date.** Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date and after delivery of the Carve Out Trigger Notice in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

27.     **Limitations on the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, the Carve Out, and Other Funds**. Without limiting the rights set forth in paragraph 22 above and otherwise notwithstanding anything contained in the DIP Loan Documents, this Final Order, or any other order of the Court to the contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out, or any other cash or funds may be used, directly or indirectly, by any of the Debtors, any Official Committee (if appointed), or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith): (a) to object to, contest, prevent, hinder, delay, or interfere with, in any way, the DIP Secured Parties' or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral, Prepetition Collateral, or Cash Collateral, so long as a DIP Termination Event has occurred and is continuing (but subject to the Remedies Notice Period and the rights of parties in respect thereof); or (b) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, against the DIP Secured Parties or the Prepetition Secured Parties, with respect to any transaction, occurrence, omission, action, or other matter arising under, in connection with, or related to this Final Order, the DIP Facility, the DIP Loan Documents, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Loan Documents

or the transactions contemplated therein or thereby, including, without limitation, (A) any Avoidance Actions, (B) any so-called "lender liability" claims and causes of action, (C) any claim or cause of action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the DIP Loan Documents, the Prepetition Loan Documents, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims, or the Prepetition Secured Obligations, (D) any claim or cause of action seeking to challenge, invalidate, modify, set aside, avoid, marshal, subordinate, or recharacterize in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the Prepetition Collateral, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Claims, or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any of the DIP Secured Parties hereunder or under any of the DIP Loan Documents or the Prepetition Secured Parties under any of the Prepetition Loan Documents (in each case, including, without limitation, claims, proceedings, or actions that might prevent, hinder, or delay any of the DIP Secured Parties, or the Prepetition Secured Parties' assertions, enforcements, realizations, or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents or Prepetition Loan Documents and this Final Order and/or this Final Order (as applicable)); *provided* that no more than $50,000 may be used for allowed fees and expenses incurred solely by any Official Committee (if appointed) in investigating, but not objecting to, challenging, litigating, opposing, prosecuting, or seeking to subordinate or recharacterize the validity, enforceability, perfection, and priority of the Prepetition Liens, the Prepetition Secured

Obligations or the Prepetition Loan Documents prior to the Challenge Deadline (as defined below); *provided further* that nothing contained in this paragraph 27 shall prohibit the Debtors from responding or objecting to or complying with discovery requests of any Official Committee (if appointed), in whatever form, made in connection with such investigation or the payment from the DIP Collateral of professional fees related thereto, or from contesting or challenging whether a DIP Termination Event has occurred.

28.     **Reservation of Certain Third-Party Rights and Bar of Challenges and Claims**.

(a)     Upon entry of this Final Order, the stipulations, admissions, agreements, and releases contained in this Final Order, including, without limitation, in paragraph E of this Final Order (collectively, the "Stipulations"), shall be binding upon the DIP Debtor Loan Parties and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the DIP Debtor Loan Parties in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes, but subject to the challenge provisions set forth below.

(b)     The Stipulations shall be binding upon all other parties in interest (including without limitation, any Official Committee, if appointed) and any other person or entity acting or seeking to act on behalf of the DIP Debtor Loan Parties' estates, in all circumstances and for all purposes, unless (1) an Official Committee, if any, or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the Challenge Deadline), has timely and duly filed an adversary proceeding or contested matter under the Bankruptcy Rules (subject to the limitations contained herein) (each, a "Challenge Proceeding") by the Challenge Deadline, objecting

to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Loan Documents, or otherwise asserting or prosecuting any Avoidance Action or any other claim, counterclaim, cause of action, objection, contest, defense or other challenge (a "Challenge") against any of the Prepetition Secured Parties or any of their respective affiliates, subsidiaries, officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and the respective successors and assigns thereof (in each case, in their respective capacities as such), arising under, in connection with or related to the Debtors, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Loan Documents, and (2) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding; *provided* that  as to the Debtors, any and all such challenges are hereby irrevocably waived and relinquished as of the Petition Date.

(c)       If no such Challenge Proceeding is timely and properly filed prior to the Challenge Deadline, then, without further notice to any person or entity or order of the Court, (a) the Stipulations shall be binding on all parties in interest (including, without limitation, any Official Committee, if appointed); (b) the Prepetition Secured Obligations shall constitute allowed claims and shall not be subject to any defense, claim, counterclaim, recharacterization, subordination, disgorgement, offset, avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (c) the Prepetition Loan Documents shall be deemed to have been valid, as of the Petition Date, and enforceable against each of the DIP Debtor Loan Parties in the Chapter 11 Cases and any Successor Cases; (d) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected,

security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense; and (e) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Loan Documents shall not be subject to any other or further claim or Challenge by any Official Committee (if appointed), any chapter 7 or chapter 11 trustee appointed or elected for any of the DIP Debtor Loan Parties in the Chapter 11 Cases or any Successor Cases, any non-statutory committees appointed or formed in these Chapter 11 Cases or any Successor Cases or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise.

(d)    If any such Challenge Proceeding is timely and properly filed prior to the Challenge Deadline, the Stipulations shall nonetheless remain binding and preclusive (as provided in paragraph 28(b) hereof) on any Official Committee (if appointed) and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Upon a successful Challenge by any party, the Court may fashion an appropriate remedy.

(e)    The "Challenge Deadline" shall mean the date that is the earlier of (1) entry of a confirmation order in these Chapter 11 Cases, and (2)(A) the later of (i) 75 calendar days after entry of the Interim Order, (ii) 60 days after formation of an Official Committee (if appointed), (B) such later date that has been agreed to in writing, prior to the expiration of the deadline to commence a Challenge, by (i) with respect to the Prepetition First Lien Notes Indenture, the Prepetition First Lien Notes Trustee, (ii) with respect to the Prepetition Second Lien Notes Indenture, the Prepetition Second Lien Notes Trustee, and (iii) with respect to the Prepetition ABL Credit Facility, the Prepetition ABL

Credit Facility Agent (at the direction of the Required Lenders (as defined in the Prepetition ABL Credit Agreement)) or (C) as otherwise ordered by this Court. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Official Committee (if appointed) or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

29.    **Limitations on Charging Expenses.** Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Secured Parties or the Prepetition Secured Parties (as the case may be) upon the DIP Collateral or Prepetition Collateral (as the case may be), shall be charged against or recovered from (a) the DIP Secured Parties or the DIP Collateral (including in respect of the Adequate Protection Liens), or any of the DIP Obligations or (b) the Prepetition Secured Parties, Prepetition Collateral, or any of the Prepetition Secured Obligations, in each case, pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, without the prior express written consent of the Required Financing Commitment Parties or the requisite lenders or holders under the relevant Prepetition Loan Document or the affected Prepetition Secured Party, as the case may be, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors

26765387.2

(including, without limitation, consent to the Carve Out or the approval of any budget hereunder).

30.     **No Marshaling.** In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral, or the Prepetition Secured Obligations, as applicable, and all proceeds shall be received and applied in accordance with this Final Order, the DIP Loan Documents, and the Prepetition Loan Documents, as applicable, subject to the Prepetition Intercreditor Agreements, including, for the avoidance of doubt, to the funding of the Carve Out, if applicable.

31.     **Equities of the Case.** Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties and Prepetition Collateral.

32.     **Joint and Several Liability.** Nothing in the DIP Orders shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the DIP Debtor Loan Parties shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Final Order.

33.     **Right to Credit Bid.** (a) The DIP Agent or its designee (at the written direction of the Required Financing Commitment Parties), on behalf of the DIP Secured Parties, shall have the unqualified right to credit bid, in accordance with the DIP Loan Documents, up to the full amount of the DIP Obligations and (b) subject to expiration of the Challenge Deadline and the challenge rights set forth in paragraph 28 of this Final Order, each Prepetition Agent or its designee (at the written direction of the applicable

Prepetition Secured Parties), on behalf of the applicable Prepetition Secured Parties shall have the right to credit bid, in accordance with the applicable Prepetition Loan Documents, but subject to the Prepetition Intercreditor Agreements, up to the full amount of the Prepetition Secured Obligations under the applicable prepetition facility, in each case, in connection with any sale or other disposition of all or any portion of the DIP Collateral or Prepetition Collateral (as applicable), as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, and shall each automatically be deemed a "qualified bidder" with respect to any disposition of DIP Collateral or Prepetition Collateral (as applicable) under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code (with the Prepetition Secured Parties being automatically so deemed). The DIP Agent (at the direction of the Required Financing Commitment Parties) and the Prepetition Agents (at the direction of the requisite lenders or holders under the applicable Prepetition Loan Documents), shall each have the absolute right to assign, transfer, sell, or otherwise dispose of its rights to credit bid, except as may be set forth in the DIP Loan Documents.

34.    **Rights Preserved.** Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of

the DIP Secured Parties or the Prepetition Secured Parties under the DIP Loan Documents, the Prepetition Loan Documents, the Prepetition Intercreditor Agreements, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the DIP Debtor Loan Parties', or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order.

35.    **Intercreditor Agreements.** Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents (i) shall remain in full force and effect, and (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties; *provided* that nothing herein shall be deemed to provide liens to any Prepetition Secured Parties on any assets of any DIP Loan Parties that are not Debtors.

36.    **No Waiver by Failure to Seek Relief.** The failure or delay on the part of any of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise

exercise their rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise. No delay on the part of any party in the exercise of any right or remedy under the DIP Orders shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under the DIP Orders shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought. No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties.

37.    **<u>Binding Effect of this Final Order.</u>** Immediately upon entry of this Final Order by the Court, this Final Order shall inure to the benefit of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and the Receivables Facilities Parties, and the provisions of this Final Order (including all findings and conclusions of law herein) shall be valid and binding upon the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, any and all other creditors of the Debtors, any Official Committee (if appointed) or other committee appointed in the Chapter 11 Cases, any and all other parties in interest, and the respective successors and assigns of each of the foregoing, including any trustee or other fiduciary hereafter appointed as legal representative of any of the Debtors in any of the Chapter 11 Cases or any Successor Cases, or upon dismissal of any of the Chapter 11 Cases. The DIP Secured Parties and the Prepetition Secured Parties shall

have no obligation to permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

   38. **Survival**. The terms and provisions of this Final Order, including, without limitation, (a) the Carve Out and (b) all of the rights, privileges, benefits, and protections afforded herein and in the DIP Loan Documents (including the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Claims, and any other claims, liens, security interests, and other protections (as applicable)) granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to this Final Order and the DIP Loan Documents (collectively, the "<u>DIP Protections</u>"), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties in interest, and shall maintain their priorities, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (i) confirming any plan of reorganization in any of the Chapter 11 Cases, (ii) converting any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any or all of the Chapter 11 Cases, or (iv) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases, in each case, until (x) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Final Order, have been indefeasibly paid in full in cash (or other form of payment pursuant to an Acceptable Plan) (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (y) in respect of the Prepetition Secured Obligations, all of the Prepetition Secured Obligations have been indefeasibly paid in full

in cash (or other form of payment pursuant to an Acceptable Plan) (or, in respect of outstanding letters of credit (if any), cash collateralized). This Court shall retain jurisdiction, notwithstanding any such confirmation, conversion, or dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Secured Parties' adequate protection.

39.    **Discharge Waiver/Release.** The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, (i) unless the DIP Obligations have been indefeasibly paid in full in cash (or other form of payment pursuant to an Acceptable Plan) and all commitments to extend credit under the DIP Facility have been terminated, on or before the effective date of such confirmed plan of reorganization, or (ii) the DIP Lenders have otherwise agreed in writing in respect of the applicable obligations owed to each of them (including the agreement reflected in the RSA (as defined in the DIP Credit Agreement) to the extent implemented in an Acceptable Plan). None of the Debtors shall propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations in full in cash (or other form of payment pursuant to an Acceptable Plan) and the termination of all commitments to extend credit under the DIP Facility on or prior to the earlier to occur of the effective date of such chapter 11 plan or sale, without the written consent of the DIP Lenders (including the agreement reflected in the RSA).

40.    **Good Faith under Section 364(e) of the Bankruptcy Code.** The DIP Secured Parties have acted in good faith in connection with the DIP Facility, the DIP Loan Documents and with this Final Order, and their reliance on this Final Order is in good faith.

41.    **No Modification of Final Order**. Until and unless the DIP Obligations have been indefeasibly paid in full in cash (or other form of payment pursuant to an Acceptable Plan) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Required Financing Commitment Parties in respect of the DIP Obligations, (i) any modification, stay, vacatur, or amendment to this Final Order or (ii) allowance of a priority claim for any administrative expense or unsecured claim against any Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in the Chapter 11 Cases, equal or superior to the DIP Superpriority Claims, other than the Carve Out and the superpriority claims granted pursuant to the Receivables Facilities Interim Order or the Receivables Facilities Final Order; (b) without the prior written consent of the DIP Agent (at the direction of the Required Financing Commitment Parties) or the Prepetition Agents (at the direction of the requisite lenders or holders under the applicable Prepetition Loan Documents), any order authorizing the use of Cash Collateral resulting from the DIP Collateral or the Prepetition Collateral that is inconsistent with this Final Order; (c) without the prior written consent of the Required Financing Commitment Parties, grant of any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as expressly provided in the DIP Loan Documents or this Final Order;

or (d) without the prior written consent of the Prepetition Agents (at the direction of the requisite lenders or holders under the applicable Prepetition Loan Documents), grant of any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Liens or the Adequate Protection Liens, except to the extent expressly provided in this Final Order.

42. **Limitation of Liability.** By virtue of their agreement to enter into the DIP Facility and to provide the Loans thereunder, the DIP Secured Parties shall not be held liable for (a) any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts or (b) any fiduciary duties to the Debtors, their respective creditors, shareholders, or estates. So long as the DIP Secured Parties comply with their obligations under the DIP Loan Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the DIP Debtor Loan Parties.

43. **Final Order Controls.** In the event of any conflict or inconsistency between or among the terms or provisions of the Interim Order, this Final Order or any of the DIP Loan Documents, unless such term or provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the DIP Loan Documents or the Interim Order, the terms and provisions of this Final Order shall govern and control. Notwithstanding

anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in the Interim Order, this Final Order and the DIP Loan Documents, including, without limitation, the Approved DIP Budget (subject to Permitted Variances).

44.     **Payments Held in Trust.** Except as expressly permitted in this Final Order or the DIP Loan Documents, in the event that any person or entity who has received notice of this Final Order receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash (or other form of payment pursuant to an Acceptable Plan) of all DIP Obligations under the DIP Loan Documents, and termination of the commitments to extend credit under the DIP Facility in accordance with the DIP Loan Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the applicable DIP Agent or DIP Lender, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents and this Final Order. In the event that any person or entity who has received notice of this Final Order receives any payment on account of a Receivables Asset sold pursuant to the Prepetition Receivables Facilities or the Postpetition Receivables Facilities, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of such Receivables Assets in trust for the benefit of the purchasers thereof as specified in the Prepetition Receivables Facilities or the Postpetition Receivables Facilities, as applicable.

45.    **Final Order Effectiveness as of the Petition Date.** Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), and 7062 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

46.    Nothing in the Interim Order, this Final Order or the Motion shall in any way prime or affect the rights of Westchester Fire Insurance Company or its past, present or future parents, subsidiaries or affiliates (the "Surety") as to:  (a) any funds it is holding and/or that is being held for it presently or in the future, or in which it otherwise holds an interest; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; or (c) any letter of credit related to any indemnity, collateral trust, bond or agreements between or involving the Surety and any of the Debtors or any of the Debtors' non-debtor affiliates (collectively (a) to (c), the "Surety Assets").  Nothing in the Interim Order, this Final Order or Motion shall affect the rights of the Surety under any current or future indemnity, collateral trust, or related agreements between or involving the Surety and any of the Debtors or any of the Debtors' non-debtor affiliates as to the Surety Assets or otherwise, including, but not limited to, the Agreement of Indemnity executed by Alliance One International, Inc. in favor of Westchester Fire Insurance Company and other affiliates with respect to any bond in favor of the United States of America,  on or about November 28, 2006.  In addition, nothing in the Interim Order, this Final or the Motion shall prime or otherwise impact:  (x) current or future setoff and/or recoupment rights or trust fund claims and/or the lien rights of the Surety or of any party to whose rights the Surety has or may become subrogated; and/or (y) any existing or future

subrogation or other common law rights of the Surety.  To the extent that any Surety Assets are being held by the Debtors and are used by the Debtors as part of cash collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety equal to the amount of the use of those funds with any replacement trust fund claim to be equal to the amount of trust funds used, and any replacement lien to have the same priority, amount, extent and validity as existed as of the Petition Date.  In addition, notwithstanding anything in the Interim Order, this Final Order or the Motion to the contrary, the rights, claims and defenses of the Debtors and of the Surety, including but not limited to, the Surety's rights under any properly perfected liens and claims and/or claim for equitable rights of subrogation, and rights of the Debtors and of any successors in interest to any of the Debtors, and any creditors, to object to any such liens, claims and/or equitable subrogation and other rights, are fully preserved.  Nothing herein is an admission by the Surety or the Debtors, or a determination by the Bankruptcy Court, regarding any claims under any bonds, and the Surety and the Debtors reserve any and all rights, remedies and defenses in connection therewith.

47.    **Bankruptcy Rules.** The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

48.    **Necessary Action.** The Debtors are authorized to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Final Order.

49.    **Headings.** Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

50.    **Notice of Entry of this Final Order.** The Debtors' counsel shall serve a copy of this Final Order or a suitable notice respecting same on the Notice Parties.

51.    **Retention of Jurisdiction.** The Court shall retain jurisdiction to hear, determine, and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

26765387.2    **Dated: July 20th, 2020**
**Wilmington, Delaware**